**BC**



RECEIVED
1/16/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
DD

Khor Chin Lim
4048 Ingram Drive,
Janesville, WI 53546
Telephone: 608-566-4695
Email: kclim478@aol.com
Pro Se Plaintiff

1:25-cv-00521
Judge John J. Tharp, Jr
Magistrate Maria Valdez
RANDOM / Cat. 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

Khor Chin Lim,
              Plaintiff,
    vs.                                          Case No.:
New York State Board of Law Examiners
State Bar of New York
John McAlary                                     Complaint
Diane F. Bosse
Committee of Bar Examiner of State Bar of
California
State Bar of California
Esther P. Lin
Sean M. Selegue
National Conference of Bar Examiners
Pearson Education, Inc.
Michael McCartin
Christian Hummel
David Hurd
Norman A Mordue
Government of Singapore
Government Investment Corporation
Singapore
Temasek Holdings Pte Ltd
GIC Real Estate Inc.
Lee Hsien Loong
Ho Ching

1
-COMPLAINT-

Ho Peng
People Action Party of Singapore
Ministry of Home Affairs
Registrar of Registry of Society of Singapore
Estate of Lee Kuan Yew
Estate of Kwa Geok Choo
Lawrence Wong
Gan Kim Yong
Heng Swee Keat
Teo Chee Hean
Indranee Rajah
Maliki Osman
K Shanmugam
Desmond Tan
Josephine Teo
Edwin Tong
Chan Chun Sing
Vivian Balakrishnan
Tan See Leng
Masagos Zulkifri
Desmond Lee
Grace Fu
Chee Hong Tat
Lucien Wong
Ho Peng Kee
Commercial Affairs Department
Chan Sek Keong
Lawrence Ang Boon Kong
Roy Neighbour
Yeo Poh Teck
Yeo Pia Jee
Rosalind Chong Kooi Ming
Wilfred Nathan
Seah
Henry Tan
David Tan Lam Kiap
Loo Ngan Chor
Lim Chee Onn
Singapore Telecommunications Private Limited
Li Hongyi
Li Haoyi
Li Yipeng

2
-COMPLAINT-

Lee Xiuqi
Liu Tuck Yew
Lee & Lee
Chay Yuen Fatt
Tng Soon Chye
Lee Fu Nyap
Wong Car Wha
Margaret Tan Lay Hwa,
Central Provident Fund, Singapore
Clerk, State Court of Singapore
Minister of Ministry of Law, Singapore, K. Shanmugam
Minister of Ministry of Manpower
Minister of Ministry of Education
Vincent Hoong Seng Lei
Deloitte & Touche, LLP
Lim Loo khoon
Tan Wei Cheong
Inter-Pacific Petroleum Pte Ltd
Cheong Lai Na
Cheong Lai Ming
Michael Carp
Tia Miyamoto
Nancy M Olson
IndCor Properties Inc.
Store Capital Corporation
Summit Industrial Income REIT
Dream Industrial REIT
Dream Summit Industrial LP
Keppel Offshores & Marine, Ltd
Keppel Offshores & Marine USA, Inc.
Sean Hecker
David A. O'Neil
Debevoise de Flimpton LLC
Jeffrey Chow
John P. Cronan
Bridget M. Rohde
Sandra Moser
Stephen E. Richardson
Chow Yew Yuen
Nicholas Choo Kwang Hui
Ixom Operations Pty Ltd

3
-COMPLAINT-

SocGen
Government of Malaysia
Petroliam Nasional Berhad
Wan Azizah Wan Ismail
Anwar Ibrahim
Nurul Izzah Anwar
Nurul Ilham anwar
Nurul Nuha anwar
Nurul Iman anwar
Nurul Hana anwar
Tengku Mohammad Taufik Tengku Aziz
Mohd Bakke Salleh
Ibrahim Saad
Mohamed Nazri Abdul Aziz
Jessica Chew Cheng Lian
Ling Fou-Tsong
Ammb Holdings Berhad
Ambank (M) Berhad
Md Nor Md Yusof
Sulaiman Bin Mohamed Tahir
Azman Hashim
Seow Yoo Lin
Abdul Rauf Rashid
Abdul Rasheed Ghaffour
Ernst & Young LPT
Ernst & Young of New York
Ernst & Young of Wisconsin
Ernst & Young Global Limited
Teoh Choo Aun
Karpal Singh & Co.
Maya Pesona Sdn Bhd
Goh Cheng Hock
Chuah Chong Ewe
Lum Khee Restaurant Sdn Bhd.
Ah Weng
Ng Choo Hock
Goh Cheng Guan
Goh Cheng Guan Holdings Sdn Bhd
Bar Council of Malaysia
Tan Boon Hee)
Maybank, Sdn Bhd.
Bank Negara Malaysia

Tony Lee Eng Kow
Vivian Tham Yoke Foong
Tan Yin Ching
Board of Regents of University of Wisconsin System
Mark Griffiths
Drew Winters
AT&T Inc.
AT&T Services Inc.
AT&T Mobility LLC
AT&T Corp.
Harry S Bennett
Harold W Burlingame
Steven W Hooper
Frank Ianna
Marilyn Laurie
Gail J McGovern
Victor E Millar
Richard W Miller
David C Nagel
John Petrillo
Ron J Ponder
Richard J Srednicki
John R Walter
Jeffrey Weitzen
Paul J Wondrasch
John D Zeglis
Maureen B Tart
PricewaterhouseCoopers LLP
Kenneth T. Derr
M Kathryn Eickhoff
Walter Y Elisha
Ralph S Larsen
Donald F. McHenry
Michael I Sovern
Joseph D Williams
Thomas H Wyman
Mark Trierweiler
Yok Hing Law
Sarah Holiday
Ed Gallardo
Mathew Miller

5
-COMPLAINT-

City of Milpitas, California
DuPage County
Elk Groove Village
Manglo
Government of Cook County, Illinois
City of Chicago, Illinois
Rahm Emanuel
Mary Jane Theis
P Scott Neville Jr.
David K Overstreet
Lisa Holder White
Joy v Cunningham
Elizabeth M Rochford
Mary K O'Brien
Robert Gordon
Bill Taylor
Stuart Palmer
Sharon Oden Johnson
Daniel J Pierce
Mary L Mikva
Jorge Luis Alonso
Amee Alonso
James Brown
Jim Ryan
Joseph Sconza
Thomas Bryne
Paul Biebel
Leroy Martin, Jr.
Clerk of Court of Appeals of Illinois
Thomas Palella
Tina Schillaci
Toni Preckwinkle
District Attorney of Cook County
Anita Alvarez
Kimberly M. Foxx
Adam J C Weber
Lus Maria Toledo
James Tansey
Michelle Popielewski
Attila Bogdan
Abishi C. Cunningham Jr.
Sharone R. Mitchell, Jr.

Emily Goldsmith

Jason Menard

Danita Ivory

Patricia Dillon

Office of State Appellate Defender, Illinois

Lester Finkle

Ian Jackson

Michael Bennett

Sheriff of Cook County, Illinois

Tom Dart

Clerk of Court, Circuit Court of Cook County

Dorothy Brown

Iris Martinez

Gary McCarthy

David Brown

Don Jerome

Timothy Bialek

Jason Sollis

Jose Rodriguez

Darrell Mills

Paul Addotta

Brett Libberton

Curt D Eubanks

Fidel Echevarria

Timothy Olenek

Mirella Susnjar

Rolando G Hedriana

Alice Tracy

Kane County of Illinois

Clerk of Circuit Court of Kane County, Illinois

Kellie Flynn

Prison Review Board of Illinois

Department of Corrections, Cook County

Department of Corrections, Illinois

Elgin Mental Health Center, Illinois

Yu Ai Zhang

Yong Cai Zhang

Xiao Yu

Zhuo Hui Huang

Joseph Kennelly

Irwin Frazin

Metcalf & Associates, P.C.

7
-COMPLAINT-

Patrick Metcalf

Isuf Kola

Patrick McKenna

Karen E Lundgren

Kristin Musto Linsley

Lynn K Hollander

Brent Wiese

Royden Bucio

Ricardo A Wong

W Alvarez

Jessica Ralassi

Emily Mallor

Stephen Fossing

Julie Shopnitz

Cook County Jail

Carla Joiner-Herrod

Amy P. Campanelli

Sharone R. Mitchell, Jr

Ernst A. Halperin

Robert D. Foiles

Bret Mazzocco

Donald Kaul

Michael Wenzel

Kevin C.  Kirk

Barulich Dugoni & Suttmann Law Group, Inc.

James Cummins

Jullian S. Sekona

Neal I. Taniguchi

Priscilla Tovar

Vanessa Jimenez

Golden Rees Scully Mansukhani, LLP

Mark S. Posard

Judith A. Cregan

Clerk of Superior Court of California, San Mateo County

Government of San Mateo County

Leland Davis

Elizabeth K. Lee

Letitia James

Charles Clevert, Jr.

Barack Obama

Michelle Obama

Sasha Obama

8
-COMPLAINT-

Malia Obama

Joseph Biden

Jill Biden

Hunter Biden

Donald J. Trump

Donald Trump, Jr.

Melania Trump

Barron Trump

JD Vance

Israel

Benjamin Netanyahu

Miriam Adelson

Estate of Sheldon Adelson

Andrea Mummery

Joshua James Mummery

Erin Betley

City of Janesville, Wisconsin

Janesville Police Department, Wisconsin

Jason Sanders

Office of Rock County District Attorney

Gerald A. Urbik

Derrick A. Grubb

Shane A. Falk

William Conley

LVM Law Chambers, LLC,

Amanda Nelson

David Peterson

Olivia Peterson

Amelia Peterson

Matthew Peerenboom

Kimberly Peerenboom

Ruark M Allen

Kendra L Allen

Fong Lih Chee

City of Milpitas, California

Santa Clara County, California

Jose Ordana

Parnmukh Raewadee

Damon Ezeikiel Hulick

Pablo Nunez-Estrada

Vianey Dominguez

Susan Lynn Echerk

9

-COMPLAINT-

Tharman Shanmugaratnam
BMO Bank, N.A.
BMO Holdings Inc.
Dennis Pelletier
Board of Regents of University of Maryland System
Mark Khoo
Board of Trustees of California State University System
JP Chase Bank, N.A.
Ronald Hacker
Bag Fund LLC
Marvin Hellenbrand
Jay Koritzinsky
University of New South Wales
Kam Fan Sin
Board of Regents of University of Maryland
University of Baltimore
Dennis Pelletier
California State University System Board of Trustees
Mark Khoo
Quest Diagnostics, Inc.
Marvin Hellenbrand
JC Management, LLC
Carlo Esqueda
John C. Albert
Jay Koritzinsky
BMO Bank, N.A.
BMO Financial Corp.
Vincent Quigg
Jacob Law Group, S.C.
Daniel Conway
Elissa M. Bowlin
Quality Door, LLC
John Kozlik
Zimbrick, Inc.
Thomas J Zimbrick
Scott Lutzke
Mark Klein
Patrick Wagenar
Department of Revenue, Wisconsin
Tony Evers
American Honda Finance Corporation
Rock County Auto Company DBA Rock County Honda
JP Morgan Chase Bank, N.A.

10
-COMPLAINT-

1  Jamie Dimon
2  Alphabet, Inc.
   Google LLC
3  Sundar Pichai
4  Darryl White
   Ally Tan
5  Rick Scott
   Tim Sheehy
6  Deb Fischer
7  Bernie Moreno
   Ted Cruz
8  Nick Begich
9  David Schweikert
   Juan Ciscomani
10 David Valadao
   Ken Calvert
11 Gabe Evans
12 Mariannette Miller-Meeks
   Tom Barrett
13 John James
   Ryan Zinke
14 Don Bacon
15 Thomas Kean Jr.
   Mike Lawler
16 Ryan McKenzie
17 Robert Bresnahan
   Scott Perry
18 Monica De La Cruz
19 Jen Kiggans
   Derrick Van Orden
20
21        And Does 1 Through 18...
                  Defendants
22
23 Plaintiff, Khor Chin Lim, alleges as follows:
   Parties:.
24 1       Plaintiff Khor Chin Lim, (hereinafter referred to as "plaintiff"), of 4048 Ingram Drive,
   Janesville, WI 53546, is a resident and citizen of State of Wisconsin.
25
26 Defendants and allegations against defendants
27
28
                              11
                         -COMPLAINT-

1a.     Defendant the New York State Board of Law Examiners, (hereinafter referred to as "NY Board") is a State's legal entity and service of legal process is on the Attorney General, Letitia James, and the address is Managing Attorney's Office, Empire State Plaza, Justice Building, 2nd Floor, Albany NY 12224.

2.     Defendant State Bar of New York, (hereinafter referred to as "NY Bar"), is the State Bar of New York,  State and service of legal process is on the Attorney General ("AG") of State of New York, Letitia James , Managing Attorney's Office, Empire State Plaza, Justice Building, 2nd Floor, Albany NY 12224.

3.     Defendant John McAlary (hereinafter referred to as "McAlary") is the Director of NY Board. Service of legal process is on the Attorney General ("AG") of State of New York, Letitia James, Managing Attorney's Office, Empire State Plaza, Justice Building, 2nd Floor, Albany NY 12224.

4.      Defendant Diane F Bosse, (hereinafter referred to as "Bosse") is the Director of NY Board. Service of legal process is on the Attorney General ("AG") of State of New York, Letitia James, Managing Attorney's Office, Empire State Plaza, Justice Building, 2nd Floor, Albany NY 12224.

The allegations against the above NY State Bar related defendants are , they acted in conspiracy and failing plaintiff in the bar admission, and for injunctive relief for admission to New York Bar.

5.     Defendant Committee of Bar Examiners of State Bar of California. (hereinafter referred to as the "Cal Committee"), of 180 Howard Street, San Francisco, CA 94105 . Service of legal process is on Rob Bonta, Attorney General of California, 1515 Clay Street, Oakland, CA 94612.

6.     Defendant State Bar of California, (" hereinafter referred to as "Cal State Bar"), an arm of the Judiciary, thus part of the State of California. Service of legal process is on Rob Bonta, the Attorney General of California, 1515 Clay Street, Oakland, CA 94612.

7.     Defendant Esther P. Lin (hereinafter referred to as "Esther ") is the director of California Committee of Bar Examiners, of Cal State Bar, and service of legal process is on Rob Bonta, Attorney General of California, 1515 Clay Street, Oakland, CA 94612.

8.     Defendant Sean M. Selegue (hereinafter referred to as "Sean") is the Chairman of Board of Trustees of State Bar of California, sued in the official capacity. Service of legal process is on Rob Bonta, Attorney General of California, 1515 Clay Street, Oakland, CA 94612

The allegations against the above California State Bar related defendants they acted in conspiracy and failing plaintiff in the bar admission, and for injunctive relief for admission to California Bar.

9.      Defendant National Conference of Bar Examiners (hereinafter referred to as "NCBE" is located at 302 S Bedford Street, Madison WI 53703

The allegations against the above NCBE defendant are, they acted in conspiracy for suppression of MPRE score, resulting in plaintiff's low score when compared to 1996 MPRE passing raw score of 31, to later bad faith low scaled scores of 70 and 70 plus.

10.     Defendant Pearson Education, Inc., ("Pearson Vue") address unknown. A corporation incorporated in a State of US, Delaware, A subsidiary of a UK company.

The allegations against the above defendant Pearson Vue are they acted in conspiracy for suppression of plaintiff's score, for suppressing the test scores for MBE in 2012, and 2021 bar exams and Nursing Board exams from 2007 and failing plaintiff in the bar admission and admission to Nursing Board as a Registered Nurse.

11.     Defendant Michael McCartin (hereinafter referred to as "McCartin"), at all material times deputy attorney of New York, servicer is on AG of New York, Letitia James.

Defendant McCartin filed void documents, letters purporting to be Notice of Appearance in lawsuits where plaintiff sought admission to New York Bar.

12.     Defendant Christian Hummel (hereinafter referred to as "Hummel"), Magistrate Judge of Northern New York, United States District Court, and service of legal process is on AG of US.

13.     Defendant David Hurd (hereinafter referred to as "Hurd") , District Judge of Northern New York, United States District Court, and service of legal process is on Merrick Garland, Attorney General of United States, located at 950 Pennsylvania Avenue, NW Washington, DC 20530-0001.

14.     Defendant Norman A Mordue (hereinafter referred to as "Mordue") District Judge of Northern New York, United States District Court, service of legal process is on Merrick Garland, Attorney General of United States, located at 950 Pennsylvania Avenue, NW Washington, DC 20530-0001.

Singapore Defendants:

15.     Defendant Government of Singapore (hereinafter referred to as "SG"), service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

16.     Defendant, Government Investment Corporation Singapore (hereinafter referred to as "GIC"), is a company incorporated in Singapore with headquarter located at 168 Robinson Road,

#37-01 Capital Tower, Singapore 068912. Rule 4(h), in the manner as in individual in 4(f) ( C ) ( ii ), " unless prohibited by the foreign country law, by (ii) using any form of mail, that the clerk address and sends to the individual and that requires a signed receipt. Service by mail is not prohibited in Singapore.

17.     Defendant, Temasek Holdings Pte Ltd (hereinafter referred to as "Temasek") is a company incorporated in Singapore with headquarter located 60B Orchard Road #06-18 Tower 2, The Atrium@Orchard, Singapore 238891.

18.     Defendant, GIC Real Estate Inc. (hereinafter referred to as "GIC Re"), the company headquartered or incorporated at Delaware, at Address:1209 Orange Street, Wilmington, DE 19801.Registered agent for service of process is: C T Corporation System, 28 Liberty St., New York, NY 10005

19.     Defendant, Lee Hsien Loong (hereinafter referred to as "lhl"),   is a citizen of Singapore. His address is at  Orchard Road, Istana, Singapore 238823, is the former prime minister of Singapore, service of legal process is on the Attorney General of Singapore, Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

lhl in 1992 conspired to hire hitman to injure plaintiff and, in 1994, instigated battery in CAD lift lobby, involved in false, illegal extradition from Malaysia,  stealing of passport in 1994/1995, stole plaintiff Maybank account in 1995, bad faith acquisition of 9 acres of late Lim Peet Kwang's assets in 1998, co-mingling plaintiff's fund and inheritance , his swearing in as prime minister in August 12 , 2004 is perjury, appointment is void. All further incidents were also concealed, his appointment by the SG President is void, in all his terms as prime minister.

20.     Defendant Ho Ching service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

21.     Defendant Ho Peng service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

22.     Defendant People Action Party of Singapore ("PAP"),  is a political party registered with Registry of Society of Singapore, service of legal process is on Lawrence Wong the secretary general of PAP, his office located at Istana, Orchard Road, Istana, Singapore 238823.

23.     Defendant Ministry of Home Affairs of Singapore, with K Shanmugam as the Minister, and service of legal process in on the Attorney General of Singapore, Lucien Wong,

24.     Defendant Registrar, Registry of Society of Singapore, service of legal process in on the Attorney General of Singapore, Lucien Wong,

25.    Defendant Estate of Lee Kuan Yew, executor is Singaporean Lee Hsien Yang, a citizen of Singapore, now in United Kingdom, his address unknown.

26.    Defendant Estate of Kwa Geok Choo, executor is Singaporean Lee Hsien Yang, a citizen of Singapore, now in United Kingdom, his address unknown

27.    Defendant Lawrence Wong (hereinafter referred to as "LW") is a citizen of Singapore, with his address Orchard Road, Istana, Singapore 238823. Prime Minister of Singapore, service of legal process is on the Attorney General of Singapore, Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

28.    Defendant Gan Kim Yong (hereinafter referred to as "GKY") is a citizen of Singapore, with his address Orchard Road, Istana, Singapore 238823. Deputy Prime Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

29.    Defendant, Heng Swee Keat (hereinafter referred to as "HSK"), is a citizen of Singapore, with his address Orchard Road, Istana, Singapore 238823. Deputy Prime Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

30.    Defendant Teo Chee Hean, (hereinafter referred to as "TCH") is a citizen of Singapore, h His address is Orchard Road, Istana, Singapore 238823. Senior Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

31.    Defendant Indranee Rajah (hereinafter referred to as "IR") is a citizen of Singapore, Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

32.    Defendant Maliki Osman(hereinafter referred to as "MO") is a citizen of Singapore, Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

33.    Defendant K Shanmugam (hereinafter referred to as "KS") is a citizen of Singapore. The Minister of Ministry of Law and Minister of Home Affairs, Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

34.    Defendant Desmond Tan (hereinafter referred to as "DT") is a citizen of Singapore, Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

35.    Defendant Josephine Teo ( hereinafter referred to as "JT") is a citizen of Singapore, Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

36.    Defendant Edwin Tong  ( hereinafter referred to as "ET") is a citizen of Singapore, Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

37.    Defendant Chan Chun Sing("CCS") is a citizen of Singapore, Minister of Singapore. Minister of Ministry of Education. Examination and Assessment Board, Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

38.    Defendant Vivian Balakrishnan ("VB") is a citizen of Singapore, Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

39.    Defendant Tan See Leng ("TSL") is a citizen of Singapore, the Minister of Ministry of Manpower, Singapore. Central Provident Fund Board is among the agencies falling under his jurisdiction.   Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

40.    Defendant Masagos Zulkifri ("MZ") is a citizen of Singapore, Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

41.    Defendant Desmond Lee("DL") is a citizen of Singapore, Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

42.    Defendant Grace Fu("GF") is a citizen of Singapore, Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

43.    Defendant Chee Hong Tat("CHT") is a citizen of Singapore, Minister of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

44.    Defendant Lucien Wong (hereinafter referred to as "AG of SG") is the Attorney General of Singapore. His address is Attorney- General's Chamber of Singapore, 1 Upper Pickering Street, Singapore 058288. He is a resident and citizen of Singapore

45.     Defendant Ho Peng Kee, (hereinafter referred to as "HPK") Singapore citizen, address of residence unknown. At all material time, former Senior Minister of State of Law and Home Affairs of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

46.     Defendant Commercial Affairs Department ("CAD"), formerly a agency under ministry of Finance, later was transferred to police force under Ministry of Home Affairs. service of legal process is on AG of Singapore.

47.     Defendant Chan Sek Keong ("CSK") a Singapore citizen. address of residence unknown. An employee of Singapore judiciary,  A Chief Judge, Judge Attorney General, service of legal process is on AG of Singapore.  He was formerly a lawyer at Shok Lin & Bok, a law firm where LP Thean was the managing partner.

48.     Defendant Lawrence Ang Boon Kong, ( hereinafter referred to as "Lawrence Ang") former Senior Principal State Counsel, employee of AG Chambers, Service of legal process is on AG of Singapore .

49.     Defendant Roy Neighbour, ("hereinafter referred to as "Neighbour") a citizen of Singapore, a Community Court judge, address un known. An employee of legal service. Service of legal process is on AG of Singapore

50.      Defendant, Yeo Poh Teck ( hereinafter referred to as "Poh Teck") Singapore citizen, address of residence unknown. An employee of Singapore police force, at all material time, Assistant Superintendent of Police, seconded to CAD as Operation Director. Service of legal process is on AG of Singapore.

51     Defendant Yeo Pia Jee, a citizen of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

52     Defendant Rosalind Chong Kooi Ming, a citizen of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

53.     Defendant Wilfred Nathan, a citizen of Singapore. Service of legal process is on the Attorney General of Singapore ("AG"), Lucien Wong, 1 Upper Pickering Street, Singapore 058288.

54.     Defendant Seah ("Seah") a Singapore citizen. Seah is a family name, upon entering judgment, plaintiff will seek to enter in his correct name. His address of residence unknown. At all material time, an inspector of Singapore police force, service of legal process is on AG of

Singapore. Seah is the last name, his full name unknown, he was seconded to CAD, Ministry of Finance as an officer. Service of legal process is on AG of Singapore

55.     Defendant Henry Tan ("Henry") a Singapore citizen. address of residence unknown. An employee , sergeant of Singapore police force, he was seconded to CAD, Ministry of Finance as an officer. Service of legal process is on AG of Singapore.

56.     Defendant David Tan Lam Kiap is a citizen of Singapore. Address unknown.

57.     Defendant, Loo Ngan Chor ("Loo"), at all material time is a lawyer, and now a Community Court Judge, a Singapore citizen. Service of legal process is on AG of Singapore.

58.     Defendant Lim Chee Onn ("LCO") at all material time is the CEO of Keppel group of company, including Keppel Bank, a protege of lky in labor movements, in NTUC, and now holding various appointment in SG government's statutory board, government-funded university, a Singapore citizen. Service of legal process is on AG of Singapore.

59.     Defendant Singapore Telecommunications Private Limited (hereinafter referred to as "Singtel") is incorporated in March as a separate company in Singapore, and headquartered at 31 Exeter Road, Comcentre, Singapore 239732 .

60.     Defendant, Li Hongyi, (hereinafter referred to as" Hongyi) is a citizen of Singapore, with his address at Orchard Road, Istana, Singapore 238823. He is a son of lhl. Residence address unknown.
61.     Defendant, Li Haoyi,(hereinafter referred to as "Haoyi) is a citizen of Singapore, with his address at Orchard Road, Istana, Singapore 238823. He is a son of lhl. Residence address unknown.

62.     Defendant,Li Yipeng,   (hereinafter referred to as "Yipeng") is a citizen of Singapore, with his address at Orchard Road, Istana, Singapore 238823. He is the eldest son of lhl.

63.     Defendant, Lee Xiuqi,   (hereinafter referred to as "Xiuqi") is a citizen of Singapore, with her address at Orchard Road, Istana, Singapore 238823. She is the daughter of lhl. Residence address unknown

64.     Defendant Liu Tuck Yew (hereinafter referred to as "LTY") of 3501 International Court, Northwest, Washington, D.C. 20008, is the Ambassador of Singapore in USA. Service of legal process is on the AG of Singapore.

65.     Defendant, Lee & Lee ("Lee&Lee") is a law firm in Singapore

66. Defendant Chay Yuen Fatt, a citizen of Singapore. A State Court judge. Service of legal process is on AG of Singapore

67. Defendant Tng Soon Chye, (hereinafter referred to as "TSC") is a citizen of Singapore, his address at 150 South Bridge Road, Fook Hai Building, # 02-19, Singapore 058727.

68. Defendant Lee Fu Nyap, a citizen of Singapore. At all material time an employee of Income Tax Department of Singapore. Service of legal process is on AG of Singapore

69. Defendant, Wong Car Wha ("WCW"), a Singapore citizen, with address now in China.

70. Defendant, Tan Lay Hwa, Margaret ("Margaret") is a citizen of Singapore. A Dentist by profession. Address unknown

71. Defendant, Central Provident Fund Board, Singapore ("CPF"), is a statutory board of Singapore. Service of legal process is on AG of Singapore

72. Defendant Clerk, State Court of Singapore Service of legal process is on AG of Singapore

73. Defendant Minister of Ministry of Law, Singapore, K. Shanmugam . a citizen of Singapore, Service of legal process is on AG of Singapore

74. Defendant Minister of Ministry of Manpower , Tan See Leng a citizen of Singapore, Service of legal process is on AG of Singapore

75. Defendant Minister of Ministry of Education, Chan Chun Sing, a citizen of Singapore, Service of legal process is on AG of Singapore

76. Defendant Vincent Hoong Seng Lei ("Hoong") , a judge of Singapore. a citizen of Singapore, Service of legal process is on AG of Singapore

77. Defendant Deloitte & Touche, LLP, is an accounting , auditor firm in Singapore, the address is 6 Shenton Way, OUE Downtown 2, #33-00, Singapore 068808.

78. Defendant Lim Loo khoon, a citizen of Singapore, address at 6 Shenton Way, OUE Downtown 2, #33-00, Singapore 068808.

79. Defendant, Tan Wei Cheong, a citizen of Singapore, address at 6 Shenton Way, OUE Downtown 2, #33-00, Singapore 068808.

80. Inter-Pacific Petroleum Pte Ltd, 12 Marina Blvd, #18-04, Marina Bay Financial Centre, Singapore 018982.

81.    Cheong Lai Na, 12 Marina Blvd, #18-04, Marina Bay Financial Centre, Singapore 018982.

82.    Cheong Lai Ming, 12 Marina Blvd, #18-04, Marina Bay Financial Centre, Singapore 018982.

83.    Defendant Michael Carp (hereinafter referred to as "Carp") is a resident of California, address unknown.

84.    Defendant Tia Miyamoto, (hereinafter referred to as "Tia") is a resident of California, a present person in charge of GIC real property investment in US. Her address unknown. She is a resident of California.

85.    Defendant, Nancy M Olson ( hereinafter referred to as "Olson") , a partner of law firm Skadden Arps Slate Meagher & Flom LLP of Chicago. She is a resident of Illinois. Her residence address is unknown. The address where she practices is at is 155 N. Wacker Drive, Chicago, Illinois 60606.

86.    Defendant IndCor Properties Inc. (hereinafter referred to as "IndCor") (industrial real estate) is a corporation owned by GIC, the property plaintiff is seeking injunction to freeze, it is located in one of the states in US , but the exact address is unknown.
All partners of Olson at Skadden Arps Slate Meagher & Flom LLP are liable.

87.    Defendant Store Capital Corporation (hereinafter referred to as "Store")  is a corporation owned by GIC, the property plaintiff is seeking injunction to freeze, it is located in one of the states in US , but the exact address is unknown.

88.    Defendant Summit Industrial Income REIT Defendant Summit Industrial Income REIT (hereinafter referred to as "Summit") is an unincorporated open-ended trust owned by GIC, the property plaintiff is seeking injunction to freeze, it is located in one of the states in US , but the exact address is unknown.

89.    Defendant Dream Industrial REIT Defendant Dream Industrial REIT (hereinafter referred to as "DIR") is an unincorporated open-ended trust owned by GIC, the property plaintiff is seeking injunction to freeze, it is located in one of the states in US , but the exact address is unknown.

90.    Defendant Dream Summit Industrial LP Defendant Dream Summit Industrial LP (hereinafter referred to as "Dream LP"), REIT is a legal entity owned by GIC, the property plaintiff is seeking injunction to freeze, it is located in one of the states in US , but the exact address is unknown.

KOM USA Bribery:

91.     Defendant Keppel Offshores & Marine, Ltd ("KOM"), a Singapore Company, incorporated in Singapore, Address unknown.  It was involved in bribery case in Brazil.

92.     Defendant Keppel Offshores & Marine USA, Inc. ("KOM USA") , is a company incorporated in USA , a subsidiary of KOM of Singapore. Address unknown. It was involved in bribery case in Brazil.

93.     Defendant Sean Hecker, an attorney and a citizen of New York, outside counsel of KOM USA, which was involved in bribery case in Brazil.

94      Defendant David A. O'Neil, a citizen of New York, outside counsel of KOM USA.

95      Defendant Debevoise de Flimpton LLC, a US law firm representing KOM USA.

96      Defendant Jeffrey Chow, attorney, in-house counsel of KOM USA, address unknown who pleaded guilty to violation of Foreign Corruption Practices Act.

97.     Defendant John P. Cronan, US attorney-prosecutor, service of legal process on AG of US.

98.     Defendant Bridget M. Rohde,  service of legal process on AG of US.

99.     Defendant Sandra Moser service of legal process on AG of US.

100.    Defendant Stephen E. Richardson service of legal process on AG of US.

101.    Defendant Chow Yew Yuen, CEO of KOM USA in USA. Citizen of Texas.

102.    Defendant Nicholas Choo Kwang Hui, secretary of KOM USA who signed on the guilty plea on behalf  of bank

Lky's group in Australia

103     Defendant Ixom Operations Pty Ltd, incorporated in Australia, service of legal process on AG of Singapore.

104.    Defendant SocGen is the bank in Singapore. address unknown.

Malaysia Defendants

105.    Defendant, Government of Malaysia (hereinafter referred to as "M'sia"), is a sovereign government, service is on Attorney General's Chambers, No. 45 , Persiaran Perdana, Precint 4 , 62100 Putrajaya Wilayah Persekutuan, Putrajaya, Malaysia

106.    Defendant Petroliam Nasional Berhad, service on Attorney General's Chambers, No. 45 , Persiaran Perdana, Precint 4 , 62100 Putrajaya Wilayah Persekutuan, Putrajaya, Malaysia

107.    Defendant Wan Azizah Wan Ismail, a citizen of Malaysia, address unknown.

108.    Defendant Anwar Ibrahim Defendant, Anwar Ibrahim (hereinafter referred to as "Anwar") is a citizen of Malaysia, the  Prime Minister of Malaysia. The defendant's residence address is unknown. Service of legal process is on Attorney General's Chambers, No. 45 , Persiaran Perdana, Precint 4 , 62100 Putrajaya Wilayah Persekutuan, Putrajaya, Malaysia

109     Defendant Nurul Izzah Anwar a citizen of Malaysia, address unknown.

110     Defendant Nurul Ilham Anwar a citizen of Malaysia, address unknown.

111.    Defendant        Nurul Nuha Anwar a citizen of Malaysia, address unknown.

112     Defendant Nurul Iman Anwar, a citizen of Malaysia, address unknown.

113     Defendant Nurul Hana Anwar, a citizen of Malaysia, address unknown.

114     Defendant Tengku Mohammad Taufik Tengku Aziz, ("Aziz") service of legal process at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia

115     Defendant Mohd Bakke Salleh a citizen of Malaysia, residence address unknown. Service of legal process at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia

116     Defendant Estate of Ibrahim Saad, a citizen of Malaysia, residence address unknown. Service of legal process at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia

117     Defendant Mohamed Nazri Abdul Aziz a citizen of Malaysia, residence address unknown. Service of legal process at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia

118     Defendant Jessica Chew Cheng Lian a citizen of Malaysia, residence address unknown. Service of legal process at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia

119     Defendant Ling Fou-Tsong  CEO of AMMB, Service of legal process at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia

120     Defendant, AMMB Holdings Berhad, (hereinafter referred to as "AMMB") is a holding company incorporated in Malaysia.  Its address is at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia.

121.     Defendant Ambank (M) Berhad  (hereinafter referred to as "AmBank") is a bank incorpor`ated in Malaysia, with address at Level 24, Menara AmBank. No.8 Jalan Yap Kwan Seng, 50450 Kuala Lumpur, Malaysia. it is 100% owned by AMMB Holdings Berhad

122.     Defendant, Md Nor Md Yusof, (hereinafter referred to as "Yusof") is an individual citizen of Malaysia. His residence unknown and his business address is 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia.

123.     Defendant, Sulaiman bin Mohamed Tahir, (hereinafter referred to as "Tahir") is the CEO of AMMB Holdings, Inc., his residence is unknown, and his business address is  22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia.

124.     Defendant, Azman Hashim, (hereinafter referred to as "Hashim") is an individual citizen of Malaysia. His residence unknown business address is at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia. He is a director of AMMB

125.     Defendant, Seow Yoo Lin (hereinafter referred to as "Seow") is an individual citizen of Malaysia. His residence is unknown and his business address is at 22nd Floor, Bangunan AmBank Group, No. 55, Jalan Raja Chulan, 50200 Kuala Lumpur, Malaysia. He is a director of AMMB

126.     Defendant Abdul Rauf Rashid, the CEO of EY in Malaysia, also sits on the board of Bank Negara Malaysia, the regulatory board of Banks in Malaysia.

127.     Defendant Abdul Rasheed Ghaffour, a citizen of Malaysia, address unknown.

128.     Defendant Ernst & Young LPT Ernst & Young LPT  (hereinafter referred to as "EY-M'sia) is the auditor of AMMB and AmBank who prepared the consolidated financial statement for the AMMB groups of companies and annual reports. Ernst-M'sia address is Level 23A, Menara Millenium Jalan Damanlela, Pusat Bandar Damansara, 50490 Kuala Lumpur, Malaysia. The defendant as a legal entity is in partnership with all the other Ernst & Young accounting, auditing, consulting partners in the legal entity Ernst & Young Global Limited

129.     Defendant Ernst & Young of New York, auditor in New York, address unknown.

130.     Defendant Ernst & Young of Wisconsin, auditor in Wisconsin, address unknown.

131.    Defendant, Ernst & Young Global Limited (hereinafter referred to as "EY-Global") is at 6 More London Place, London, England, SE12AF. EY-Global is partnership world-wide and each of the partners is liable to plaintiff.

132.    Defendant Teoh Choo Aun ("TCA") a citizen of Malaysia, address unknown.

133.    Defendant Karpal Singh & Co.("Karpal"), a law firm in Penang. Address unknown.

134.    Defendant, Maya Pesona Sdn Bhd ("Maya") a company incorporated in Malaysia with its registered office at Suite 302, Third Floor, Wisma OIB, No. 1 & 2, Jalan Bank, 08000 Sungai Petani, Kedah Darul Aman

135.    Defendant Goh Cheng Hock ("GCH") a citizen of Malaysia, address unknown.

136.    Defendant Chuah Chong Ewe("CCE") a citizen of Malaysia, address unknown.

137.    Defendant. Lum Khee Restaurant Sdn Bhd. ("LKRSB"), company incorporated in Malaysia, 514 Jalan Aman Kulim, Kedah 09000 Malaysia

138.    Defendant, Ah Weng ("AW"), is a Malaysian citizen, of 513 Jalan Aman, Kulim 09000 Kedah Malaysia. ("513 house")

139.    Defendant Ng Choo Hock , a citizen of Malaysia, address unknown.

140.    Defendant Goh Cheng Guan, a citizen of Malaysia, address unknown.

141.    Defendant Bar Council of Malaysia, the attorney admission authority in Malaysia. Address unknown.

142.    Defendant Tan Boon Hee, a lawyer in Malaysia, address unknown.

143.    Defendant Maybank, Sdn Bhd., bank incorporated in Malaysia

144.    Defendant Bank Negara Malaysia, regulatory of banking industry in Malaysia.

145    Defendant Tony Lee Eng Kow,  a citizen of Malaysia, address unknown.

146.    Defendant, Tham Yoke Foong, Vivian, (hereinafter referred to as "Vivian") the address of place of residence is unknown. Her address is Level 24, Menara AmBank. No.8 Jalan Yap Kwan Seng, Kuala Lumpur, Malaysia. Vivian is the ex-wife of Tan Chong Wei, Tan Chong Wei is the younger brother of Tan Chong Kwan. Vivian is an employee of AmBank

147    Defendant, Yin Ching Tan, (hereinafter referred to as "YC") is a citizen of Malaysia. Her residence address is unknown.  She is an employee of AmBank. YC is the youngest sister of Tan Chong Kwan, and Tan Chong Kwan is husband of Allison. YC is Allison's sister-in-law. Her address is Level 24, Menara AmBank. No.8 Jalan Yap Kwan Seng, Kuala Lumpur, Malaysia. She is an employee of AmBank

148.    Defendant, Goh Cheng Guan Holdings Sdn Bhd (hereinafter referred to as "GCG-Berhad"), is a company incorporated in Malaysia and carrying business at 168A, Lorong 5, Taman Bedong Jaya, 08100, Bedong, Kedah, Malaysia.

149.    Defendant Board of Regents of University of Wisconsin System, (hereinafter referred to as "UW Board"), Service of legal process is on the Attorney General ("AG") of Wisconsin, at the address : Wisconsin Department of Justice, 17 West Main Street, Madison, WI 53703.

150.    Defendant Mark D. Griffiths, (hereinafter referred to as "Griffiths") is a citizen of California, with his office address USC Marshall School of Business,3670 Trousdale Parkway, Los Angeles, California 90089, he is a resident and citizen of State of California.

151.    Defendant Drew Winters (hereinafter referred to as "Winters") is a resident and citizen of State of Texas.  His residence unknown. He is a Professor at Texas Tech University 2500 Broadway, Lubbock, TX 79409,  a resident and citizen of State of Texas.

AT&T Defendants:
Defendant AT&T Inc, AT&T Svc, AT&T Corp, and AT&T Mobility are together hereinafter referred to as "AT&T").

AT&T defendants appear hereinafter , service of legal process is on the authorized agents: . Service is on Olga Hinkle, C T Corporation System, 155 Federal Street, Suite 700, Boston MA 02110 USA.

152.    Defendant AT&T, Inc. (hereinafter referred to as "AT&T, Inc."), AT&T, Inc, a Delaware corporation headquartered or having the principal office at 208 S. Akard Street , Dallas, Texas 75202.

153.    Defendant AT&T Services, Inc. (hereinafter referred to as " AT&T Svc")  with its principal office or place of business at  208 S. Akard Street, Dallas, Texas 75202.

154.    Defendant AT&T Mobility LLC (hereinafter referred to as "AT&T Mobility"), which is a Delaware limited liability company, with its principal office or place of business at 1025 Lenox Park Boulevard NE, Atlanta, GA 30319.

155.    Defendant  AT&T Corp.  (hereinafter referred to as AT&T corp.") with its principal office or place of business One AT&T Way , Bedminster, New Jersey 07921.

(

156.    Defendant Harry S. Bennett, (hereinafter referred to as "Bennett"), of 208 S Akard Street , Dallas, Texas 75202 is Vice President & General Manager, AT&T Local Services Division  at all material time, liable due to fraud and piercing of corporate veil.

157.    Defendant Harold W. Burlingame, (hereinafter referred to as "Burlingame"), of 208 S. Akard Street , Dallas, Texas 75202, is Executive Vice President, Human Resources. A citizen of Texas, liable due to fraud and piercing of corporate veil.

158.    Defendant Steven W. Hooper,  (hereinafter referred to as "Hooper"), of 208 S. Akard Street , Dallas, Texas 75202 ,  is President & Chief Executive Officer - AT&T Wireless Services. A citizen of Texas, liable due to fraud and piercing of corporate veil.

159.    Defendant Frank Ianna (hereinafter referred to as "Ianna"), of 208 S. Akard Street , Dallas, Texas 75202 ,is  Vice President & General Manager, Network & Computing Services & AT&T Chief Quality. A citizen of Texas, liable due to fraud and piercing of corporate veil.

160.    Defendant Marilyn Laurie (hereinafter referred to as "Laurie"), of 208 S. Akard Street , Dallas, Texas 75202, is Executive Vice President, Brand Strategy &  Marketing Communications. A citizen of Texas ,liable due to fraud and piercing of corporate veil.

161.    Defendant Gail J. McGovern, (hereinafter referred to as "McGovern"), of 208 S. Akard Street , Dallas, Texas 75202 , is  Executive Vice President, Consumer Markets Division. A citizen of Texas, liable due to fraud and piercing of corporate veil.

162.    Defendant Victor E. Millar , (hereinafter referred to as "Millar"), of 208 S. Akard Street , Dallas, Texas 75202, is President & Chief Executive Officer, AT&T Solutions. A citizen of Texas, liable due to fraud and piercing of corporate veil.

163.    Defendant Richard W. Miller , (hereinafter referred to as "Miller"), of 208 S. Akard Street , Dallas, Texas 75202, is Senior Executive Vice President and Chief Financial Officer. A citizen of Texas, liable due to fraud and piercing of corporate veil.
.

164. Defendant David C. Nagel (hereinafter referred to as "Nagel"), of 208 S. Akard Street , Dallas, Texas 75202 is President, AT&T Labs. A citizen of Texas, liable due to fraud and piercing of corporate veil.
.

165. Defendant John Petrillo  (hereinafter referred to as "Petrillo"), of 208 S. Akard Street , Dallas, Texas 75202 is Executive Vice President, Strategy & New Service Innovation and International. A citizen of Texas, liable due to fraud and piercing of corporate veil.
.

166. Defendant Ron J. Ponder  (hereinafter referred to as "Ponder"), of 208 S. Akard Street , Dallas, Texas 75202 , is Executive Vice President, Operations & Service Management.
A citizen of Texas, liable due to fraud and piercing of corporate veil.
.

167. Defendant Richard J. Srednicki (hereinafter referred to as "Srednicki"), of   208 S. Akard Street , Dallas, Texas 75202, is President & Chief Executive Officer, AT&T Universal Card Services, A citizen of Texas, liable due to fraud and piercing of corporate veil.
.

168. Defendant John R. Walter (hereinafter referred to as "Walter"), of 208 S. Akard Street , Dallas, Texas 75202, is President and Chief Operating Officer. A citizen of Texas, liable due to fraud and piercing of corporate veil.
.

169. Defendant Jeffrey Weitzen  (hereinafter referred to as "Weitzen"), of 208 S. Akard Street , Dallas, Texas 75202, is Executive Vice President,Business Markets Division. A citizen of Texas, liable due to fraud and piercing of corporate veil.
.

170. Defendant  Paul J. Wondrasch (hereinafter referred to as "Wondrasch"), of 208 S. Akard Street , Dallas, Texas 75202, is Senior Vice President, International Policy Development & Operations Support. A citizen of Texas, liable due to fraud and piercing of corporate veil.
.

171. Defendant John D. Zeglis (hereinafter referred to as "Zeglis"), of 208 S. Akard Street , Dallas, Texas 75202, is General Counsel and Senior Executive Vice President. A citizen of Texas, liable due to fraud and piercing of corporate veil.

172.    Defendant Maureen B. Tart (hereinafter referred to as "Tart"), of 208 S. Akard Street , Dallas, Texas 75202, is Vice President , Accounting. A citizen of Texas liable due to fraud and piercing of corporate veil.
.

173.    Defendant, PricewaterhouseCoopers LLP, (hereinafter referred to as "PwC"), of 2121 North Pearl Street Suite 2000, Dallas, Texas 75201 is the auditor for AT&T.

174.    Defendant Kenneth T. Derr   (hereinafter referred to as "Derr"), of 208 S. Akard Street , Dallas, Texas 75202  is a director of  AT&T.    He is a citizen of Texas ,liable due to fraud and piercing of corporate veil.
.

175. Defendant M. Kathryn Eickhoff   (hereinafter referred to as "Eickhoff"), of 208 S. Akard Street , Dallas, Texas 75202 is a director of  AT&T, is a citizen of Texas, liable due to fraud and piercing of corporate veil.
.

176.    Defendant Walter Y. Elisha(hereinafter referred to as "Elisha"), of 208 S. Akard Street , Dallas, Texas 75202 is a director of  AT&T. He is a citizen of Texas, liable due to fraud and piercing of corporate veil.
.

177.    Defendant Ralph S. Larsen    (hereinafter referred to as " Larsen"), of 208 S. Akard Street , Dallas, Texas 75202  is a director of  AT&T .  He is a citizen of Texas, liable due to fraud and piercing of corporate veil.
.

178.    Defendant Donald F. McHenry (hereinafter referred to as "McHenry"),  of 208 S. Akard Street , Dallas, Texas 75202 is a director of  AT&T.   He is a citizen of Texas, liable due to fraud and piercing of corporate veil.
.

179.    Defendant Michael I. Sovern (hereinafter referred to as "Sovern"),    of  208 S. Akard Street , Dallas, Texas 75202 is a director of  AT&T.      He is a citizen of Texas, liable due to fraud and piercing of corporate veil.
.

180.    Defendant Joseph D. Williams (hereinafter referred to as "Williams"),  of  208 S. Akard Street , Dallas, Texas 75202 is a director of  AT&T .  He is a citizen of Texas, liable due to fraud and piercing of corporate veil.
.

181.    Defendant Thomas H. Wyman (hereinafter referred to as "Wyman"), of 208 S. Akard Street , Dallas, Texas 75202  is a director of AT&T.    He is a citizen of Texas.

182.    Defendant Mark Trierweiler, . Service is on Olga Hinkle, C T Corporation System, 155 Federal Street, Suite 700, Boston MA 02110 USA.

183.    Defendant Yok Hing Law, a California citizen residence address at 170mRose Dr, Milpitas, CA  95035.

184.    Defendant Sarah Holiday, service of legal process on Clerk of City of Milpitas, 455 East Calaveras Blvd, Milpitas, CA 95035.

185.    Defendant Ed Gallardo service of legal process on Clerk of City of Milpitas, 455 East Calaveras Blvd, Milpitas, CA 95035.

186.    Defendant Mathew Miller service of legal process on Clerk of City of Milpitas, 455 East Calaveras Blvd, Milpitas, CA 95035.

187.    Defendant City of Milpitas, California service of legal process on Clerk of City of Milpitas, 455 East Calaveras Blvd, Milpitas, CA 95035.

Case No.:
188.    Defendant DuPage County, Service of legal process on Clerk of County, 421 N. County Farm Road, Wheaton, IL 60187.

189.    Defendant Elk Groove Village, Service of legal process on Clerk of  Elk Groove Village, 901 Wellington Avenue, Elk Groove Village, IL 60007.

190.    Defendant Manglo, citizen of Illinois, a police officer of Elk Groove Village I Illinois, service of legal process on Clerk of Elk Groove Village, 901 Wellington Avenue, Elk Groove Village, IL 60007.

Case No. 12CR18264: defendants in Illinois, Sept 15, 2012 false arrest
191.    Defendant Government of Cook County, Illinois, Defendant Government of Cook County of Illinois ("Cook County") , address for service on Clerk, at 118 N. Clark Street, #120, Chicago, IL 60602.

192.    Defendant City of Chicago, (hereinafter referred to as "Chicago") is an Illinois  municipal corporation and service of process is with the Manager or Clerk of the City, whose address is City Hall Office, 121 North LaSalle St, Room 107, Chicago IL 60602. Service of process on all Chicago's employees also will be on the Manager or the Clerk.

193.     Defendant Rahm Emanuel, Major of City of Chicago at all material time. service of process is with the Manager or Clerk of the City, whose address is City Hall Office, 121 North LaSalle St, Room 107, Chicago IL 60602

194.     Defendant Mary Jane Theis , Supreme Court Judge , a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

195.     Defendant P Scott Neville Jr. Supreme Court Judge a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

196.     Defendant David K Overstreet , Supreme Court Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

197.     Defendant Lisa Holder White, Supreme Court Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

198.     Defendant Joy v Cunningham, Supreme Court Judge. A resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

199.     Defendant Elizabeth M Rochford , Illinois Supreme Court Judge. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

200.     Defendant Mary K O'Brien,  Illinois Supreme Court Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

201.     Defendant Robert Gordon,  Illinois Court of Appeal Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

202.     Defendant Bill Taylor, Illinois Court of Appeal Judge. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

203.     Defendant Stuart Palmer, Illinois Court of Appeal Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

204.    Defendant Sharon Oden Johnson, Illinois Court of Appeal Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

205.    Defendant Daniel J Pierce , Illinois Court of Appeal Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

206.    Defendant Mary L Mikv, Illinois Court of Appeal Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

207.    Defendant Jorge Luis Alonso, Associate Judge. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

208.    Defendant Amee Alonso, Associate Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

209.    Defendant James Brown, Associate Judge. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

210.    Defendant Jim Ryan, Associate Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

211.    Defendant Joseph Sconza, Associate Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

212.    Defendant Thomas Bryne, Associate Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

213.    Defendant Paul Biebel, Associate Judge. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

214.    Defendant Leroy Martin, Jr. Associate Judge. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

215.    Defendant Clerk of Court of Appeals of Illinois. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

216.    Defendant Thomas Palella, Clerk, Court of Appeals of Illinois,  a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

217.    Defendant Tina Schillaci, Assistant Clerk. a resident and citizen of Illinois. Service of legal process is on AG of Illinois, 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

218.    Defendant Toni Preckwinkle, a resident and citizen of Illinois. Director of the Board, Service of legal process is at  118 N. Clark Street, Room 230,  Chicago, IL 60602.

219.    Defendant Office of District Attorney of Cook County, a resident and citizen of Illinois. Service of legal process is at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

220.    Defendant Anita Alvarez, former District Attorney of Cook County, also sued in individual capacity  a resident and citizen of Illinois Service of legal process is at  118 N. Clark Street, Room 230,  Chicago, IL 60602.

221.    Defendant Kimberly M. Foxx, current District Attorney of Cook County,  , a resident and citizen of Illinois. Service of legal process is at  118 N. Clark Street, Room 230,  Chicago, IL 60602.

222.    Defendant Adam J C Weber, Deputy Director, Conviction Innocence Unit, Office of District Attorney of Cook County, a resident and citizen of Illinois Service of legal process is at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

223.    Defendant Lus Maria Toledo, a prosecutor, Assistant State Attorney, of Illinois ,  a resident and citizen of Illinois Service of legal process is at  118 N. Clark Street, Room 230, Chicago, IL 60602.

224.    Defendant James Tansey, a prosecutor, Assistant State Attorney,  a resident and citizen of Illinois. Service of legal process is at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

225.    Defendant Michelle Popielewski, a  prosecutor, Assistant State Attorney,  a resident and citizen of Illinois. Service of legal process is at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

226.    Defendant Attila Bogdan , a prosecutor, Assistant State Attorney, a resident and citizen of Illinois Service of legal process is at  118 N. Clark Street, Room 230,  Chicago, IL 60602.

227.    Defendant Abishi C. Cunningham Jr.,  former Public Defender, also sued in individual capacity, is a resident and citizen of Illinois Service of legal process is at  118 N. Clark Street, Room 230,  Chicago, IL 60602.

228.    Defendant Sharone R. Mitchell, Jr. , former Public Defender, also sued in individual capacity ,  a resident and citizen of Illinois Service of legal process is at  118 N. Clark Street, Room 230,  Chicago, IL 60602.

229.    Defendant Emily Goldsmith, Assistant Public Defender,  a resident and citizen of Illinois Service of legal process is at  118 N. Clark Street, Room 230,  Chicago, IL 60602.

230.     Defendant Jason Menard, Assistant Public Defender,  a resident and citizen of Illinois Service of legal process is at   118 N. Clark Street, Room 230,  Chicago, IL 60602.

231.     Defendant Danita Ivory , Assistant Public Defender, a resident and citizen of Illinois Service of legal process is at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

232.     Defendant, Patricia Dillon, Assistant Public Defender,  a resident and citizen of Illinois Service of legal process is at   118 N. Clark Street, Room 230,  Chicago, IL 60602.

233.     Defendant Office of State Appellate Defender, ("OSAD")  Illinois, a resident and citizen of Illinois Service of legal process is at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

234.     Defendant, Lester Finkle, an Appellate Defender of OSAD, a resident and citizen of Illinois Service of legal process is at   118 N. Clark Street, Room 230,  Chicago, IL 60602.

235.     Defendant Ian Jackson, an Appellate Defender,  a resident and citizen of Illinois Service of legal process is at   118 N. Clark Street, Room 230,  Chicago, IL 60602.

236.     Defendant Michael Bennett , an Appellate Defender,  a resident and citizen of Illinois Service of legal process is at  118 N. Clark Street, Room 230,  Chicago, IL 60602.

237.     Defendant Sheriff of Cook County, Illinois, a resident and citizen of Illinois Service of legal process is at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

238.     Defendant Tom Dart, Sheriff of Cook County,  a resident and citizen of Illinois.  Service of legal process is at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

239.     Defendant Office of Clerk of Court, Circuit Court of Cook County,  a resident and citizen of Illinois. Service of legal process is at   118 N. Clark Street, Room 230,  Chicago, IL 60602.

240.     Defendant Dorothy Brown, former Clerk of Court, Circuit Court of Cook County, a resident and citizen of Illinois. Service of legal process is at   118 N. Clark Street, Room 230, Chicago, IL 60602.

241.     Defendant, Iris Martinez, Clerk of Court, Circuit Court of Cook County , a resident and citizen of Illinois Service of legal process is at   118 N. Clark Street, Room 230,  Chicago, IL 60602.

242.     Defendant Gary McCarthy , former Police superintendent, also sued in individual capacity, a resident and citizen of Illinois . Service of legal process is on Manager or Clerk of the City, whose address is City Hall Office, 121 North LaSalle St, Room 107, Chicago IL 60602

243.    Defendant David Brown, a Police superintendent, also sued in individual capacity,  a resident and citizen of Illinois . Service of legal process is on Manager or Clerk of the City, whose address is City Hall Office, 121 North LaSalle St, Room 107, Chicago IL 60602

244.    Defendant Don Jerome , a police officer, Department of Police, City of Chicago, a resident and citizen of Illinois . Service of legal process is on Manager or Clerk of the City, whose address is City Hall Office, 121 North LaSalle St, Room 107, Chicago IL 60602

245.    Defendant Timothy Bialek, a police officer, Department of Police, City of Chicago, a resident and citizen of Illinois . Service of legal process is on Manager or Clerk of the City, whose address is City Hall Office, 121 North LaSalle St, Room 107, Chicago IL 60602

246.    Defendant Jason Sollis, a police officer, Department of Police, City of Chicago, a resident and citizen of Illinois . Service of legal process is on Manager or Clerk of the City, whose address is City Hall Office, 121 North LaSalle St, Room 107, Chicago IL 60602

247.    Defendant Jose Rodriguez, a police officer, Department of Police, City of Chicago a resident and citizen of Illinois . Service of legal process is on Manager or Clerk of the City, whose address is City Hall Office, 121 North LaSalle St, Room 107, Chicago IL 60602

248.    Defendant Darrell Mills, a police officer, Department of Police, City of Chicago  a resident and citizen of Illinois . Service of legal process is on Manager or Clerk of the City, whose address is City Hall Office, 121 North LaSalle St, Room 107, Chicago IL 60602

249.    Defendant Paul Addotta , Senior Parole Officer, Cook County, of Illinois, a resident and citizen of Illinois . Service of legal process is at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

250.    Defendant, Brett Libberton , Prison Department of Corrections, Illinois, a resident and citizen of Illinois . Service of legal process is on AG of Illinois , 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

251.    Defendant Curt D Eubanks, Prison Officer,  Prison Department of Corrections, Illinois, a resident and citizen of Illinois .Service of legal process is on AG of Illinois , 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

252.    Defendant Fidel Echevarria , psychiatrist, Department of Foreign Clinical Psychiatry,  a resident and citizen of Illinois . Service of legal process on Cook County Government Illinois, at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

253.    Defendant, Timothy Olenek , a psychiatrist  of Elgin Mental Health Center, ("EMHC"), Service of legal process is on AG of Illinois , 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

254.    Defendant Mirella Susnjar, psychiatrist  of Elgin Mental Health Center, ("EMHC"), a resident and citizen of Illinois . Service of legal process is on AG of Illinois , 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

255.    Defendant Rolando G Hedriana, a Registered Nurse, of Elgin Mental Health Center, ("EMHC"),. a resident and citizen of Illinois. Service of legal process is on AG of Illinois , 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

256.    Defendant Alice Tracy,  assistant Judge of Kane County, a resident and citizen of Illinois . . Service of legal process is on AG of Illinois , 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

257.    Defendant Kane County of Illinois, (hereinafter referred to as "Kane"),  is the employer of the late Thomas Hartwell, who is former Clerk of Circuit Court of Kane County. Service of legal process is on Clerk of Kane County at 37W777 Route 38 St. Charles, Illinois 60175

258.    Defendant Office of Clerk of Circuit Court of Kane County. Service of legal process is on Clerk of Kane County at 37W777 Route 38 St. Charles, Illinois 60175

259.    Defendant Kellie Flynn, Assistant District Attorney, citizen of Illinois, Service of legal process is on Kane County Clerk, at 37W777 Route 38 St. Charles, Illinois 60175

260.    Defendant Prison Review Board of Illinois. Service of legal process is on AG of Illinois ,100 West Randolph Street, 12th Floor, Chicago, IL 60608.

261.    Defendant Department of Corrections, Cook County. Service of legal process is on 118 N. Clark Street, Room 230,  Chicago, IL 60602.

262.    Department of Corrections, Illinois. Service of legal process is on AG of Illinois , 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

263.    Department Elgin Mental Health Center, ("EMHC"), Illinois. Service of legal process is on AG of Illinois , 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

264.     Defendant Yu Ai Zhang, (hereinafter referred to as "Zhang") is residing at 3035 South Farrell Street, Chicago, IL 60608. She is a resident and citizen of Illinois.

265.    Defendant Yong Cai Zhang is residing at 3035 South Farrell Street, Chicago, IL 60608. He is a resident and citizen of Illinois.

266.    Defendant Xiao Yu (hereinafter referred to as "Xiao"), is residing at 300 West 30th Street, Chicago, IL 60616. She is a resident and citizen of Illinois.

267.    Defendant Zhuo Hui Huang300 West 30th Street, Chicago, IL 60616. She is a resident and citizen of Illinois.

268.    Defendant Joseph Kennelly , plaintiff's hired attorney, his address is 2635 S. California, Chicago, IL 60608

269.    Defendant Irwin Frazin, plaintiff's hired attorney, his address is at  2635 S. California, Chicago, IL 60608

270.    Defendant, Metcalf & Associates , P.C.(hereinafter referred to as "Metcalf PC" ), is a professional corporation organized under the Professional Service Corporation Act, of Illinois, providing service as attorneys in the State of Illinois, Wisconsin and elsewhere. The address is 525 W Higgins Rd, Suite 101, Hoffman Estates, IL 60169.

271.    Defendant Patrick Metcalf (hereinafter referred to as "Metcalf") is attorney of Metcalf PC. The address is 525 W Higgins Rd, Suite 101, Hoffman Estates, IL 60169, is a resident and citizen of State of Illinois

272.    Defendant, Isuf Kola (hereinafter referred to as "Kola")  is a resident of Illinois, an "Of counsel" attorney of Metcalf PC, practicing at 525 W Higgins Rd, Suite 101, Hoffman Estates, IL 60169 and at 800 Roosevelt Road, Building B, Suite 120, Glen Ellyn, IL 60137, is a resident and citizen of State of Illinois

273.    Defendant Patrick McKenna (hereinafter referred to as "McKenna"), was a former Counsel of DHS at Chicago Office, of  525 West Van Buren Street, Suite 701, Chicago, IL 60607. He is sued in his individual and former official capacity. He is a resident and citizen of State of Illinois. Service of legal process is on AG of USA.

274.     Defendant Karen E Lundgren, (hereinafter referred to as "Lungdren"), is Chief Counsel of DHS at Chicago Office, of  525 West Van Buren Street, Suite 701, Chicago, IL 60607, is a resident and citizen of State of Illinois. Service of legal process on AG of USA.

275.    Defendant Kristin Musto Linsley (hereinafter referred to as "Linsley"), is Deputy Chief Counsel, at Chicago, of 525 West Van Buren Street, Suite 701, Chicago, IL 60607, is a resident and citizen of State of Illinois. Service of legal process on AG of USA.

276.    Defendant Lynn K. Hollander , (hereinafter referred to as "Hollander") , associate Counsel of DHS, of 525 West Van Buren Street, Suite 701, Chicago, IL 60607, is a resident and citizen of State of Illinois. Service of legal process on AG of USA.

277.    Defendant Brent Wiese, (hereinafter referred to as "Wiese) of 101 West Congress Parkway, 4th Floor, Chicago IL 60605, is a Supervisory Detention and Deportation Officer ("SDDO") of Immigration and Custom Enforcement ("ICE") of Department of Homeland Security ("DHS") of United States.  He is a resident and citizen of State of Illinois. Service of legal process on AG of USA.

278.    Defendant Royden Bucio, (hereinafter referred to as "Bucio"), of 101 West Congress Parkway, 4th Floor, Chicago IL 60605, is an officer from Immigration and Custom Enforcement ("ICE") of Department of Homeland Security ("DHS") of United States. Service of legal process on AG of USA.

279.    Defendant Ricardo A Wong, (hereinafter referred to as "Wong") of 101 West Congress Parkway, 4th Floor, Chicago IL 60605, is a resident and citizen of State of Illinois, is a field office Director at Chicago, of Immigration and Custom Enforcement ("ICE") of Department of Homeland Security ("DHS") of United States. Service of legal process on AG of USA.

280.    Defendant W Alvarez,  an Immigration and Custom Enforcement  ("ICE") officer, service of legal process on AG of USA.

281.    Defendant Jessica Ralassi, an attorney with DHS, service of legal process on AG of USA

282.    Defendant Emily Mallor, officer at Cook County Public Defendant Office. Service of legal process is at  Cook County Clerk, at  118 N. Clark Street, Room 230,  Chicago, IL 60602.

283.    Defendant Stephen Fossing, licensed clinical Social Worker, at EMHC. Service is on AG of Illinois , 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

284.    Defendant Julie Shopnitz. Registered Nurse at EMHC. Service is on AG of Illinois , 100 West Randolph Street, 12th Floor, Chicago, IL 60608.

285.    Defendant Cook County Jail, Service of legal process is at   118 N. Clark Street, Room 230,  Chicago, IL 60602.

286    Defendant Carla Joiner-Herrod, social worker . Service of legal process is at   118 N. Clark Street, Room 230,  Chicago, IL 60602.

287.    Defendant, Amy P. Campanelli , former director of OSAD, Service of legal process is at 118 N. Clark Street, Room 230,  Chicago, IL 60602.

288. Defendant, Sharone R. Mitchell, Jr., Public Defender of Office of Public Defender of Cook County, also sued in individual capacity. Service of legal process is at Clerk of Cook County, 118 N. Clark Street, Room 230, Chicago, IL 60602.

Case No :21-CIV-04197 defendant in California
289. Defendant Ernst A. Halperin, Court Commissioner, of Superior Court of California, San Mateo County, service of legal process is on AG of California.

290. Defendant Robert D. Foiles, former Judge Superior Court of California, San Mateo County, , service of legal process is on AG of California.

291. Defendant, Bret Mazzocco, a process server, citizen of California, address unknown, engaged in bad faith service of process.

292. Defendant, Donald Kaul, a process server, citizen of California, address unknown. engaged in bad faith service of process.

293. Defendant Michael Wenzel, citizen of California, attorney in law firm, represented Cook County, Kimberly Foxx, Jason Menard, Michelle Popielewski, Lester Finkle in Case No 22-cv-4605, fraudulently stated under oath that the Court at Northern District of California, United States District Court, at Oakland, has no personal jurisdiction when the social worker, of defendant Cook County had contacted Allison Meow Siam Lim, at Redwood City, California.

294. Defendant Kevin C. Kirk, attorney in Illinois, appeared Pro Hac Vice in Case No. 22-cv-4605, together with Wenzel, attorney in California, is a citizen of Illinois, attorney in Illinois. Address unknown.

295. Defendant Barulich Dugoni & Suttmann Law Group, Inc. (hereinafter referred to as "Barulich" ), a law firm with address at 577 Airport Boulevard, Ste. 400, Burlingame, CA 94010, a law firm in California in Case No. 21-CIV-04197.

296. Defendant James Cummins (hereinafter referred to as "Cummins") is an attorney admitted in California, practicing at Barulich Dugoni & Suttmann Law Group, Inc., at 577 Airport Boulevard, Ste. 400, Burlingame, CA 94010. He is a citizen of California.

297. Defendant Jullian S. Sekona Defendant Jullian S. Sekona (hereinafter referred to as "Sekona") is an attorney admitted in California, and at all material time, was practicing at Barulich Dugoni & Suttmann Law Group, Inc., at 577 Airport Boulevard, Ste. 400, Burlingame, CA 94010. She is a citizen of California. Her present address where she works at and for service of legal process is 50 California St, Ste 1900, San Francisco, CA 94108-2736.

298.    Defendant Neal I. Taniguchi, ("Neal"), Clerk of Superior Court of California, San Mateo County. His residence address is unknown. His address where he usually can be found is 400 County Center, Redwood City, CA 94063. Service of legal process is on Clerk, San Mateo County, 555 County Center, 1st Floor, Redwood City, CA 94063.

299.    Defendant Priscilla Tovar, a deputy Clerk of Superior Court of California , County of San Mateo.  Service of legal process is , Clerk of San Mateo County, 555 County Center, 1st Floor, Redwood City, CA 94063.

300     Defendant Vanessa Jimenez, a deputy Clerk of Superior Court of California , County of San Mateo.  Service of legal process is on Clerk of San Mateo County, 555 County Center, 1st Floor, Redwood City, CA 94063.

301.    Defendant Golden Rees Scully Mansukhani, LLP, ("Golden Rees") , a law firm located at 3 Parkcenter, Drive, Suite 200, Sacramento, CA 95825.

302.    Defendant Mark S. Posard, ("Posard") attorney working at Golden Rees at the firm's address in Sacramento.

303.    Defendant Judith A. Cregan ("Cregan") , attorney working at Golden Rees at the firm's address in Sacramento.

Posard and Cregan were defending Cummins in the Case No. 22-cv-8085, being fully well aware that they are not the attorneys for insurance company that provides cover for Cummins' s professional liability.

304.    Defendant Clerk of Superior Court of California, San Mateo County, Service of legal process on clerk

305.    Defendant, County of San Mateo, (hereinafter referred to as "San Mateo") California is a county in the State of  California.  The address of the Clerk of County of San Mateo for service of legal process is 555 County Center, 1st Floor, Redwood City, CA 94063.

306.    Defendant Government of San Mateo County, service of legal process on San Mateo County clerk
307.    Defendant, Leland Davis ,service of legal process on AG of California
308.    Defendant, Elizabeth K. Lee, Service of legal process on AG of California.
309.    Defendant, Letitia James, Service of legal process on AG of New York.
310.    Defendant, Charles N. Clevert, Jr. of legal process is on AG of US.
311.    Defendant, Barrack Obama, (hereinafter referred to as "Obama") is citizen of United States. He is the 44th President of United States and a resident of Washington D.C. The address

of place of residence is unknown. He was the principal person for the LKZ's group to contact to commit bribery in USA to persecute and falsely prosecute plaintiff in USA.

312.      Defendant Michelle Obama, (hereinafter referred to as "Michelle") is a citizen and resident of Washington D.C. , her address of place of residence is unknown. She is the wife of

313.      Defendant, Sasha Obama, daughter of Michelle and Obama, citizen of California, address unknown.

314.      Defendant, Malia Obama, daughter of Michelle and Obama, citizen of California, address unknown.

315.      Defendant, Joseph Biden, resident of Washington, D.C. address unknown

316      Defendant, Jill Biden, resident of Washington, D.C. address unknown

317.      Defendant, Hunter Biden, resident of Washington, D.C. residence address unknown

318.      Defendant, Donald J. Trump, 1100 S Ocean Blvd, Palm Beach, FL 33480.

319.      Defendant, Donald Trump, Jr., resident of Washington, D.C. residence address unknown

320.      Defendant Melania Trump1100 S Ocean Blvd, Palm Beach, FL 33480.

321.      Defendant Barron Trump, resident of New York, address unknown.

322.      Defendant JD Vance, resident of Ohio, address unknown.

323.      Defendant Israel, State of Israel, Service of legal process on the AG of Israel. Address unknown.

324.      Defendant Benjamin Netanyahu, Service of legal process on the AG of Israel. Address unknown.

325.      Defendant Miriam Adelson, citizen of Nevada, address unknown.

326.      Defendant Estate of Sheldon Adelson, citizen of Nevada, address unknown.

327.      Defendant Andrea Danielle Mummery, citizen of Wisconsin , residence address at 4036 Ingram Drive, Janesville, WI 53546.

328.      Defendant Joshua James Mummery, citizen of Wisconsin , residence address at 4036 Ingram Drive, Janesville, WI 53546.

329.      Defendant Erin Betley, citizen of Wisconsin, police officer of Janesville Police Station, Service of legal process on herself, sued in her individual capacity, service of legal process at 11331 Merlet Rd, Beloit, WI 53511.

330.      Office of Rock County District Attorney, service of legal process on Clerk of Rock County, 51 S Main Street, Janesville WI 53545.

331.      Defendant, Gerald A. Urbik, service of legal process on his personal address sued in his individual capacity for acting unauthorized in filing criminal complaint. His address is at 1238 Bruin Ln, Janesville, WI 53545.

332.      Defendant Shane A. Falk, service of legal process on the

40
-COMPLAINT-

333.    Defendant, William M. Conley, (hereinafter referred to as "WMC") , is a resident of Madison, a citizen of Wisconsin, He is sued in official and individual, capacity as District Judge of United States District Courts. His address is 120 North Henry Street, Madison, WI 53703-2559 Service of legal process on Attorney General of US at 950 Pennsylvania Ave, NW Washington, 20530-0001.

334.    Defendant LVM Law Chambers, LLC, 160 Robinson Road, #13-02, SBF Center, Singapore 068914

334.    Defendant Amanda Nelson, Clerk of Rock County Circuit Court, 51 S Main street, Janesville, WI 53546.

335.    Defendant David Peterson, 4049 Ingram Drive, Janesville, WI 53546

336.    Defendant Olivia Peterson, 4049 Ingram Drive, Janesville, WI 53546

337.    Defendant Amelia Peterson, 4049 Ingram Drive, Janesville, WI 53546

338.    Defendant Matthew Peerenboom, ("Matt"), of 4037 Ingram Drive, Janesville, WI 53546
339.    Defendant Kimberly Peerenboom, ("kim") , of 4037 Ingram Drive, Janesville, WI 53546

340.    Defendant Fong Lih Chee, 30 Jalan, ("Fong"),

341.    Defendant City of Milpitas, California, service of legal process on Clerk of City at 455  E Calaveras, Blvd, Milpitas, CA 95035.

342.    Defendant Santa Clara County, California, Service of legal process on Clerk of County, at 110 W Tasman Dr. 1st Floor, San Jose, CA 95134.

343.    Defendant, Jose A. Orduna, (hereinafter referred to as "Orduna"), residence address at 914, 4th Street, #206, Santa Monica, CA 90402.

344.    Defendant, Parnmukh Raewadee, (hereinafter referred to as "Rae"), residence address at 505 cypress, Point Drive, Unit 273, Mountain View, CA 94043.

345.    Defendant Damon Ezekiel Hulick, residence address at 5103 Brookfield PKWY, #105, Madison WI 53718.

346.    Defendant Pablo Nunez-Estrada, residence address at 2199 Peachtree Cir, Pittsburg, CA 94565.

347. Defendant Vianey Dominguez (hereinafter referred to as "Rodriguez") 3277, Tioga Road, Apt 202, Concord, CA 94518.

348. Defendant Susan Lynn Eckert, (hereinafter referred to as "Eckert") of 1004 Oak Tree Court, O'Fallon, IL 62269.

349. Defendant Tharman Shanmugaratnam, service of legal process on AG of Singapore,

350. Defendant BMO Bank, N.A. ("BMO") , a bank with headquarter in Chicago, address unknown.

351. BMO Financial Corp. , ("BMO Fin")holding company of BMO, headquarter in Quebec, address unknown.

352. Defendant Dennis Pelletier, ("Dennis") a resident of Maryland, address unknown.

353. Defendant Board of Regents of University of Maryland System ("Reg Maryland") , address unknown.

354. Defendant Mark Khoo, ("Khoo"), physician , resident of California, address unknown. Service of legal process on AG of California.

355. Defendant Board of Trustees of California State University System , ("CSU-Trustee"), resident in California, Service of legal process on AG of California.

356. Defendant JP Chase Bank, N.A., bank incorporated in USA, address unknown.

357. Defendant Ronald Hacker, ("Hacker"), a California citizen , address unknown

358. Defendant Bag Fund LLC, ("Bag Fund"), a limited liability corporation in Calofornia, address unknown, service of legal process on Vincent Quigg.

359. Defendant Marvin Hellenbrand ("Marvin"), citizen of Wisconsin, address unknown

360. Defendant Jay Koritzinsky ("Jay"), citizen of Wisconsin, address unknown.

361. Defendant University of New South Wales, a university in Sydney, Australia, address unknown

362. Defendant Kam Fan Sin, a citizen of Australia, address unknown.

363.     Defendant Quest Diagnostics, Inc., ("Quest") , a corporation of USA, address unknown

364.     Defendant JC Management, LLC, ("JC") , a limited liability corporation of Wisconsin, address unknown.

365.     Defendant Carlo Esqueda, ("Carlo"), Clerk of Dane County Circuit Court, Service of legal process is on Dane County Clerk,

366.     Defendant John C. Albert ("Albert"), Judge of Circuit Court of Dane County, Service of legal process on AG of Wisconsin.

367.     Defendant Vincent Quigg, ("Quigg"), purported as attorney for Hacker and Bag Fund in 2021 proceedings, a California citizen, address at

368.     Defendant Jacob Law Group, S.C. ("Jacob"), law firm in Wisconsin, represented Marvin in Case No.     failed to file valid Notice of Appearance. Address unknown.

369.     Defendant Daniel Conway, ("Daniel") attorney working at Jacob, citizen of Wisconsin. Address unknown.

370,     Defendant Elissa M. Bowlin, ("Elissa") attorney working at Jacob, Address unknown.

371.     Defendant Quality Door, LLC, ("Quality"), limited liability corporation in Wisconsin. Address unknown. Duplicated garage door key

372.     Defendant John Kozlik ("Kozlik") owner of Quality, liable due to fraud and piercing of corporate veil.

373.     Defendant Zimbrick, Inc., ("Zimbrick"), corporation in Wisconsin.   Address unknown.

374.     Defendant Thomas J Zimbrick ("Thomas") , citizen of Wisconsin , Address unknown, liable due to fraud and piercing of corporate veil.

375.     Defendant Scott Lutzke ,citizen of Wisconsin, address unknown Delayed the repair , an employee of Zimbrick.

376.     Defendant Mark Klein , citizen of Wisconsin , Address unknown, revealed garage door code as builder.

377.     Defendant Patrick Wagenar, citizen of Wisconsin , Address unknown, used illegal. Force as a chiropractor.

378.     Defendant Department of Revenue, Wisconsin, Service of legal process on AG of Wisconsin. Refund less the sum of Homestead credit refund.

-COMPLAINT-

379.    Defendant Tony Evers , citizen of Wisconsin , Address unknown. Service of legal process on AG of Wisconsin.

380.    Defendant American Honda Finance Corporation, corporation is USA. Address unknown.

381.    Defendant Rock County Auto Company DBA Rock County Honda, corporation in US, address unknown.

382.    Defendant JP Morgan Chase Bank, N.A. ("Chase Bank") a Bank in US, address unknown. Manipulated plaintiff's bank statements

383.    Defendant Jamie Dimon, CEO of Chase Bank, address unknown. Manipulated plaintiff's bank statements

384.    Defendant Alphabet, Inc., ("Alphabet"), company incorporated in US, address unknown.

385.    Defendant Google LLC ("Google"), company incorporated in US, address unknown.

386.    Defendant Sundar Pichai ("Pichai"), CEO of Alphabet, address unknown.    CEO of Alphabet, piercing of corporate veil

387.    Defendant Darryl White (White") CEO of BMO, address unknown. piercing of corporate veil.

388.    Defendant Ally Tan, ("Allison") , a citizen of California, of 655 Island Place, Redwood City, CA 94065. She is Lim Meow Siam, the former name used in Malaysia.

The following are to be served in their office in the congress at the Washington D.C..

US Senate:

389.    FL Rick Scott

390.    MT Tim Sheehy

391.    NE Deb Fischer

392.    OH Bernie Moreno

393.    TX Ted Cruz

US House

394.    AK1 Nick Begich

395.    AZ1 David Schweikert

396.    AZ 6 Juan Ciscomani

397.    CA 22 David Valadao

398.    CA 41 Ken Calvert

399.    CO 8 Gabe Evans'

400.    IA1 Mariannette Miller-Meeks

401.    MI 7 Tom Barrett

402.    MI 10 John James

403.    MT 1 Ryan Zinke

404.    NE2 Don Bacon

405.    NJ7 Thomas Kean Jr.

406.    NY 17 Mike Lawler

407.    PA7 Ryan McKenzie
408.    PA8 Robert Bresnahan
409.    PA10 Scott Perry
410.    TX15 Monica De La Cruz
411.    VA 2 Jen Kiggans
412.    WI 3 Derrick Van Orden

413.    The defendants herein as conspirators, regardless as to the time the conspiracy starts, or when they joined the conspiracy later, all conspirators are jointly and severally liable. The conspirators include the defendants that will be sued in the additional lawsuits to be filed later and plaintiff will seek consolidation of the actions.

414. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1-18, inclusive, and therefore alleges and sues the Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

415.    Plaintiff is informed and believes and thereon alleges that each fictitiously named Defendant has acted as a conspirator and is indebted to Plaintiff as hereinafter alleged and that plaintiff's rights against each such fictitiously named Defendant arise from such indebtedness.

416. Plaintiff is informed and believes, and on that basis alleges that all the Defendants herein have engaged in a conspiracy, common enterprise, and common course of conduct, including bribery the purpose of which is and was to engage in the violations of law alleged in this Complaint and have fraudulently concealed the act of bribery. The conspiracy, common enterprise and common course of conducts, bribery and fraudulent concealment continue to the present time.

417.    Whenever reference is made to this Complaint to any act of the Defendants, such allegation shall mean that such Defendant performed the acts alleged in this Complaint either personally through the Defendants' officers, directors, employees, agents and/or representatives acting within the actual or ostensible scope of their authority.

418.    At all times mentioned herein, each of the defendants knew that the other defendants were engaging in or planned to engaged in the violation of law, alleged in this Complaint, pursuant to unlawful purposes. Knowing that the other defendants were engaging in or continue to engage in such unlawful conduct, each of the defendant nevertheless facilitated or is facilitating the commission of such unlawful acts. Each of the Defendants intended to and did encourage, facilitate, or assist in the commission of the unlawful acts alleged in this Complaint , including bribery to commit unlawful, tortious acts in US, a breach of ATA, and each is liable as such, as state, county, municipal corporation, city, department and agency of the government

45
-COMPLAINT-

419.    Plaintiff alleges that Defendant the Government of Singapore Investment Corporation Private Limited ("GIC") is a company incorporated by the Government of Singapore in 1981 to manage Singapore's foreign reserves. GIC invests internationally in equities, fixed income, money-market instruments, real estate and special investments. It is an "agency or instrumentality" of Singapore.

## Jurisdiction

420.    This Court has federal questions jurisdiction relating to US statute, Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-1, et seq;  Alien Torts Act, Alien Tort Statute (codified in 1948 as 28 U.S.C. § 1350; ATS), also called the Alien Tort Claims Act (ATCA). 20 U.S. Code § 1232g - ; Family educational and privacy rights; 1985 Civil Rights Act; Federal Torts Claims Act; Banking statutes, including Check Clearing Act. Tiles 18 U.S.C. Chapter 73, racketeering[1], including : 18 U.S.C. § 1511 obstruction of Justice (relating to the obstruction of State or local law enforcement), Torture. Consuls are sued as defendants, United States is involved.

## Supplemental jurisdiction

421.    Additional claims, if any, arising under state law, also concurrently may be adjudicated in the federal district court, if they are so interrelated that together these two species of claims form part of the same case of controversy. 28 U.S.C. §1367 The state law applicable is the state law of Illinois.

## Venue

422.    Venue is proper in this Northern District of Illinois, where any defendant resides, and substantial part of the events or omissions giving rise to the causes of actions or claim occurred, as Defendant Cook County, City of Chicago, are residents in this judicial district and events or omissions giving rise to the causes of action or claims occurred in this judicial district.

## Choice of Law

---

[1] (1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year;
(B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), …
to section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud),…), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), espionage and theft of trade secrets), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title ), (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), , or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B);**18 USC § 1961(1)**

423.    Plaintiff alleges a more flexible approach to choice of law is justified, drawing from the forum state, the foreign jurisdiction most affected, international law or a combination of these sources if they provide a remedy adequate to redress the international law violations in question. *Tachiona v. Mugabe,* 234 F. Supp. 2d 401 (S.D.N.Y. 2002).

Personal Jurisdiction

General and specific personal jurisdiction
Nation-wide jurisdiction: Racketeering
424.    Bribery in Illinois, obstruction of justice, collusion between Court and Prosecutors as they colluded to stamp various documents fraudulently. Plaintiff alleges that the numerous fraudulent stampings on plaintiff's documents mailed for filing, in Illinois, Cook County criminal prosecution, Case No.12CR18264, Section 2-1401 petition by Plaintiff, stamped on the same page by the Clerk/Deputy clerk of Appellate Court, Circuit Court, and by the prosecution; at times, three stamps on a single page, which is impossible as it was mailed for filings with the Clerk/deputy clerk of the Court, a single stamp is the norm; but some filed out of time, e.g. petition delivered on 10/22/2019 but filed much later on 11/12/2019, and some stamped as received but not filed, some stamped at the wrong pages, some stamped as received and returned, invites the inference of bribery, wrongdoings at the highest level of government, involving racketeering, bribery.

425.    Thus, nationwide personal jurisdiction exists for all out-of-state defendants, pursuant to racketeering statutes and others. In particular bribery, wire fraud,

Personal jurisdiction:
426.    Federal court jurisdiction over persons outside the state in which they sit , no wider than do the local state courts. see *Omni Capital Int'l, Ltd. v. Rudolph Wolff, Co. Ltd.,* 484 U.S. 97, 104-105 (1987). Thus jurisdiction that of Circuit Court of Illinois.

Foreign Defendants:
427.    Court may exercise jurisdiction over foreign defendants: if
(1) the claims arise under federal law;
(2) the defendant is not subject to any State's Court of general jurisdiction
(3) exercising jurisdiction *comports with due process*; Will Co, Ltd v Ka Yeung Lee et al. DC:3:20-cv-05802; Appeal Case No: 21-35617; Ninth Circuit.

428.    Due process is minimum contacts, and in this regards, is based on conspiracy and bribery., "purposeful availment". Malaysia has Consulate General in New York, So has Singapore.

429.    From presence of websites to establish minimum contact as satisfying due process.
-Court may exercise jurisdiction over foreign defendants : *General or specific: Easter v Am. W. Fin.*, 381 F 3d 948.
"Calder effects tests:" websites:

47
-COMPLAINT-

430.    Minimum contact: "purposely directed", operating a passive website, purchasing a domain name, AMA Multimedia, 970 F 3d. 1209.

*Daimler AG v. Bauman et.*

*Argentina plaintiff suing German defendant in US for conduct in Argentina.*

431.    Court may exercise jurisdiction over foreign defendants,:  Jurisdiction based on ATS and TVPA. Assertions under Alien Torts Statute (ATS) 28 U.S. C. § 1350 and Torture Victim Protection Act of 1991 (TVPA), 106 Stat 73, *Mohamed v Palestinian Authority,* 566 U.S.   (2012) slip op., at 1) (only natural persons are subject to liability under the TVPA).

432.    Court may exercise jurisdiction over foreign defendants : entities treated as single entity Alter-ego lky, lhl, Lim Chee Onn, was so "enmeshed in Ixom " routine matters of day-to-day operation", in employing Ben Lim, that the entities, Seatrium (2023, merger of Sembcorp Marine and Keppel Offshore and Marine),  and Ixom, KOM USA, should be treated as a single enterprise for the purpose of jurisdiction: DOE v Unocal Corp., 248 F. 3d. 915, 926 (9th Cir 2001) cited in *Ranza v Nike.*

Conspiracy and bribery: as in addition to nation-wide jurisdiction

433.    In relation to "out-of-state" defendants, including KOM USA, the pleaded facts herein meets the statutory long arm statute and Constitutional due process requirements i.e., "purposeful availment" and "foreseeability " , minimum contacts, as the defendants purposely availed themselves of the advantage of doing business and that the bribes that was paid by conduits AT&T, and by conduit Olson, to all defendants in US, at all over the States in US, they have the minimum contacts.

434.    The effects of conspiracy is thus: 1992 ambush, joined  by 1994 illegal extradition, the grouo gets larger, each is a separate conspiracy, later joined conspirators are liable for earlier conspiracy.

Thus, joint and several liability means, 1992 to 2025, each sub group, 1992 ambush, 1994 illegal extradition, to 2020 lot 168, RM5 millions, 21-CIV-04197, the loss in the case, is added to earlier conspiracy. Later conspirators are liable, timing is immaterial.

Foreseeability:

435.    Personal jurisdiction based on conspiracy is premised on the ground that those who conspired have the notice, constructive notice and or knowledge that they will be sued at this Court as the conspirator.

Piercing of corporate veil:

436.    Piercing the veil of corporate entities as separate legal entities, is permissible in cases where Court seeks to sanction cases of "fraud or promote injustice.", *Hystro Prods., Inc v MNP,*

48
-COMPLAINT-

*Corp.* , 18 F. 3d. 1384, 1388-89. (quoting Van Corn Co. v Future Chem & Oil Corp. 753 F 3 d 565, 569-70 (1985) 7th Cir), in the case involving defendants whose legal entity are corporations.

437.    In the conspiracy of the defendants, it is permissible to draw "the inference of agreement from the nature of the proposals made . . .[and] from the substantial unanimity of action taken upon them by the [defendants].

<u>Common Allegations</u>

<u>Plaintiff alleges that a combination of the laws of SG, Malaysia, New York are applicable where Alien Torts Act is applicable.</u>

438.    Also agency or instrumentality of Singapore are numerous Government-owned and Government-linked corporations, including Keppel Ltd. Seatrium which is newly formed after merging the Sembawang Marine Corporation and Keppel Offshores Marines, Inc. (formerly owned by Keppel Ltd) .

439.    Collectively referred to as "Lky's group" includes the following:

"Former Singapore Prime Minister late Lee Kuan Yew ("Lky") and his eldest son Lee Hsien Loong ("lhl") who was in charge of GIC, and lhl's wife, Mdm Ho Ching in charge of the Temasek Holdings, employees, e.g. Lim Chee Onn, Lawrence Ang Boon Kong, present Singapore Government, associates, governmental agencies, government-owned companies, defendants who are Singapore citizens, and corporation owned by Temasek, and Lee Fu Nyap, Malaysian Tony Lee Eng Kow. "

440.    lhl was CEO of GIC for a long period of time when he was deputy PM in 1990s (so did Lky earlier) and so did his wife, Ho Ching who was in charge of Temasek Holdings, the two companies that control all the fund and reserves of Singapore, accumulated and drawn from the taxes and Central Provident Fund ("CPF") analogous to 401 K in USA.

441.    The GIC and Temasek has no other checks to control them. First Lky, then lhl in control of GIC and Ho Ching in control of Temasek, could use the fund freely. Thus, Ho Ching's salary is unknown.

442.    After the Sept 2nd , 1992 decision of Court of Appeals in Singapore, lky's group started persecuting and prosecuting in bad faith plaintiff in SG and "world-wide", a phrase used by female judge presiding over the plaintiff's motion to set aside service of summons and complaint hearing, Case No. 112-CV-227418,filed on June 27th, 2012 she started out by saying those words, and when construed in the right context, she referred to the incidents in USA, Malaysia, Australia, China. Plaintiff filed on July 5th, 2012.

<u>Ex Parte Motion For Temporary Restraining Order: Persecution and bad faith prosecution in Janesville, hearing date Jan 14th 2025 and Jan 27th, 2025, Feb 3rd 2025, more harm looming immediately and irreversibly, irreparable harm will result, if the parties are not stopped</u>

433.    In USA, over time there were numerous illegal car accidents:

<u>The six illegal car accidents:</u>

434.    Firstly ,on 9-29-2011, car accident,  at around 6.30 a.m. Defendant Jose A Orduna intentionally hit plaintiff's car travelling at around 10 miles an hour in Santa Monica, close to the Court where plaintiff was going to have hearing in SC112269 against Hacker.  Citation was issued by police officer, Brent Wilkening, at Santa Monica, who appeared immediately and asked plaintiff for proof of insurance and stated that plaintiff has none. He proceeded to issue Citation **No: 630983,** Notice To Appear: for misdemeanor, which is void, as it is an infraction, for not possessing proof of insurance and left out information about the speed of car before the accident, proof of insurance stolen from plaintiff's wallet when staying a week at EZ Win All Motel at El Monte, California to attend hearing in lawsuit against Ronald Hacker and Bag Fund LLC, SC112269. Ronald Hacker, with more than 150 cases filed in Los Angeles Court, got the clerk to file it as "SC", indicating small claim, when it is a unlimited jurisdiction claim. And sheriff refused to serve on him and plaintiff engaged a process server in Orange County, far distance away.

435.    Secondly, on 7/19/2012, bad faith car accident at Cupertino Village caused by Defendant Parnmukh Raewadee. She backed her car, with the bicycle rack mounted at the back and back out from the parking lot while plaintiff was driving past. Knocking into the passenger side of the car.

436.    Thirdly, Defendant Vianey , End of May 2023, around Oakland city. Turning her car from the stop light traffic junction and hit plaintiff's car on the passenger side near the side of the car and the wheel.

437.    Fourthly, Defendant Hulick , on Sept 30, 2023, Hulick stopped the car on the road, at a curving highway Belt line and without any emergency light on, casing the impact.

438.    Fifthly, Defendant Susan Echerk, around may 2, 2024 at East St. Louis, Missouri. Ona rainy night around St Louis, caused the car hit from behind on the right side and left after saying she has no insurance.

439.    The sixth incident involving Defendant Pablo , which took place around August 2024,around Sacramento caused the car hit when the traffic was almost not moving and intentionally hit plaintiff's car on the driver's side.

<u>Car tire slashed</u>

440.    On September 12, 2024, plaintiff's car was parked on the car park of Joong Boo Market at Schaumberg, the driver side front left tire was slashed.

441.    They trespassed and stole plaintiff's Ipad, charger and cable on or around Jan 12, 2025.

<u>Filed 3 false charges:</u>

<u>The Defendants conspired and filed 3 charges:</u>

Charge 1.    Dated and served on December 13, 2024, but mailed on as postmarked December 16th, Citation and Complaint, ( Case No.) **CM81D45WV4,** also plaintiff was not at the address during that time.

Charge 2.    Jan 3rd, 2025, Citation [Case No]: **AD764241-1**, citation served, purported to be Neil Bennett, but the sheriff officer who arrested plaintiff is not Neil Bennett. Name printed but not signed.

Bennett is another sheriff, the criminal complaint is fraud, and fabricated by another sheriff.

Charge 3.    Jan 6th, 2025, Criminal Complaint, Not signed by District Attorney, and not signed by Assistant District Attorney, Gerald Urbik, Case No: **2025CF___** [no case number assigned]. In addition there are two counts one for felony and for misdemeanor. The felony can only be charged by filing information and as such it is void, wholly void, or void only as to the felony count. Also the Count 1, felony count, is preceded by **AD764241-1,** the alleged violation/crime is charged in violation of rule against double jeopardy. The only amendment is to the Citation for minor errors, and not filing another charge, alleging the same incident.

Peterson, Peerenboom, has been illegally keeping surveillance on plaintiff's residence.

<u>Plaintiff has no adequate legal remedy</u>:

442.(i) The above-mentioned alleged incidents and the matters as appeared herein, means that plaintiff has no adequate legal remedy; and

(ii) there exist continuous threats to commit battery by hitmen for hire.

Rock County Honda duplicated car keys and theft from vehicle and house keys were also duplicated, trespass to plaintiff's house happened very often.

<u>Immediate and irreparable harm:</u> among others, Deprivation of rights to possess firearms:

443.    In Case 2024CV1299, and 2024CV1300, Commissioner Falk, on 1/6/2025,  in bad faith entered judgment prohibiting plaintiff from possessing firearms, and plaintiff has no adequate legal remedy.

<u>Conspiracy</u>

444.   The Defendants herein conspired and involved in bad faith persecution and prosecution. There are two bad faith Petition For Restraining Order, the next door neighbors have been making loud metal clicking noise, three sounds in a row, repeatedly from early November, and plaintiff found it intolerable thus sought out the telephone number online. It appeared to belong to Joshua Mummery. He kept pounding on the two metal pieces night after night, from about 10.00 plus till about 11.00 plus, and at time early in the morning 3.00 plus in the morning.

445.   As plaintiff turned on the chanting gadget 24 hours non stop, it was impossible to record clearly the metal pounding sounds. Plaintiff then started to post on facebook, and he appeared to track plaintiff for plaintiff's response to his nuisance.

446.   Until one night around December when he pounded the metal pieces, the ugly sound became so loud that plaintiff called on the cell phone to stop him and moved to sleep on the couch in the hall. Sergeant Drout replied to plaintiff's complaint, while at the Amtrak lounge , on speaker phone and he mentioned we both should stop contacting each other, plaintiff spoke to him on December 3rd, 2024 while at Amtrack lounge , where there were free snacks and drinks for the ticket costing around $1039.00 for trip , roomette, to San Jose, starting from the December 3rd, 2024 and arriving on December 6th, 2024. Roomette is room for two persons, with shower and toilet in the car. There were three meals provided during the trip.

447.   For the citation and complaint No.          , plaintiff started at around 8.01 am with "Sed" on the taxi, and arrived at 10.45 am.at union station, bought the ticker in person at around 12.35 pm.

The citation by Erin Betley is frivolous.
Parties
Lee Fu Nyap later was rewarded with job at Chennai, India, became CEO of Ascendas , India at Chennai, while Tng Soon Chye was rewarded works with Legal Aids of Singapore which allows him to maintain a law office, a secretary and and runs a sole proprietorship for a long time. Claim at India is therefore proper, as part of the sum illegally seized from 1998, 2003-2005 and 2020 became part of coffer of Singapore,and Malaysia, and part of Singapore-linked company, including Ascendas, with Lim Chee Onn as CEO.

Parties involved: Lky's group, Ho Peng Kee, Tng Soon Chye, Lee Fu Nyap, Wong Car wha[2], Chong Kuan Keong[3] and others.

---

[2] Classmate and good friend of Lee Fu Nyap, and also Tony Lee Eng Kow, antagonistic with Ong Lee Meng to whom plaintiff lent money while he was at hostel.
[3] Classmate at law school and hostel mate at Yusof Ishak College (Hostel) with , Ooi Keat Gin, Joseph Chew, Khoo Boo Jin, Lim Lian Kee, Tai Chean Meng, Lee Fu Nyap, while he was at law firm David Chong & Co. used by lhl to get information and lhl went to Yusof Ishak College on Saturday outside swimming pool to show his anger.

Tony Lee Eng Kow, as land valuer, worked with Karpal Singh, lawyer of Penang in the acquisition case with Maya Pesona Sdn Bhd as the party in litigation for compensation, since the legal title of lot 14 has been transferred to Maya Pesona Sdn Bhd, and compensation according to the Third Supplemental Agreement, copy is attached and exhibited as **Exhibit A**, is after deducting payment of legal fees incurred by Maya Pesona, Sdn Bhd. The below market compensation.

All that piece of vacant land and hereditaments seksyen 1, H.S. ( D ) 7171. Daerah Timur Laut, Bandar Georgetown. Pulau Pinang. Measuring approximately (2427.920 square feet).

Fong Lih Chee, 30 jalan Meranti, Bagan Ajam, 13000 Butterworth.
Feb 5, 2012

(missing the beginning phrase: we , declare as follows: )
LPK was represented by law office of Karpal Singh & Co. and with expert witness Tony Lee, a graduate from Building and Estate Management, Bachelor degree from National University of Singapore, and he is also from Penang, a licensed land valuer or appraiser.

92.    Due to duress of possibility of incurring a loss , since there is downside risk of loss if the matter proceed to trial, and with the biased Judge and aiding and abetting by lky's group LPK accepted the below market price compensation.

93.    The compensation is about $4.40/per sq feet, while the figure should have been about $6.99/sq ft to above &7.00 / sq ft or higher.   LPK acted under duress and had no choice since the Court , even if appeal is pursued, at that time, will not yield positive results. The agreement in around 1996 was valued at $5.00 per square feet.

92.    Due to duress of possibility of incurring a loss , since there is downside risk of loss if the matter proceed to trial, and with the biased Judge and aiding and abetting by lky's group and Abdul Badawi.

Democrats liable: joint and several liability
Plaintiff avers that because of the illegal extradition in 1994, all court proceedings, are void, in Malaysia, Singapore and USA. Democrats, their agents, employees, associates who later accepted bribes in USA provided by Lky's group are liable as conspirator also for this illegal

extradition, 1992 ambush, and all events in Malaysia, 1995 to present date including events in 2003-2005, in 2020 and Democrats USA as parties who later joined the conspiracy.

31.     Plaintiff filed petition for admission to Malaysia Bar, Case No. 18-933-94 with the High Court in Kuala Lumpur, and served on the parties, including the Bar Council, Sep 7th , 1994.
September 15, 1994, bar council mailed a for,.
Via letter dated October 26, 1994 requested exemption from pupillage, Tan Boon Hee of Butterworth, executed the "Particulars of Master" dated November 3, 1994. And via letter dated November 8, 1994 mailed to the Bar Council the form requesting exemption.
Plaintiff had started the pupillage earlier and by around November, already completed the three months of pupillage when Tan Boon Hee signed on the form.

November 17, 1994 , Bar Council requested "Practicing Certificate" and dates doing solicitor works in Singapore

November 21, 1994, mailed via registered mail the requested information. Receipt dated November 23, 1994.

Plaintiff met the solicitors in Penang, as allegedly courtesy visits listed by Bar council,  as part of the requirements, but was immediately extradited before the petition is granted and plaintiff's status of petition was an uncertainty as there was a few possibilities after the long lapse of time.

SG has been spying on Plaintiff and was tipped off by those in Penang and Kuala Lumpur.

Ambush in 1992
448.     After the Lee Kai case, Lky's group caused the ambush.

Particulars of collusion causing the ambush

1. Tng Soon Chye falsely called plaintiff on a Sunday to meet him at around 12.30 pm at the Law library and his role was concealed.
2. Plaintiff went to the law library and went into the men 's toilet and the cubicle to clear the bowel.
3. A tan-faced men in his late twenties, early thirties climbed and stepped on to the top of cement attached to the wall of the cubicle and caused the injury with a brick with some edges chipped off, acting in wait as a hitman, a set up to injure plaintiff.
4. Plaintiff tried to give chase but was unsuccessful.
5. The brick with some edges chipped off was replaced with a stone and the small pool of blood mixed with water on the surface of the basin in the toilet was cleaned when plaintiff returned to the toilet with police who were stationed at the NUS hospital.
6.Subsequently, nearby Clementi Police Station, Inspector Wong brought plaintiff to nearby construction site to identify any perpetrator but disallowed plaintiff to file police report.

54
-COMPLAINT-

7. Plaintiff called Clementi police station to file police report, unlike in US, individual in Singapore could fill up a form to report a crime and it can not be rejected. Filing false report will results in prosecution. Thus every reports of crimes are investigated. But in plaintiff's case they refused to let plaintiff file police report and thwarted plaintiff's effort to pursue a criminal prosecution.

8.Singtel, the only telephone company then, was under the control of Lee Hsien Yang, so it is not possible to get the records of call made Tng Soon Chye.

449.    Immediately after ambush, Lky's group caused the false root canal treatment
<u>1993 False root canal treatment</u>
Lky's group also conspired, acting as a State, caused false root canal treatment. Chay Yuen Fatt fraudulently recommend Margaret Tan whose supervisor purportedly going to study at Boston University Dental School , Master degree, on false pretext, did the root canal treatment.

Particulars

1. the supervisor of Margaret Tan, is not qualified as she has yet to complete her study for Master degree but represented that she is qualified.
2. She fraudulently represented that the X-ray showed that root treatment is immediately necessary and went on to perform it.
3. On or about year 2003, plaintiff was diagnosed with dental problem in relation to the tooth and further root canal treatment was necessary, which according to the dentist is rare, as usually no further root canal is done since the first was performed.

450.    Lky's group caused the illegal extradition,<u>1994, illegal extradition</u>
Particulars

-bribed police inspector at Alor Star to falsely arrested plaintiff while plaintiff was with plaintiff's late father Lim Peet Kwang ("LPK") at a night market near house in Kulim.
-brought plaintiff to Alor Star and  the following morning arranged and conducted a false hearing before a purported Magistrate, at early hour of 7.00 plus while no court was in session.

Location:
1.no arrest warrant, arrest is illegal.
2.wrong venue, correct venue is Kulim Session Court.
3. wrong judge, correct judge is session Court Judge and not Magistrate Judge.
4. wrong prosecutor, correct prosecutor is DPP, deputy public prosecutor and not the inspector.
Procedures:
5. wrong court, correct court is Session Court.
6. wrong time, early about 6.48 a.m. morning hours, correct time is the court office hours.
7. there is no Service of legal process of any extradition papers.
8. the extradition papers were not filed in the Court.
9. Order of court from SG was not signed. It was fabricated.
10. no scheduling of hearing, no due process, opportunity to file defense.

55
-COMPLAINT-

11. inspector never filed any appearance.

12. Order of magistrate judge, oral judgment, no written judgment, order of court not filed.

13. Wilfred Nathan was never sworn in as witness.

14. No case number assigned; case number, parties not announced in court.

15. name of inspector as prosecutor never disclosed , announced in Court.

16. Inspector of Malaysia police force is not authorized to prosecute extradition cases and is not familiar with court proceedings.

17. Wilfred Nathan fraudulently told the Magistrate that Kuala Lumpur would have extradited plaintiff.

18. police intimidated plaintiff's prospective lawyer.

19. police threatened to handcuff plaintiff after the hearing.

20. Wilfred Nathan engaged in bribery presented a hat to the inspector as "gift" and voided the court proceedings.

Collusion with Anwar Ibrahim and Ibrahim Saad

451.    In 1994, Commercial Affairs Department, Ministry of Finance, incident; there were false arrest, false and unlawful extradition from Malaysia; False charges of three charges filed, including a charge of mandatory whipping of three strokes of caning. SG colluded with M'sia Anwar Ibrahim and Ibrahim Saad.

Particulars

1.    Ibrahim Saad, then the deputy Governor of Penang, his black vehicle with the special government number plate, e.g. PG 2, and with all tint glass window (tint glass was not legal in Malaysia then) parked [by his chauffer] his car on the pedestrian corridor along a row of two storey townhouses, an illegal parking, for a few hours, but was not ticketed or cited, right under the first level where Tan Boon Hee law's office was directly above on the second level Ibrahim Saad is stout supporter and aide of Anwar Ibrahim , Anwar Ibrahim's political secretary. Anwar Ibrahim 1993 to 1998 was the Deputy Prime Minister of Malaysia.

2.    Plaintiff was "kidnapped" by them without any valid legal proceeding.

3.    SG always kidnaps from Thailand any individual in Thailand with the help of Thailand police force even though they have no extradition treaty with Thailand. The same happens in Taiwan, a province of China, not recognized internationally.

4.    Wilfred Nathan noted the dilemma of the young Magistrate in the chambers when plaintiff stated that the Order of the Singapore Court was unsigned, he responded, after observing the Magistrate was uncertain, that in KL (capital Kuala Lumpur where federal administration is located, analogous to D.C. the judge would invariably grant the extradition)

Location:

56
-COMPLAINT-

1.no arrest warrant, arrest is illegal.

2.wrong venue, correct venue is Kulim Session Court.

3. wrong judge, correct judge is session Court Judge and not Magistrate Judge.

4. wrong prosecutor, correct prosecutor is DPP, deputy public prosecutor and not the inspector. Procedures:

5. wrong court, correct court is Session Court.

6. wrong time, early about 6.48 a.m. morning hours, correct time is the court office hours.

7. there is no Service of legal process of any extradition papers.

8. the extradition papers were not filed in the Court.

9. the witness, Wilfred Nathan was not sworn in, as there was no court official in the chambers other than the Magistrate, the inspector, Wilfred Nathan and plaintiff early in the morning, plaintiff was not sworn in either.

10. Order of court from SG was not signed. It was fabricated.

11. no scheduling of hearing, no due process, opportunity to file defense.

11. inspector, not authorized to prosecute, and never filed any appearance.

12. Order of magistrate judge, oral judgment, no written judgment, order of court not filed.

13. Wilfred Nathan was never sworn in as witness.

14. No case number assigned; case number, plaintiff's not handed any extradition papers.

15. name of inspector as prosecutor never disclosed , announced in Court.

16.Inspector of Malaysia police force is not authorized to prosecute extradition cases;

17. Wilfred Nathan fraudulently told the Magistrate that Kuala Lumpur would have extradited plaintiff.

18. police intimidated plaintiff's prospective lawyer.

19. police threatened to handcuff plaintiff after the hearing.

20.Wilfred Nathan engaged in bribery presented a hat to the inspector as "gift" and voided the court proceedings.

452.    Lky's group caused the false 3 charges

<u>Particulars of fraud</u>

1.      Concealment and suppressing about role of Rosalind Chong Kooi Ming, a prosecutor since 1991, falsely stated that she is close to Yeo Poh Teck, Operation Manager, a Assistant Superintendent Police from police force, seconded to CAD and he would assist with the matter.

2.      Concealing , suppressing and distorting about the incident CAD, however , via a fax wrote that no investigation would be launched, with only first page appeared as faxed as plaintiff's fax machine had run out of paper.

3.      Concealing and suppressing the role of Defendant Roy Neighbour, Deputy Director, during a meeting, caused insults and also acting together with an unidentified prosecutor as the

meeting room was purposely left ajar, and the lady prosecutor stated laughingly "it is business" when plaintiff complaint is about cheating.

4.      Concealing and suppressing about the role of Lawrence Ang.

5.      Concealing and suppressing distorting the role of Inspector Seah

6.      Concealing and distorting the role of Henry Tan.

7.      Concealing  and distorting the role of Yeo Pia Jee.

8.      Concealing the role of Loo Ngan Chor.

The conspiring parties:

453.    On or about May 17, 2024, lhl resigned as prime minister, thereafter, Plaintiff sent a letter, enclosing a declaration to current prime minister, defendant Lawrence Wong, as part of and in support of the complaint against lhl, for acting in conspiracy with Inspector Wilfred Nathan, as he then was, in stealing plaintiff's passport and returned to plaintiff. Lawrence Wong, till to date, has not responded. Singapore newly formed government henceforth upon receipt of the letter, becomes a conspirator, the SG Government also a conspirator.

454.    Through overpayment, Lky's group, through Singtel with his youngest son as Chief Executive Officer, involved in bribery in 1995 December, in the purchase of AT&T corporate building, an overpayment to bribe parties in US, University of Wisconsin-Milwaukee, to harm plaintiff. Lky's group thus engaged in decades long of malicious and vicious persecution of plaintiff world-wide in Singapore, Malaysia, US, Australia.

455.    SG is an island and is located south of Malaysia Peninsula. The peninsula is about 500 miles, from north to the south. They are separated by a less than one mile of straits.  The geographical close proximity and the historical fact that SG was part of Malaysia when Malaysia first gained independence from United Kingdom means the contacts between the two countries are extremely frequent. Lky has been Prime Minister since 1965 till 1989 and Dr. Mahathir of Malaysia was also a Prime Minister for a long time, 1981 to 2003 and 2018 to 2020, with Anwar Ibrahim as Deputy PM in Dec 1st, 1993 to Sep 2nd, 1998.

456.    PM Goh Chok Tong as Prime Minister from  Nov 28th, 1990 to Aug 12, 2004. lhl was deputy PM , for those times, together with Ong Teng Cheong and Tony Tan.

457.    1994 Dec, illegal extradition was the collusion of lhl , 1990 to 2004 and Anwar, 1993 to 1998. In 1994 dec, lhl has been in contact with Anwar as deputy as counter-part for more than one year. SG's assets, from revenue and CPF, central provident fund, contributed by salary of

employees, with employer share 17%, and employee about 5%, thus more than 22% was paid into the employee's account managed by Central Provident Fund Board.

Collusion among SG, M'sia Anwar Ibrahim, USA, to seize plaintiff's fund and plaintiff's inheritance, and late LPK's assets, blocked plaintiff's application for law firm registration ($950 application fees paid, stopped issuing results of GCE Malay Exams ($35 application fees paid), denied reinstatement of Permanent resident, blocked admission to Malaysia Bar, including:

Assets and three Land acquisitions in Malaysia

458.    There were three land acquisition of lands owned by late father, Lim Peet Kwang. First in 1985, second in 1998 and the third in 2005.

1. 1985 acquisition.
In 1985, lot 473 was acquired, together with the lot owned by uncle, late father's younger brother's contiguous lot. They acquired 11 acres from late father and 20 from uncle. The government built school, Keladi High School on the land. Lot 168 was the left over land after the acquisition of lot 473.

The acquisition compensation was at a low price, assuming at $1.40 ringgit/ft, totaling around : 11 x 43560 ft x $1.4=Rm $670,824.00

On or about 2020, lot 168 was sold. Lot 168 was sold for about Malaysian Ringgit, RM$5 millions.

The Lidcombe house, near Sydney, Australia, as exhibited in Complaint 21-cv-04197, was purchased around 1996, when late father went to Sydney where his younger brother, plaintiff's uncle,  lives. Probate was also admitted in Australia for the administration of the estate. The house has been sold. But there was no distribution to plaintiff.
Lidcombe, the house with the address at 29/58-64 Frances Street, Lidcombe, NSW 2141, house was bought at about A$200,000.00 in 1996 while plaintiff was enrolled in UNSW and UTS and sold for the sum of about $430,000.00
around 2013/2014.

2. 1998 acquisition
The government acquired nine (9) acres to build low-cost housing. 9 acres at 9 x 43560 x $2.30 = RM$ 901692.00

2003/ 2005 acquisition of lot 14
3.    The government acquired about 30 plus to 50 acres to build Jelutong elementary school. The acquisition disrupted the joint venture and a third supplemental joint venture agreement was entered into, although the initial agreement was signed much earlier in around 1996

The government compensation was about RM $4.6 and the remaining land was built with houses and 11 units were allocated and sold back to the developer at 10% discount, yielding about 1.1 millions.

At about RM 4.60/sq.ft when the First agreement, was agreed at RM5.00. Karpal Singh was the lawyer and Lee Eng Kow the valuer, who utilized wrong valuation method of comparing the price of nearby land and late LPK accepted the compensation under duress as lot 14 has been transferred to allow Maya Pesona to submit plan for housing construction.

The correct valuation is potential profits that could have been gained from housing development.

The joint venture was delayed because many units of houses were to be built and there were not many prospective buyers or demand for the housing. The land has to be levelled and planted trees removed.

The land sold lot 168 : lot 168, in 2020: purchase price of RM 5,217,105-94 (five million two hundred and seven tenth thousands, one hundred and five ringgit and ninety four cents)

Fund seized, co-mingled and channeled world wide
459. (i) Seizing Plaintiff's CPF fund, Malaysia's MayBank bank account in 1995 (ii) 9 acres of late LPK's land in 1998 low costs housing acquisition, below market compensation (iii) 2003-2005 acquisition of lot 14, in Joint-Venture with Maya Pesona Sdn Bhd, assets of late LPK, below market compensation (iv) seizing about RM 5 million from sale proceeds in sale of lot 168 in year 2020, assets of estate of LPK, plaintiff is entitled to 35% and conversion claims against the AmBank (v) plaintiff's claims in lawsuit Case number: 21-CIV-04197, about US $16 millions. (vi) and in blocking lawsuits, including blocking Case No. 22-cv-04605 in Northern California.

Among lawsuits blocked:

460.    Among lawsuits blocked are

(1) Case No. 97-cv-331, US District Court, Baltimore Maryland, [against Regents of University Wis;  Claims against the Regents was blocked in collusion with University Baltimore Dennis Pelletier.
By blocking plaintiff from attending all 5 courses that plaintiff has enrolled in 1997 Fall Semester, MS Finance.
Loss and damages:
Expectation loss: loss of income. $247,000.00
Special damage: Costs and disbursements: filing fees of $350.00 and disbursements, postage , miscellaneous printing charges of $247.00

（注记）

(2) Case No. 11-c-666, US District Court, Eastern Wisconsin, Appeal to Seventh Circuit[ claims against BMO Harris Bank and BMO Group for conversion of check of sum $26030.00, criminal manipulation of bank statement, totaled about $369,000.00 plus punitive damages

Loss and damages: $369,000 plus punitive damages

Special damage : Costs and disbursements: filing fees of $350.00, appeal $500.00, and disbursements, postage , miscellaneous printing charges of $247.00

Travelling to Chicago to file appeal brief, $148.00.

(3) Case No. 12-cv-429, US District Court, Eastern Wisconsin, [admission to New York

Loss and damages:

Expectation loss: loss of income. $247,000.0

Special damage: Costs and disbursements: filing fees of $350.00 and disbursements, postage , miscellaneous printing charges of $247.00

(4) Case No. 12-cv-264, US District Court, Eastern Wisconsin,[against Regents of University Wis

Loss and damages:

Compensatory damages: Expectation loss: loss of income. $247,000.00

Special damage: Costs and disbursements: filing fees of $350.00 and disbursements, postage , miscellaneous printing charges of $247.00

(5) Case No. 12-cv-1390, US District Court, Northern New York, [admission to new York

Loss and damages:

Expectation loss: loss of income. $247,000.0

Special damage: Costs and disbursements: filing fees of $350.00 and disbursements, postage , miscellaneous printing charges of $247.00

(6) Case No. 11-cv-850, US District Court, Eastern Wisconsin, [Mark Khoo,

Loss and damages:

Compensatory damages,  $247,000.0

Special damage: Costs and disbursements: filing fees of $350.00 and disbursements, postage , miscellaneous printing charges of $247.00

(7) Case No. 12-cv-426, US District Court, Eastern Wisconsin, [Marvin Hellenbrand, Thiel)

(8) Case No. SC112269, Superior Court of California, Los Angeles, [Ronald Hacker, Bag Fund LLC.

(9) Case No. 21-CIV-04197, Superior Court of California, San Mateo[ Allison

(10)Case No. 21-CV-1277,      US District Court, Eastern Wisconsin,[Chase Bank, Obama, Cook County

(11) Case No. 21-cv-781, US District Court, Western  Wisconsin, [ Obama, Cook County

(12) Case No. 22-CV-04605, US District Court, Northern California [ Cook, Allison

False arrest:

Defendant Conley prevented the clerk from issuing summons I 22-cv-25, and in [23-cv-323 or 22-cv-323 ](Lim vs Metcalf et al, plaintiff's Notice for Voluntary Dismissal was stated as Motion For Voluntary Dismissal)

The funds are seized and used by the SG, M'sia, and USA's parties, by their family, the country's coffers, and distributed all over the world, "world-wide", including China in 2011 incident, in India to pay Lee Fu Nyap, in Brazil to bribe, as illegal money laundering, bribery in USA, in Australia in hiring Benjamin Lim Pek Kiah.

CPF funds
461.    Plaintiff has worked for 3 and half years in SG, with various contribution by employers which CPF denied plaintiff to withdraw, even though the age is 50 for Malaysia not in SG and 55 for all others.
In USA,
462.    The funds and other bribery were used to pay the individuals, Iky and lhl and their family, Anwar Ibrahim and family, Obama and family, Biden and family, Trump and family,  the arms manufacturer, Lockhead Martin, Boeing, etc.


In Malaysia
463.    The funds were used to prosecute: opposition leader, Mahiaddin bin Mohd Yassin, Najib Razak, Hajah Rosmah Binte Mansor.

In Singapore
464.    In SG, to prosecute Goh Jin Hian, Wong Weng Sun,  Lee Fook Kang and Pritam Singh.

465.    Those funds were distributed all over the world: In SG (from 1998), in China (2011) incident in Shanghai ; India (from 1998, Lee Fu Nyap, who first worked at Property Tax Department of Income Tax Department, was appointed CEO of ( SingBridge), Ascendas-Singbridge group of Company in Chennai, India, and Lim Chee Onn was the CEO of Keppel and others including the ( SingBridge group, a government owned company; Lim Chee Onn as director in Australia, Ixom, Lim Chee Onn's bad faith employment of Benjamin Lim Pek Kiah, plaintiff's late father younger brother, at Ixom Operations Pty Lt; , a strip of land which belonged to Ben Lim, and which could have been sold the estate of LPK and thus widen the front portion of lot 168 facing the road, and makes the sale of lot 168, not only feasible but also will increase

the market price tremendously, lky's group hired Ben Lim to stop him from selling to the estate of LPK.

466.     The funds were involved in the Brazil bribery in Keppel Offshore and Marine, USA, Inc. (2017) and the 2023 Seatrium ; and became mingled as SG assets, Malaysia assets (including Petrolium Nasional Berhad which is a Malaysia Government-owned company ) and assets of the individuals involved others.

467.     Plaintiff has standing to intervene in Brazil, Keppel Offshore and Marine, USA Inc., ( a SG Government-linked subsidiary of Keppel Offshore and Marine, case in 2017, 2023 as part of the bribes of about $55 in 2017, KOM USA, and $54 million in 2023, SembCorp Marine Corp, KOM and SembCorp later merged to become Seatrium in 2023, as the funds were used by the SG Government and SG government-linked companies, i.e. their funds is derived from Plaintiff's entitlement and has been used to harm plaintiff in USA.

468.     Plaintiff alleges that the fraudulent concealment at the swearing in ceremony to uphold the Singapore Constitution, while concealing their crimes (conspiracy to commit battery at law library, authorized battery and assault at CAD, conspiracy in illegal extradition with government of Malaysia, theft of passport, contempt of court of act of stealing passport despite the Court Order, bribery, money laundry, racketeering conspiracy ), as mentioned above, rendered the appointment void, and it vitiated all and everything subsequently. The ("2004 perjury, President Nathan")  first swearing in as prime minister in 2003 by LHL is void and it vitiated everything; no right to call the following general election, the election results are vitiated, no right to appoint, no right as a prime minister.

469.     All budget allocations is void, and thus,all appointment by LHL is void,
5/20/2024, plaintiff wrote to PM Wong about the theft of passport and emailed him about the sum of RM% millions.

470.     PM Lawrence Wong's member of cabinet, as later joined conspirators.The revenue together with CPF funds which earns minimum interests, were channeled into GIC and Temasek holdings, with lhl and Ho Ching as the CEO. Apart from Government reserves, managed by Ministry of Finance, these two holding company act as vehicles for investment overseas and corruptions. Temasek forms many government-owned companies, e.g. Keppel Ltd, Sembawang Marine Corp, Capital Land, Sing-Bridge group of companies, Singapore Airlines, etc. and involved in many scandalous corruptions. SG and Johor, which is a State just across the bridge also has close contacts.

471.    In 2007 and earlier, Singapore political party People Action Party which runs government involved in bribery, and the attorney for Keppel group of company including Keppel Offshores and Marine USA, Inc. ("KOM USA"), a USA corporation, attorney Jeffrey Chow was convicted, he pleaded guilty to a misdemeanor charge in the US District Court, as prosecuted by US Department of Justice. However , a rare unusual sealed document order was made by the judge, effectively preventing the identities of the "senior management" from being disclosed and it became a pretext for Singapore government to avoid prosecuting those involved.

472.    The following are referred to as **"KOM USA prosecutor-defendants"**: USA Department of Justice involved in the prosecution of bribery offence by Singapore Keppel are as follows: John P. Cronan, Bridget M. Rohde (NY), Sandra Moser (Acting Chief, Fraud,), Stephen E. Richardson

473.    They are added so that the identities of the "senior management" involved in the bribery can be disclosed, and for other relief. As they conspired to suppress the identities, and the plaintiff's 2012 conviction, apart from bribes arising from Olson's handling of GIC's purchase of US8.1 billion REIT, Real Estate Investment Trust, in 2012, the bribery and fund in 2007 bribery also played a large part in USA.

474.    Keppel group of companies has a Chief Executive Officer Lim Chee Onn, the so-called protege of Lee Kuan Yew , who was involved in labor movements. In 2010, Lim Chee Onn was appointed as a director of Ixom Property Operations Pty Ltd.  formerly known as Orica Corp. ("Orica"), the change of name was to prevent plaintiff to track down Benjamin Pek Kiah Lim, and the appointment of Lim Chee Onn to "Orica".

SG current government

475.    Lawrence Wong, current sitting Prime Minister of Singapore refused to act despite letters and emails ( cc to lhl) sent to him in 2024, around May and June 2024 in relation to the freezing of RM $ 5 millions from the sale of lot 168 belonged to the estate of Lim Peet Kwang ("LPK") and the stealing of plaintiff's passport.

476.    Plaintiff's Central Provident Fund's withdrawal, which is feasible when plaintiff reaches age of 55 was blocked.  Plaintiff paid SG$950 application fee applying to register a new sole proprietor law firm in Singapore was stalled. Plaintiff also paid SG$35 dollars to get G.C.E. "O" level Malay language results since transcripts is needed to be sent to Malaysia Bar Council as part of requirements for admission to Malaysia Bar. Plaintiff's application to reinstate Permanent Residency, were all stalled or blocked by Lky's group.

477.    Lee kuan yew passed away in 2015, the wife Kwa Geok Choo passed away earlier, their estates are being sued for the acts before their death.

478.    On or about 1988, Meow Foon Lim ("MF"), who is plaintiff's younger sister, a graduate from Singapore Polytechnic (plaintiff's late father paid the sum of about SG$17,000, to Ministry

of Education Singapore, so she broke the bond to work 3 years after graduating from Singapore Polytechnic, in Singapore, bond arising from the tuition grant agreement to study at Singapore Polytechnic. ) She managed to leave and study at UNSW. On or about 1992/1993, Plaintiff's younger sister had just graduated with Bachelor of Architecture from UNSW in 1991 and was immediately employed by Jurong Town Corporation (the CEO of JTC then recently had earlier been convicted by Prime Minister Goh Chok Tong of 4 years imprisonment) as an architect involved in designing heavy industrial factory and as the architect for construction in bad faith after she graduated from University of New South Wales (UNSW) in Sydney when SG went to Sydney to recruit her in bad faith as part of Lky's group plan, scheme or arrangement, to engage in conspiracy to defraud i.e. that a common plan, and design to for concerted action., attempt to escape the stigma of "one" and shift, transplant the stigma to Prime Minister Goh Chok Tong by pretension. Prime Minister Goh Chok Tong has been a political rival and thus LHL prosecutes falsely and filed charges against Prime Minister Goh Chok Tong's son, Dr. Goh Jin Hian and three others[4]. lhl also terminated the Bunker license of the company where Dr. Goh Jin Hian was among the director and caused the Deloitte & Touchee LLC, the appointed company receivers, to sue Dr. Goh Jin Hian and falsely found him liable for US$146 millions, while gleefully omitted to sue the other director. Lawsuit funded by MayBank and SocGen.

479.    Lky's group contacted MF to stop plaintiff from mailing and thereafter, they stole the plaintiff's passport from Court, in conspiracy with Wilfred Nathan and Wilfred Nathan returned the passport to plaintiff.

480.    The Foreign Corrupt Practices Act of19T, as amended, Title 15, United States Code, sections 78dd-I et seq. ("FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign official for the purpose of obtaining or retaining business for, or directing business to, any person.

481.    The defendants, Government of Singapore, and the political party, People Action Party, i.e. led by the late former First Prime Minister Lee Kuan Yew ("Lky") and his son former Third Prime Minister lee hsien loong ("lhl"), their family members, their inner circle, private secretaries, appointed judges, Ministers, Attorney General, government organs, and government-linked companies and their employees, agents and associates (hereinafter referred to as "Lky's group) violated the FCPA, persistently, viciously, and maliciously.

482.    Service of legal process of process on all the state defendants are to be effectuated on all the AG of the Country and States, i.e. USA, Singapore, and Malaysia; States of New York, Illinois, California, and Wisconsin.

---

[4] Teo Theam Chuan, William on 16th September, 2024, pleaded guilty to abetment by conspiracy and sentenced to 12 weeks jail in a false prosecution of market rigging scheme.

483.    Plaintiff is a Malaysian citizen, from city of Kulim, Kedah State, Malaysia, and went to pursue study from on or about May 1980 in Singapore, and graduated in July 1990, and then worked in Singapore {"SG"} from 1991, after plaintiff was admitted as an advocate and solicitor, i.e. attorney in US, on March 23, 1991.

484.    In Singapore, SG's Lee Kuan Yew ("lky") as the First Prime Minister of SG since 1965 independence, passed a vastly unfair amendment to land acquisition legislation in 1973, which resulted in huge loss to plaintiff's then employer in 1991, late Mr. Tan Geok Tee and Madam Ching Mun Fong from Hong Kong ("HK's couple), when land owned by them were acquired (condemned) by the SG government.

485.    The HK's couple decided to retaliate for their huge loss and set up the Lee Kuan Yew and those related and associated with him (collectively referred to as "lky's group") . Plaintiff had informed the HK's couple about the appeal that was then pending in the Court of Appeal, and the HK's couple decided to set up lky, mainly his family and law firm Lee & Lee.

486     After lky's group, including his family and Lee & Lee was set up, they acted as a Government and State, engaged in acts that violated Alien Torts Statues or Alien Torts Acts, and other statutes, criminal racketeering, aiding and abetting in conspiracy with Malaysia government, Government run by Obama Administration and others.  Defendant Joseph Biden is not entitled to immunity for private acts.

Ambush at NUS

487.    On or about end of 1992 and early 1993[5], after the decision of Court of Appeal of Singapore, in Lee Kai Corp (Pte) Ltd v Chong Gay Theatres Ltd [ 1992] SLR 689; [1992] SGCA 55. Suit No: CA 53/1989 ("Lee Kai case") case was decided on September 2, 1992. Decision[6]: LP Thean, Rajendran, J, Yong Pung How, CJ. (hereinafter "Lee Kai" case), Singapore Government ("SG") , in the Cabinet of Prime Minister Goh Chok Tong, were late Lee Kuan Yew[7] acting as Senior Minister, and late Lee Hsien Loong as deputy Prime Minister, acting as a sovereign state,

---

[5] Plaintiff worked as "legal advisor", a description used by the HK couple, shortly after admission as a lawyer in Singapore ("SG") on 3/23/1991, a position analogous to in-house lawyer in US, at the basement of UIC building, where Lee Kai/Lee Tat groups of companies, owned by Hong Kong couple , late Mr Tan Geok Tee and Mdm Ching Mun Fong (the Hong Kong couple) , are located. The owners were former clients of law firm Lee & Lee located at the same building at 17th or 18th  floor. Lee & Lee was started by Lee Kuan Yew ("lky"), his wife Kwa Geok Choo and his brother, Lee Suan Yew[5]. They instructed Lai Kew Chai in the purchase of a few floors of office unit, Golden Miles building. Golden Miles Tower is among the earliest high rise building in Singapore, slightly at the outer boundary of central business district.

[6] There were three judges, but the practice then was only a judge asking questions during the appeal and LP Thean did the questioning and wrote the judgment , the others concurred.

hired hitman, and conspired with Ho Peng Kee, Tng Soon Chye ("TSC"), who was plaintiff's close friend in National University of Singapore law school, to injure plaintiff in the vicinity of law library and did cause the injury of 9 stiches to the back of the head.

488.    In 1993, November,  Plaintiff made a Complaint on behalf of a client from Penang, late father's schoolmate , acting as lawyer in Singapore to request investigation and other appropriate action, including prosecution David Tan Lam Kiap for cheating $200,000.00 which has been handed over to purchase 10% of share of InnoCommerce Group of Company.

489.    SG Government again caused the set up and fraudulent prosecution of plaintiff

490.    No charges were filed, after the CAD incident on January 12, 1994,  Plaintiff returned to Malaysia and started pupillage (chambering) to be called to Malaysian Bar. Lky's group went to Alor Star to illegally extradite plaintiff on or about end of 1994 when plaintiff had completed the pupillage (chambering).

Illegal, fraud on the court,  illegal extradition (kidnapping):1994
491.    SG and Inspector of Alor Star police department, acted in conspiracy to falsely arrest and extradite plaintiff from Malaysia to SG.

492.    Timing: from Jan 12, 1994 to end of 1994, after plaintiff completed chambering of three months[8] , once petition is filed, the petition as announced will be posted on the Notice Board of the Court, in plaintiff's case in Kuala Lumpur High Court,  for the Public to object to the petition, with Tan Boon Hee, having knowledge and contacted by lky's group, and being aware of the caning charge in SG and stated sarcastically that : " in Malaysia those convict facing caning often fainted before the caning commence", and "two elephants quarreled and an ant was trampled under the feet. "  it was Tan Boon Hee who tipped off lky's and the idiotic parking on the corridor as a warning for the immediate illegal extradition, liable as a conspirator.

493.    Tan Boon Hee is the legal advisor of Hang Kang Association located in Kulim, where plaintiff's late father was at times Chairman, and later Chief Operating Officer, translated from Chinese. Plaintiff's late father had approached him about plaintiff doing chambering in his office. Prompted by lky's group, he proceeded to defame[9] plaintiff's late father.  During that time, Tan Boon Hee's mother just passed away, and he stated sarcastically that, plaintiff's late father attended her funeral rites, before the procession, a ceremony and custom where people

---

[8] Chambering of total 9 months, one month exemption for each year of practice in Singapore by from 3/23/91 admission to Singapore bar, to mid or July/august/September 1994, more than 3 years, so exemption for three years from chambering.

[9] He also placed the files of Tang Chen Pin, a Jit Sin High School classmate turned foe, on his table when plaintiff was at his office. He has no extra room. His staffs were not rude but with unusual stares and looks on their faces, knowing plaintiff was unwelcome there.

pay respect by burning incense stick and pay respect. Plaintiff's late father informed plaintiff of his sarcasm. Tan Boon Hee also refused to sign on the Certificate of Diligence.

ATS violation : Malaysia, Anwar Ibrahim

494.     Anwar Ibrahim, Deputy Prime Minister from 1993 to 1998, was colluding with lky's group, when lky was senior minister and LHL was deputy prime minister in Prime Minister Goh Chok Tong's cabinet.

495.     Prior to extraditing plaintiff, a day or so before, Anwar Ibrahim's close aide in Penang, Ibrahim Saad, the deputy governor of Penang, parked his car, with unique license plate, a black color limousine like vehicle, illegally, beyond the curbside, right onto the corridor of the two storey townhouse, a row of the shophouses with Tan Boon Hee 's law office, Tan Ewe & Associates[10], above the parked vehicle. A rare, weird sight that caught the attention of neighboring shop occupants and also the attention of plaintiff's late parents, who were informed and became alarmed.

496.     Wilfred Nathan noted the dilemma of the young Magistrate in the chambers when plaintiff stated that the Order of the Singapore Court was unsigned, he responded, after observing the Magistrate was uncertain, that in KL (capital Kuala Lumpur where federal administration is located, analogous to D.C. the judge would invariably grant the extradition)

497.     Immediately after falsely extradited plaintiff on or about early December 1994, Attorney General of Singapore Chan Sek Keong fraudulently filed 3 charges. Plaintiff's passport was surrendered to the Subordinate Court. After left without passport and stranded at Singapore for a month plus, Plaintiff attempted to mail articles, printed at local printing company to overseas law reviews about Lee Kai case, a case comments, but was stopped by plaintiff's sister Meow Foon Lim (MF) at the post office who called plaintiff and stopped the mailing. Lky's group fearful of them being exposed to overseas, the stigma of "one." Lky's group in conspiracy with Wilfred Nathan, stole plaintiff's passport still surrendered to the Court, and returned to plaintiff.

498.     Plaintiff returned to Malaysia in early January 1995.  Applied for student visa at Kuala Lumpur.

499.     The Board has mailed the Malay Language Exemption to Plaintiff, based on "O" levels , grade C of Bahasa Malaysia language,  but plaintiff did not have the opportunity to mail it to the Bar Council.

500.     Plaintiff arrived in Hawaii in Feb 1995, on a Student visa, and enrolled in Hawaii Pacific University, SG caused plaintiff to enroll language class and transfer to University of Wisconsin-

---

[10]  Tan was never in office, according to the staff, he was doing building construction, Ewe's family was sued for Brand's patent rights theft by manufacturing beer using the name of another company, and Tan was handling the case, ewe was relatively not as experienced.

Milwaukee, incurring loss of tuition fees and living expenses, special damage of about $15,000.00.

First overt case of bribery: Academic dismissal at UWM

501.    LKY's group continued their persecution of plaintiff into US. In 1996 in Milwaukee, Wisconsin, USA. First early Overt act of bribery in 1996;  LKY's group caused bad faith academic dismissal by UWM

502.    It is overt bribery when compared to incident at Hawaii Pacific University, where plaintiff incurred loss of about $15,000.00, and no obvious external interference with contract with the university, as there is contemporaneous sale by AT&T its corporate building in Chicago to Singtel, at an above-market price, around time of plaintiff's bad faith academic dismissal in June 1996 , inflated amount being the bribes, and plaintiff was informed by fellow student it was AT&T, the perpetrator; instructor Drews Winter, Financial Management , hand held a big mobile phone in his hand during class, implying it was AT&T, he graded plaintiff a C+, a below average grade, as the average grade for graduate school is a "B" grade, and after the semester ended in Fall 1995, plaintiff's classmate in Bus 775, "Fixed Income Investment mailed a package of peanut to plaintiff.  The peanut signified the staying on for the next semester when plaintiff was dismissed.

503.    Late Prof, Arthur Warga, instructor for Bus Adm 775, also attended by a Phd student, an elective course, during a class in lecture hall, where he used the overhead projectile to project the slides, where he presented the slides of the movements of the price of the bonds, from about 1960s to 1980s, stated in class that, "stick around", "there is no free lunch" and during the brief recess, was seated at the last row of long benches behind plaintiff, just behind plaintiff.

504.    Those were hints and signals, warnings signs, which plaintiff did not note the significance of it or what they represented then.

505.    The Spring 1996, plaintiff was dismissed academically in bad faith.
                    Particulars of bad faith and conspiracy
1.    Plaintiff was admitted, "probation admit",  MS Financial Analysis, to commence in Fall 1995.   I-20, the document issued by University to international student was duly issued. Plaintiff was enrolled, as suggested by the enrollment advisor into Bus Adm 795, "Fixed Income Investment", an elective class is usually a class to be taken at last semester, after having completed all the core courses requirements. All the other classmates are graduating students and will graduate at the end of Fall 1995, except plaintiff who just started the Master Degree program. Also, they have listed many prerequisites, what they call the Foundation Courses, eg. accounting, etc, to be completed before starting on the core course, for Financial Analysis. But they recommended Bis Adm 775, a "seminar", conducted not in the usual lecture hall, but in a conference room, with lesser number of students, among them a Phd student, attended by those graduating the next semester.

2.      At UWM, it is the enrollment, probation admit, 1995 Fall semester, around end of august, early September 1995, graduate school of business, jump the queue the direct enrollment in Bus Adm. 795, an elective class, while plaintiff has plenty of classes to complete before proceeding to the elective class Bus Adm 795. "Fixed Income Investment". Plaintiff completed the first semester. Elective class is usually undertaken after completing all required classes and student chooses the elective to fulfill the number of credits requirement in order to graduate.

3.      Probation admit allows the UWM to academically dismiss on much easier grounds. Compared to student at undergraduate school, even if the GPA falls below 2, the student can take additional class to raise the overall GPA and graduate at GPA 2, with a little delay, but not academic dismissal, which entails writing off all payments made, course credits earned, perhaps for the preceding 3 and a half years, and efforts, time and costs all wasted.

4.      At UWM, at 2 credits per class, plus the accounting foundation class that plaintiff was required to take, plaintiff's estimated time to graduate is about two years.

5.      In Graduate school, a total of 30 semester unit, based on 3 credit each class is required in order to graduate. Thus, a typical graduate program, at 12 credit per semester, will take 3 semesters to complete and graduate. While at University of Baltimore later in 1997, plaintiff enrolled "full load", 15 credits, the maximum credits that university allows student to enroll, can't enroll in 30 credits and graduate in one semester, but due to the lawsuit against the Board of Regents of University of Wisconsin System, plaintiff was compelled to seek psychiatrist treatment, in order to withdraw from all classes enrolled, at 15 credits, more than tuition of $5000.00 dollars was refunded, but not the fees, of less than $300.00

6.      In the second semester, 1996 Spring semester, plaintiff enrolled in 2 classes with Associate Professor Griffiths, a Canadian then. Asso Prof. Griffiths at the second week or so, stated that he would hand out a take home exam, and the take home exams is not going to be the same. He initially stated the total points is 20. Later, he changed it to 15 after the answers were graded. He finally graded plaintiff 5/15. And returned the answers in the sequence of highest marks to the lowest and plaintiff with 5/15 was the last person to get the graded answers. It looks like a circus of humiliation. He also wrote on the Answer scripts that plaintiff should see international student advisors.

7.      UWM's dismissed plaintiff on academic grounds, by grading 2 "F" for courses, both by Griffiths, (i) Investment and (ii) Financial Strategy, from graduate business finance school. By grading 5/15, the lowest in the class, during the beginning of the term/semester, Prof Mark Griffiths, stated plaintiff should see the international student advisor. And distributed the graded answer scripts in the order of purported merits, and plaintiff got the lowest of 5/15, thus, got the graded answer last. In Maryland District Court, in Baltimore, plaintiff filed Case No : 97-Cv-331.

8.      Griffiths wrote on the answer script, stating that Plaintiff should see an international student advisor. Plaintiff has spent first semester there, and that was the second semester . Plaintiff had another class, Investment, with him. And he similarly included numerous questions on the mid-term, most of which were not similar in the text and required other concepts to solve the problem. He also failed Plaintiff for the exam, on the course "Investment". He never disclosed how the others performed in the Investment class. But for the 5/15, he announced in class that the lowest is 5 and the highest is 12, he handed out the answer scripts in the order of the highest score, from the highest to the lowest score. Plaintiff being the last person to get back the answer script and the grade. He was determined to humiliate and cut short plaintiff's study. In 1997, Plaintiff filed a case, Case No. 97-CV-0331, in United States District Court, Maryland, against among others, Mark Griffiths.

9.      The F was changed to W, after plaintiff wrote to UWM to apply to complete the degree.

10.     The unofficial transcripts demonstrates the bribery , LKY's group, democrats continued from 1995 till to 2020/2021, and to date.

11.     The graduate program was fraudulently changed from MS Financial Analysis to MS Management.

12.     Concealment of bribes.

506.    The fraudulent unofficial transcripts as events taking place after the initial fraud of bad faith academic dismissal, confirms the initial fraud

Special damages:
Loss and damages: tuition fees and living expenses: $21,000.00 plus.

Compensatory damages: ATA,  Reliance loss, expectation loss, mental suffering, treble damages, punitive damages, or restitution damages,

507.    AT&T was conduit of bribes by Lky's group. The parties involved are as follows:

AT&T Inc., AT&T Services Inc., AT&T Mobility LLC , AT&T Corp.,  Mark Treirweiler, Harry S Bennett, Harold W Burlingame , Steven W Hooper, Frank Ianna, Marilyn Laurie, Gail J McGovern , Victor E Millar , Richard W Miller, David C Nagel , John Petrillo, Ron J Ponder, Richard J Srednicki, John R Walter , Jeffrey Weitzen , Paul J Wondrasch , John D Zeglis, Maureen B Tart, PricewaterhouseCoopers LLP , Kenneth T Derr  , M Kathryn Eickhoff  , Walter Y Elisha, Ralph S Larsen, Donald F McHenry, Michael I Sovern, Joseph D Williams , Thomas H Wyman, i.e. All the defendants from AT&T, the directors , management are collectively referred to as "AT&T defendants".

508.    AT&T Vice President who was recruited just about 9 months earlier , VP Harry S. Bennet resigned due to pressure by the Chairman and CEO of AT&T late Robert E. Allen who recruited him to be the next executive, but Bennet abruptly resigned, presumably due to disagreement with late Alan's decision. Alan is not included in this action as he has since passed away, his estate may be included later. AT&T financial statement then listed the management, including the parties as follows:

Robert E. Allen* . . .62  Chairman of the Board and Chief Executive Officer

Harry S. Bennett . . .52  Vice President & General Manager, AT&T Local Services Division

509.    AT&T involved in making false entry on financial statements.

510.    Plaintiff avers that the sale which is bribery in disguise took place in December 1995, close to the bad faith academic dismissal in the following June 1996 was a cover to pass bribes to commit illegal acts against plaintiff.

511.    The auditor PwC at all material time is a party to the transaction. All parties engaged in the crime of falsification of financial records to conceal the bribery.

512.    Bribery, accomplice, accessory after facts, conspiracy. AT&T, has involved itself in bribery as the channel became the conduit for the passage of bribes and criminal money laundering, to harm plaintiff.

UW-Milwaukee, 1995-1996
513.    Fraud, breaches of contract and fiduciary duty took place at University of Wisconsin-Milwaukee in 1995 fall to June 1996. Bribes using AT&T as conduit and paid by disguised purchase of AT&T building by Singtel.
                            Particulars of fraud
(1).    I-20 wrote MS, Management
(2)    Enrolled in Bus Adm 795, an elective course
(3).    Falsely represented that admission is to an ordinary graduate program, MS Financial Analysis.
(4).    Drew Winters falsely facilitated a so-called teaching assistant who is not qualified to conduct a class in Financial Management, when he has no such "teaching assistant"
(5).     Suppression of grade in Financial Management (C+) (Winters), Operation Management (B+), Financial Strategy (F), Investment (F). the two F was graded by Mark Griffiths.
(6)    Fabrication of unofficial transcripts , changing MS, Financial Analysis to MS Management In 2021.
(7).    Bad faith suppression of GPA. And bad faith continued probation. continued "probation admit" due to C+, B+, dragging down the GPA to below 3.0.

(8) .     Bad faith academic dismissal.
(9).      Concealment of bribes from Lky's group and Democrats
(10).     Concealment bribes facilitated by AT&T and paid by Singtel.
(11).     Falsely stated that plaintiff have to see an international student advisor.
(12).     Drew Winters held a handphone while conducting a class
(13)     Drew Winters got a "teaching assistant" , a Phd Candidate to conduct a class when no
fund has been allocated for the teaching assistant to conduct a Master level class, and such
candidate does not have the credentials to do so.

Bus Admin #795, Fixed Asset Management is an elective.
the academic dismissal for 2 "F" grades based on the unique "probation admit" status on
second semester.

514.     Plaintiff avers that AT&T, Inc. has engaged in fraudulent concealment and fraudulent SEC
filing in Form 10K, annual reports from financial year ending December 31, 1996 to Financial
year ending December 31, 2022 and it is continuing. The bribery is fraudulently concealed.
And in New York, violation of falsification of financial records, penal codes.

Lee Hsien Yang as CEO of Singtel dealt directly with AT&T.

515.     In the 1995 December sale of AT&T property which was in substance a bribery to harm
plaintiff at UWM, Lee Hsien Yang was the CEO of Singapore Telephone Company, Singtel, at the
time. This is a possible solution and in all probability the solution to get around the issue of
being detected for bribery and the problem of being convicted.

516.     A disguise, for the bribery. Plaintiff is also entitled to restitution damages and the
defendants are not allowed to benefit from their unlawful/tortious conduct. The sale by AT&T
to Singtel in December 1995 is disguised and it was the conduit for bribery by LKY's group to
defendants in US, including individuals at UWM to harm plaintiff in US. The contract is
unenforceable due to illegality.

517     Directors and senior management listed above, and Mark Trierweiler who made the
announcement as public relation officer, or similar function, agreed to be part of the bribery
scheme. Pricewaterhouse, as auditor, also is among the conspirators, in addition to those who
signed on the relevant  financial statements throughout the years from 1995 to the present
date. The bribery has since been suppressed.

Bar admission to New York and California< and MPRE
518.     MPRE  1996 raw score 31, translated into more than 86, satisfied California score
requirement. 31/50 raw score reported.

519.     In 2011, instead of raw score they reported Scaled score of 73 on 11/11/ 2011. Exams

And 70 in 2021.

520.     Scaled score allows MPRE to calibrate the score, purported to adjust the score according to the difficulty of the question. Scaled score reporting is not acceptable that instead of the scantron score, they adjust up or down the score.

521.     November 2021 MPRE score, reported on 12/01/2021: 70.

From a higher than 86 in 1996, it became 70 in 2021.

Bar Exams fraud

Particulars of fraud

1. Case No. 12-cv-429-CNC, Michael McCartin failed to enter appearance.
2. Case No 12-c-1390 Judge Hurd conspired with Michael McCartin to stall the Ex parte motion for Temporary Restraining Order.

Conspiracy, bribery, racketeering

522.     It involved conspiracy and bribery, racketeering with then Malaysia's Deputy Prime Minister, Anwar Ibrahim, 1993-1998, to falsely extradite plaintiff from Malaysia("M'sia"). In 1994, SG filed false three charges, lky, LHL and cronies conspired and stole plaintiff's passport, then conspired and with bribery in an unheard before, bad faith land acquisition , for purported non-existent, low cost housing, 9 acres of land belonged to plaintiff's late father, in 1998[11]; mala fide acquisition of part of lot 14 involved in Joint Venture, with development plan submitted by Joint Venture Partner, Maya Pesona Sdn Bhd already submitted and approved by the Kedah State Government, to build Jelutong Elementary School, (Sekolah Kebangsaan Taman Jelutong) near the Penang/Kedah border in 2003-2005[12] to acquire plaintiff's late father lands in Kulim, Kedah, Malaysia, in bad faith, LHL purporting to act, since the 2003 perjury had voided his appointed,  as Prime Minister of SG, acting in concert with then Malaysia Prime Minister, Ahmad Badawi, (Prime Minister, M'sia, Oct 31, 2003-april 2, 2009);  schemed to defraud[13] , to fraudulently convert in 2020 with Prime Minister Anwar Ibrahim of M'sia; and co-mingled plaintiff's funds and assets, those of plaintiff's late father in 1998 mala fide low cost housing land acquisition, 2003-2005 acquisition of part of lot 14,  with coffers of SG and M'sia, and

---

[11] Plaintiff filed lawsuit, Case No.  97-cv-331 at United States District Court, Baltimore Maryland, in 1997. The 1998 low cost housing land acquisition is a pretext, a concocted fraud as Malaysia has never built low cost housing unless they are tall building, for example in Penang, high rise low cost housing, not single landed houses. It is cost effective use of land to build high rise. Minimum amount of land used and many units constructed.

[12]   Articles sent to University of Stanford, University of California-Berkeley, in 2001.

[13] And in relation to Malaysia, violations of Malaysian Anti-Corruption Commission Act 2009, MACC (2009) (bribery); The Anti-Money Laundering, Anti-Terrorism Financing and Proceeds of Unlawful Activities Act 2001 (AMLA)(2001), Section 14(1)(a)(verification and reporting for sum above threshold); and Financial Services Act, (FSA) (2013) (false entries and others ); Income Tax Act (failure to furnish notice of chargeability ) which provides for criminal sanctions.in addition, the fraud/deceit is also covered by Penal Code.

invested it all over the world and in USA continue to file false charge and confiscate plaintiff funds and assets.

523.    In US, their actions thus include bribery, criminal money laundering, racketeering, 18 USC §1961 (1) (A) bribery..(1)(B).  indictable under section  201 (bribery), ..section 1344 (relating to financial institution fraud),1341 (relating to mail fraud), 1343 (relating to wire fraud), 1503 (relating to obstruction of justice, 1510 (relating to obstruction of criminal investigation), 1511 (relating to the obstruction of State or local law enforcement, 1512 (relating to tampering with a witness, victim, 1952 (relating to racketeering), 1956 (relating to the laundering of monetary instruments, 1958 (relating to the use of interstate commerce facilities in the commission of murder-for-hire),1960 (relating to illegal money transmitters), ...(5).. "pattern of racketeering"  : obstruction of justice.

524.    Conspiracy to fraudulently convert proceeds of sale of lot 168, in 2020: purchase price of RM 5,217,105-94 (five million two hundred and seventeenth thousands, one hundred five ringgit and ninety four cents)

The land:
525.    lhl and Anwar, their cronies (associates), including AmBank, AMMB, their auditor, Ernst & Young LPT in 2020, acting in conspiracy, bribery, schemed to defraud, and fraudulently convert the sum of about RM 5 millions, proceeds of sale of lot 168, estate of LPK lawyer, Carolyn Ooi Fi Lu, of law firm, Tan Lok Heah & Asso recommended by Liu Ting Ling, classmate of MF, from purchaser law firm Anuar Ng & Co. Ng Choo Hock, acting on behalf, (buyer and seller lawyer, conflicts of interests) , land belonged to estate of late father, Lim Peet Kwang, and violated anti-money laundering, (required to confirm identities of individual from overseas, who opened bank account, (Allison) and when sum exceeded RM25,000 from overseas, they have to ensure it is not illegal money, (in US is $10,000.00, bank has to file reports of suspicious activities),  MACC, AMLA, FSA, Income Tax Act, Penal Code (fraud, conspiracy) of Malaysia, where violation of each statue results in criminal conviction. Allison's consent to the sale in 2020, listed her name as Lim Meow Siam and NRIC, but not stating her true name and US citizenship since 2004, Allison is no longer a Malaysian citizen, on the 2007 petition for probate till the grant on 2008 till 2020, June 15, 2020, the agreement was dated but Lim Meow Siam dated it June 3, 2020. Thus, all acted in conspiracy, others and in assisting in breach of fiduciary duty of Allison. All transactions[14] by the executrixes are void, including the sale of lot 168. And vacant lot to Fong Lih Chee, 513 Jalan Aman , Kulim Kedah to Ah Weng, who also own Lum Khee Restaurant Sdn Bhd.

526.    Late Lim Peet Kwang ("late LPK") plaintiff's late father, bought the Lidcombe house in 1996 when plaintiff went to study at University of New South Wales (UNSW), LLM, in Sydney., later transfer to University of Technology Sydney. (UTS). Plaintiff at first lived near UNSW, at

---

[14] Including 513 Jalan Aman, Kulim 09000, Kedah; vacant lot in Penang; Putra Marine Condo, sale of 11 units to the Joint Venture Partner Maya Pesona Sdn Bhd, Azura Condo, Lidcombe House in Sydney.

Randwick, NSW then moved to Lidcombe house and lived there for a while. UTS is near Chinatown, Padi Market. Lidcombe is not too far from Sydney. It was a two storey townhouse, but no access from the back, much like plaintiff's house 4048 Ingram Dr. Janesville, WI, a joint - tenancy. At the back is a small garden. It is part of estate of LPK. The house and estate of LPK was compelled to sell as Australia government started a new legislation banning foreigner from owning landed property. Thus, Lidcombe house was sold.

527.  Plaintiff's late father Lim Peet Kwang passed away on 2007. During his lifetime, his assets were illegally seized, in 1998 acquisition by Kedah government on the pretext to build low cost housing, 9 acres acquisition that results in huge loss as the compensation paid was not at market rate.

528.  Then in 2003-2005, Malaysia federal government acquired on bad faith part of lot 14 to build school. The lot 14 had been in Joint Venture, with Maya Pesona Sdn Bhd, to build and develop houses, and late LPK is entitled to 25% of the total units upon completion. The JV was entered into in 1996 with land valuation was at $5.00 Ringgit, totaled at more than RM 7 millions.

529.  Lot 14, was transferred to Maya Pesona so that they could submit building plan with the legal title for approval by the authority. Thus lot 14 was held on trust by Maya Pesona, upon payment of about RM $100,000.00. The development for housing was postponed twice, and in 2003 part of the land, by the road side was acquired to build school. Lot 473 was also acquired to build Keladi High School. The roadside land fronting the road is worth more than the rest, inner portion of the land. Valuation should have been based on the potential usage of the land to build houses and the profits derived therefrom and not based on comparing nearby land and the price. The $4.59/sq ft, is the price of sale of nearby agricultural land, not the profits from converting the land from agricultural land to residential use. Land valuer Tony Lee Eng Kow is as liable as law firm Karpal Singh & Partners in this regards, together with conspirators.

530.  This acquisition in 2003-2005 also resulted in low compensation of about, $4.59/sq ft. which is lower than RM$5.00/sq ft, price at almost 8 to 9 years earlier, in 1996.

531.  In 1998, plaintiff filed lawsuit Case NO. 97-cv-331 at Baltimore, Maryland US District Court. And series of lawsuits and appeal in California after the letters to Stanford Law Review and University of
California Law Review in 2000. Those two false acquisitions were retaliatory acts in bad faith.

532.  In 2020, lky's group schemed to defraud sale of lot 168 and then illegally seized the proceeds of about RM$ 5 million, after deducting the attorney fees, taxes, and other brokerage fees at 3% to Fong Soon Foong and Ah Weng each, each of them received about RM $175,000.00 as "real estate broker." (agreement is void as it was executed on June 3rd, 2020 by Lim Meow Siam earlier than the date of the agreement, which was dated June 15th, 2020) the

agreement is void, estate of LPK retains legal title to the land, the fraud and illegality on the part of buyer Goh Cheng Guan Holdings Sdn Bhd and the conspirators , rendered the agreement unenforceable by Goh Cheng Guan Holdings Sdn Bhd, prevents the company from enforcing the agreement and estate of LPK is the rightful owners of the purchase price paid of RM

533.    From the will of late LPK, plaintiff is entitled to 35% of the residual assets, after specific real property that was inherited by late mom and younger brother. Plaintiff was supported by late LPK throughout the studies from 1995 to December 2nd, 2009 when plaintiff acquired Green Card.
In school studies:

534.    Plaintiff attended universities and colleges in US while on Student F-1 visa: 1995 HPU; 1995/1996 UWM; 1996/1997 UNSW, UTS (Sydney) ; 1997 UB; 1998-2002, CSU-Hayward; 2002-2004 DeAnza College; 2004-2005, Rock Valley College; 2005-2007, University of Dubuque; 2009 DeVry University.

535.    The Hang Kang Shophouse specially bequeathed to younger brother, to kind of make it equal as plaintiff has incurred more than $230,000.00 over the years from 1995 to 2009.
536.    Thus, lot 14 was held in trust, so is the lot 168, at RM 5 millions and plaintiff is entitled to 35% of sale proceeds of RM 5 millions, i.e. RM 1.75 million.

537.    Plaintiff's entitlement of funds which are part of his late father's assets, was illegal deprived in 1998, a rare, bad faith low cost housing acquisition in Kulim, Kedah, Malaysia, 9 acres were acquired, by Kedah State Government (Kulim is third largest city in Kedah, after Alor Star and Sungai Petani) ; in 2003-2005 bad faith acquisition of lot 14 in Kulim, which was in Joint Venture entered into in 1996, at $5.00/sq ft, with housing developer, Maya Pesona Sdn Bhd, and a Third Supplemental Agreement was entered into with Maya Persona Sdn Bhd, the compensation was at less than $5.00/sq ft, Maya Pesona was a joint venture, a partner and a fiduciary, the land was held in trust when the land was acquired, thus acquisition itself is subject to equitable remedy; and in 2020, sale of lot 168, (which has been difficult to sell due to a house built on it and occupants' refusal to move and failures in reaching agreement with occupants) in Kulim, Kedah, Malaysia, (letter from law firm Tan Lok Heah and Associate, (collectively "the land acquisition fund"),  and sale proceeds arising therefrom were illegally seized as trust assets, thus defendants are liable for knowing assistance and knowing receipt, plaintiff's share as "depositor", in AmBank Sdn Bhd, and each demand and the refusal is conversion from July 24, 2023 and the fund were co-mingled with funds by individuals and governments acting in conspiracy : lky's family, SG Government, Anwar Ibrahim's family and Malaysia Government, US's Democrat, Obama's family , Biden's family  and co-mingled into the coffers of the governments and were distributed all over the world. The funds as of 2025, funds arising from 1998, 2003-2005 funds subject to equitable remedy, a trust funds and co-mingled with 2020 trust funds, the whole funds are subject to equitable jurisdiction of this court. Thus, equitable remedies are available in actions all over the.

<u>Co-mingled fund with land acquisition fund</u>

538.    The land acquisition fund, was co-mingled, in SG, among others  was used in purchase in USA  through its attorney Olson, in China, in India, in Brazil and elsewhere; in the case of Malaysia, co-mingled with fund of state-owned company, Nasional Petrolium, and in USA, by Obama's administration.

<u>Bribery, racketeering</u> : the abuse of position of authority to benefit the individual themselves, in position of authority.

539.    In USA, the over-payment of purchase price, resulted in bribery as in KOM USA bribery case, analogous payments were made in 1995 December purchase by Singtel, to AT&T, various purchases in 2011 by GE, GE Real estate through attorney Olson, in conspiracy with Obama administration which resulted in all incidents in USA from 1995 till to-date, including bad faith prosecution in Chicago by Cook County in 2012, case number 12CR18264. The abuse of position of authority to benefit the individual themselves, in position of authority.

540.    Plaintiff has standing to prohibit illegal use of the funds derived illegally from events in 1998, 2003-2005, and as regards the sale proceeds of lot 168 sale, after deducting taxes and fees, the resulting fund is about RM$5 millions, is entitled to 35% under the will of late LPK, i.e. about RM$1.75 million, as "depositor" of bank account in Malaysia, pursuant to the pertinent statutes in Malaysia.  Plaintiff sent demand to Defendant Ambank, starting from July 24, 2023, from his yahoo email account kclim478@yahoo.com, and later kclim5436@yahoo.com but defendant Yahoo! Inc. , in bad faith and aided and abetted in conspiracy, deleted all the messages. On November 6th , 2023, Defendant Ambank sent an email, in response. Each demand by Plaintiff and the resulting refusal is a conversion, with Yahoo! Inc.,  acting in conspiracy. From July 24, 2023 to January 16, 2025, Plaintiff has alleged that the email is automatically sent each day for the return of RM 1.75 million, excluding the days the Bank was not doing business and excluding the public holiday in Kuala Lumpur where Defendant AmBank is situated and headquartered. At the date of this Complaint, on January 6th, 2025, the total number of days are: taking into consideration 16 public holidays (cf. US 22 public holidays) i.e. 367+6 additional working days in Kuala Lumpur=373 days; and the sum converted is : RM

652.75 million, exchange rate of US $1.00 to RM4.30; 652.75/4.55=US$143.45 million, plus compound interest.

541.    Thus, plaintiff has the standing to prohibit acts and conducts by SG's, Malaysia's and USA's government and the related individuals, from illegally seizing the fund and portion of trust fund, and used it for own benefits, and co-mingled it with their individual funds and that of the government coffers, including preventing illegal prosecution in SG, Malaysia, in civil lawsuits in SG and Malaysia, and elsewhere in the world by the individuals , e.g. Anwar Ibrahim of Malaysia, and the Governments by using coffers co-mingled with plaintiff's funds.

Government's coffers used in the running of government and investments overseas

542.    In SG, false prosecution against PM Goh Chok Tong's son Dr Goh Jin Hian, the co-defendants William Teo Thiam Chuan, Kelvyn Oo Cheong Kwan, Huang Yiwen (112 charges), in the alleged false trading of shares of the company New Silkroutes Group of company. Each charge maximum sentence is 7 years and fine $250,000.00. The period involves, Feb 26 , 2018 to Aug 27, 2018, conspiracy to create misleading appearance of the price of New Silkroutes Group's securities. And in civil lawsuit against Dr Goh Jin Hian, as MayBank has illegally seized fund in Plaintiff's account.

2021: Case 21-CIV-04197, San Mateo,  conspiracy (tort); (Alien tort acts), $16 million/cause of action

543.    In Case No. :21-CIV-04197, Attorney Cummins and Sekona filed an ex parte motion to dismiss the action, with prejudice as the proposed order has stated, purportedly based on the grounds that plaintiff as a vexatious litigant had failed to obtain the leave of Court to initiate and file the action.

1. plaintiff continue to violate court order.

2.causing further delay

Harm to the defendant

However, the grounds is irreparable harm or immediate danger,

The grounds cited in San Mateo Court later.

544.    And they committed fraud on the Court. The defendants have made fraudulent representation, perjury. The misrepresentation, among others, include the following:

(i) -Katie Gross, paralegal of the law firm attorney Cummins, Sekona worked at, emailed on 4-25-2022 to Plaintiff , the day prior to hearing on 4-26-2022, informing that hearing for the ex parte application to dismiss will be held at Dept 1, Presiding Judge Leland, but on 4/26/2022 it was held at Dept 21, Judge Foiles, the judge who decides the action, who issued the Order to file application for leave within 10 days of order.

(ii) -Plaintiff had filed the application for leave on 4-20-2022, in compliance with the Order of Court dated 4-11-2022, within 10 days of order.

Application to correct received on 4/28/2022.

(iii)-despite the plaintiff's compliance with the Court's order, attorneys Cummins and Sekona misled the court that Plaintiff had not filed and did not file the application seeking for leave. That is perjury by the relevant attorneys as there were declarations filed in support of the ex parte motion.

(iv)-as a result of fraud on the Court, Judge Foiles dismissed the action, without prejudice.

The Court, however, dismissed the case, without prejudice and not what they requested "with prejudice". The concealment and misrepresentation and perjury led the Court to enter order dismissing the case, without prejudice on 4-26-2022, in the absence of Plaintiff.

545.    The application was granted by the Court in Dept 21 Judge Foiles and not Dept 1, Presiding Judge Leland, and the action was dismissed, without prejudice on the same day. It was the different Court from what the attorneys informed plaintiff to appear, i.e. Dept. 1, Judge Leland but they appeared at Dept.21, Judge Foiles.

546.    In further non compliance with the rules, the law firm where attorney Cummins, Sekona work for subsequently mailed copy of the Notice of Entry of Judgment to Plaintiff, but not copies of all papers who did not appear at the hearing, was absent, as required by the rules. defendants attorneys only serve notice of judgment, and failed to serve "copies of all papers who did not appear at the hearing." , since Plaintiff did not appear at the hearing and Cummins and Sekona failed to comply with the rules.  The Ex parte motion and the without prejudice judgment is void. Opportunity to be heard: void . *Sole Energy Co, v. Hodges,* 128 Cal. App. 4th 199.

547.    Plaintiff subsequently filed motion for reconsideration, but it was taken off calendar, by the Clerk/deputy clerk, without any basis, as the motion to reconsider, in California, is part of the ex parte motion procedures, is for the judge to reconsider his decision, based on matters that the Judge did not consider etc.. And in California, judge could reconsider sua sponte his own decision, without any motion being filed.

She mailed an unsigned letter dated 5/10/2022 by Priscilla Tovar, then upon plaintiff's demand, she remailed a signed letter, dated also 5/10/2022.

548.    Deputy clerk, is not authorized to take hearing off calendar. Has no authorities to make decision on legal issues, on merits, they are authorized to carry out only administrative duties, e.g. , can not decide on filing, and if they wrongly refused to file, Court will correct and deems it as filed on the date of refusal.

Only the Court has the authority. e.g.
Lack standing, motion is placed off-calendar, ..Case No.:**0146, Larion Krayzman, vs Ronald Hacker, lack standing...etc..
Also, Notice is placed off-calendar:
11-3-2020, Notice of Related Cases filed by Krayzman.
11-6-2020-Krayzman filed peremptory challenge to Dept 47,
11-10-2020, matter transferred to Dept 49.
1-20-2021, the Court took the 11-3-2020 filed Notice of Related Cases off-calendar, on grounds that the notice should be filed in Department 1 or Department 47.
Deputy Clerk, Priscilla Tovar, is not authorized to take hearing off-calendar.

549.    The matter clearly is not at an end.

550.    Plaintiff's subsequent efforts to file and to reinstate the motion for reconsider by sending letter was returned unfiled, and via e-filing online was rejected and later by sending with enclosed motion papers, marked as "Private and  Confidential" addressed to the Judge was returned by the deputy clerk, illegally, it was never delivered to the Judge but was returned to the Plaintiff.

551.    Thus, the Clerk/deputy clerks committed fraud on the Court by concealing and returning the letter sent to the Judge Foiles and marked "Private and Confidential".

552.     The motion for reconsideration and the application for leave were both taken off calendar, And all efforts to remedy the situation of taking off calendar illegally,  both the application for leave and the motion for reconsideration, were futile.

553.    The causes of action pleaded in Case No: 21-CIV-04197 are as follows (fact-pleading jurisdiction)

The causes of actions pleaded are

1.Breach of Fiduciary Duty,

2.Deceit,

3.Knowing Assistance In Breach Of Fiduciary Duty

4.Conspiracy To Defraud

5.Unjust Enrichment

6.Conversion.

Relief:

554.    The relief claimed are as follows:

1.        Formal accounting by Allison:

82

-COMPLAINT-

2.      Imposition of constructive trust on all money, property in the name of Allison and Chong Kwan Tan, including the property at 4048 Ingram Drive, Janesville WI 53546 and 655 Island Place, Redwood City, CA 64065;

3.      Tracing and equitable lien on 4048 Ingram Drive , Janesville. WI 53546 and 655 Island Place, Redwood City, CA 94065 and 4048 Ingram Drive, Janesville, WI 53546. Compel conveyance(s) to plaintiff the property located at 4048 Ingrain Drive, Janesville WI 53546 and the property located at 655 Island Place, Redwood City, CA 64065.

4.      Removal of Allison as the co-executrix and in her place appoint the plaintiff.

5.      "the sum of $ 1,451,370.70 against Allison and CK jointly and severally;

6.      Damages, jointly and severally by the defendants;

7.      Punitive damages;

8.      Interests;

9.      Costs;

10.     Such further and any relief as the Court deems fit.


555.    Defendant attorneys Cummins and Sekona also alleged that plaintiff has filed more than 30 lawsuits and that the claims against Allison and CK is without merits. Defendants attorneys also claimed that plaintiff misled the Court in the Demurrer proceedings which is false. However, the Court in California denied the demurrer. The allegations made without any basis are the results of the instigation by GST to discredit plaintiff.


556.    Cummins and Sekona in bad faith filed Answer, including the affirmative defense that plaintiff is not entitled to accounting. This is a fundamentally flawed bad faith assertion.


557.    Cummins is an attorney who has practiced law for many years, and in particular, in estate litigation matters and the duty to account by executrix of estate could not have been more fundamental. He raised much more complex issues of law in the demurrer, ranging from

total lack of jurisdiction of the Court to the lack of jurisdiction in the civil department and the case should have been filed in the Probate Department, if the court has jurisdiction.

558.    Probate Department in Court of California deals with Probate matter, including the application and grant of letters of administration and probate, etc. The personal representative has to file a final accounting in accordance with the prescribed rules and lists the itemized assets and liabilities etc and close the administration within a certain period. It is clear that fiduciary has a duty to account.

559.    Plaintiff also has not consented to any Alternative Dispute Resolution ("ADR") proceedings. The ADR is voluntary. And even if consented to, it could be withdrawn at any time in writing.  Plaintiff does not like to cast aspersion on the judicial personnel, however, in this particular instance, the Commissioner of the Court, dealing with ADR process, Ordered that the matter should be diverted for Mediation. Defendant Cummins and Sekona, then went on the unreasonable request to increase litigation expenses, by including the resolution of issue of whether plaintiff is entitled to accounting. All these could not have happened if not for the interference by GCT.

560.    The private Mediator, if engaged, costs more than an attorney in California, as most are retired judges or senior attorneys.  The medication could have easily cost more than $2,0`00.00 dollars and the verdict rendered by the Mediator is not binding. Thus, the involvement of Mediator could be a totally futile process.

562..    LKY's group , AT&T Inc, and aiders is the person behind the scene, pulling the strings.

563.    Aided and abetted by LKY's group, AT&T Inc, and aiders , Defendants Cummins, Attorney Sekona asserted the contrary that plaintiff is not entitled to accounting and had committed fraud upon Court in the Ex Parte Application hearing held on 4/26/2022, by fraudulently misled

the Court to dismiss the case, with prejudice, at the hearing. The basis for the application was allegedly that plaintiff, as a vexatious litigant, had not obtained the leave of Superior Court of California in filing the case , Case No 21-CIV-04197. However, plaintiff had complied with the application for leave.

564.    The procedures:

<u>Motion:</u>

-Usual 21-day notice prior to hearing.

<u>Ex parte</u>: immediate relief:

-California Rule of Court, 3.1203, " no later than 10 :00 A.M. the court day before the ex parte appearance". San Mateo local rules, during COVID- 19, may have different times.

(a) Defendants listed the basis for ex parte motion as:

1. plaintiff continues to violate court orders. (There is no violations)

2. causing further delay. (defendants attorneys causing delay), mediation

3. harm to the defendants. ( no harm )

(b) Proposed order: California Rules of Court, Rule 3.1201(5), : defendants  " dismiss with prejudice"

565.    However, the usual basis is **irreparable harm or immediate danger**, if the defendants are not allowed to bring the motion, without a regularly-scheduled hearing.

None of the listed basis is true. They also failed to make <u>full disclosures</u> of the role played by GCT.

<u>After the hearing:</u>

566.    Also, defendants attorneys only serve <u>notice of judgment,</u> and failed to serve <u>"copies of all papers who did not appear at the hearing</u>."  Plaintiff did not appear at the hearing.

567.    The Court, however, dismissed the case, without prejudice. And they committed extrinsic fraud. The defendants have made fraudulent representation. The misrepresentation, among others, include the following:

Particulars of misrepresentation

``(i) -Katie Gross, paralegal of the law firm attorney Cummins, Sekona worked at, emailed on 4-25-2022 plaintiff , the day prior to hearing on 4-26-2022, informing that hearing for the ex parte application to dismiss will be held at Dept 1, but on 4/26/2022 it was held at Dept 21.

(ii) -Plaintiff had filed the application for leave on 4-19-2022, in compliance with the Order of Court dated 4-11-2022, within 10 days of order ;

(iii)-but attorneys Cummins and Sekona misled the court that plaintiff did not file.

-The concealment and misrepresentation led the Court to enter order dismissing the case, without prejudice on 4-26-2022, in the absence of plaintiff.

568.    The application was granted by the Court in Dept 21 and not Dept 1, and the action was dismissed, without prejudice on the same day.

569.    The law firm of attorney Cummins, Sekona subsequently mailed copy of the Notice of Entry of Judgment to plaintiff, but not copies of all papers to plaintiff who was absent.

570.    Plaintiff subsequently filed motion for reconsideration, but it was taken off calendar.by the deputy clerk.

571.    And later, Plaintiff's letter, with enclosed motion papers, marked as "Private and Confidential" addressed to the Judge was returned by the deputy clerk, to plaintiff, unfiled.

572.    As a result of the dismissal of the lawsuit, the following remedies are available:

(1 ) Fraud on Court, by Cummins and Sekona, judgment in Case No. 21-cv-04197 set aside.

(2) Cause of action of abuse of process. Schmit v. Klumpyan, 2003 WI App 107 (filed 16 April 2003)

573.    There exists a willful act in the use of process , i.e. commission of fraud in the ex parte motion that is not proper in the regular conduct of the proceedings.

574.    The defendant fraudulent act is not authorized by the process. And the subsequent misuse of the fraud to dismiss plaintiff's case without prejudice. The defendants had the improper purpose to dismiss plaintiff's case using fraudulent representation. And the defendant obtained collateral advantage, i.e.,  dismissal without prejudice with fraudulent representation, an advantage that is the ex parte motion is designed to secure. The defendants attempted to dismiss with prejudice.

575.    As regards the cause of action of abuse of process in Wisconsin , the following elements are present :
1. wilful act: fraud was involved. The ex parte motion was used to fraudulently end plaintiff's claim for his share of inheritance.
2. the collateral advantage is the dismissal of the action.

Loss and damages: the Causes of action pleaded in 21-cv-04197:
576.    The loss and damage are the award that could have been granted:
1. Fraud by Allison as fiduciary: applies analogous tort measures of damages; benefits of the bargain

Damages for fraud by Allison:
577.    It was held in a recent case thus:
"— Civil Code section 3343 does not apply, however, "when a victim is defrauded by its fiduciaries." ( Alliance Mortgage, supra, 10 Cal.4th at p. 1241.) Instead, in the case of fraud by a

87
-COMPLAINT-

fiduciary, "the 'broader' measure of damages provided by sections 1709 and 3333 applies." (Ibid., fns. omitted). <u>Civil Code section 3333 is the general tort damage measure</u>, permitting compensation "for all the detriment proximately caused" by the breach of an obligation not arising from contract; 6  Civil Code section 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." [T]he courts have carved a special exception to the out-of-pocket-loss rule in cases where the principal's action against the agent is based on the agent's fraud on the principal. The measure of damages for the principal's action against his or her agent who is in a fiduciary capacity is measured by the joint application of two principles: 'For the breach of an obligation not arising from contract, the measure of damages … is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.' [Civ. Code, § 3333 .] 'One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.' [Civ. Code, § 1709.] [¶] In an action by a principal against an agent arising from the agent's fraud, these two principles have been interpreted as providing a measure of damages based on the **broader 'benefit-of-the-bargain' rule** because **a fiduciary should be responsible to compensate his or her principal for the full amount of the loss caused by his or her breach of duty." (2 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 3.33, pp. 190–191, fns. omitted.)**

We agree with this approach, and conclude the measure of damages in a case of intentional misrepresentation by a fiduciary is not limited to out-of-pocket losses. 9Link to the text of the note Therefore, the trial court was not required to penalize the Fragales for failing to establish the out-of-pocket loss they sustained—the difference between the amount they paid for the house and what it was worth—as a result of Messing's intentional misrepresentation.

<u>Mental suffering:</u>

578.     That general damages for mental pain and suffering are recoverable in a tort action of deceit is established by the cases. (See Schroeder v. Auto Driveaway Co. (1974) 11 Cal.3d 908,

921-923 [114 Cal.Rptr. 622, 523 P.2d 662]; Murphy v. Allstate Ins. Co. (1978) 83 Cal.App.3d 38, 46, 51 [147 Cal.Rptr. 565]; Allen v. Jones (1980) 104 Cal.App.3d 207, 215 [163 Cal.Rptr. 445]; cf., Molien v. Kaiser Foundation Hospitals (1980) 27 Cal.3d 916, 926-931 [167 Cal.Rptr. 831, 616 P.2d 813]; Crisci v. Security Ins. Co. (1967) 66 Cal.2d 425, 432-434 [58 Cal.Rptr. 13, 426 P.2d 173]

579.    And "general damages for mental pain and suffering are recoverable in a tort action of deceit. ..." ( Sprague v. Frank J. Sanders Lincoln Mercury, Inc., supra, 120 Cal.App.3d at p. 417.) .

The deceit spans the long period from 2008 to 2022 and the Court could have awarded $1.2 million, mental suffering.

580.    The amount of loss and damages are as follows:

1.    Accounting. Although Allison has to file the accounting, to be approved by the Court, plaintiff could list the deficiencies and supplement the missing items, and in this case the loss of sum converted, $ 1,451,370.69.

2.    Breach of fiduciary duty damages is the amount claimed and it is the sum for conversion. $ 1,451,370.69

3.    Deceit, in Case No. 21-CIV-04197 is the loss due to fraudulent representation, damages of $ 1,451,370.70 plus reliance loss for not being distributed the inheritance, i.e. loss suffered from 2008 to the dismissal on 4-26-2022. Loss suffered as a result of reliance on the representation.

4.    Knowing Assistance In Breach Of Fiduciary Duty . $ 1,451,370.69.

5.    Conspiracy To Defraud.   ( 2 x $ 1,451,370.69 ) Allison and CK.

6.    Unjust enrichment. $ 1,451,370.69.

7.    Conversion. $ 1,451,370.69.

Damages: the above causes of action:

Total is 8 x $ 1,451,370.69=                                        $11,610,965.16

Punitive damages:

581.     Punitive damages, although is speculative, is less than single digit time of the total damages and in California is depending on evidence of wealth. The evidence of wealth is the house 655 Island place, valued at $3 million. And not to exceed 1/3 i.e., $1.00 million.

582.     Imposition of constructive trust: 655 Island Place and 4048 Ingram Drive.

California Court equitable power: in relation to Wisconsin real property ; 4048 Ingram Drive

The Supreme Court of the United States said in *Muller v. Dows*, 94 U.S. 444 [24 L. Ed. 207]: "It is here undoubtedly a recognized doctrine that a court of equity, sitting in a State and having jurisdiction of the person, may decree a conveyance by him of land in another State, and may enforce the decree by process against the defendant. True, it cannot send its process into that other State, nor can it deliver possession of land in another jurisdiction, but it can command and enforce a transfer of the title."

584.     Constructive trust could have been imposed on 655 Island Place and based on Muller case on 4048 Ingram Drive, Janesville Wisconsin.

However, they were not imposed.  Thus, the loss is the

- the loss is ½ of the value of 4048 Ingram Drive, i.e. $99,000.00.

-655 Island Place,  based on pleaded facts in 21-CIV-04197, and evidence could have been adduced at trial, the opportunity to adduce evidence was terminated by the dismissal. Plaintiff pleaded money of the Estate was used.

The evidence that could have been adduced are as follows:

(i)     Allison and CK had used the money from the estate to purchase the house at 655 Island Place. The searches obtained from the County Clerk's website, the house at 655 Island Place, was purchased in 2012 in the joint names of Allison and Chong Kwan Tan and a Reconveyance was executed and delivered in favor Allison and Chong Kwan Tan on 2013 shortly after taking out the mortgage loan.

The mortgage and Reconveyance in a short period of time after taking out the loan.

On Apr 27, 2012, the house was purchased from Donald A Jr Neuhauser. The lender was COLE TAYLOR BANK and the Loan amount was $625,500.00. The total purchase price is $950,000.00.  Cole Taylor Bank was merged into Fifth Third.

Thus, the amount paid is 950,000 minus the loan of 625,500= $324,500.00

The loan of $625500 was paid off about less than a year later.

585.    Thus , the estate money that was used to pay for 655 Island Place is $625500.00

Constructive trust could have been imposed on the sum excluding the deposit.

586.    The present market price of 655 island Place is about $2300,000.00

2,300,000.00 minus 324,500=  $2,275,000.was lost due to lack of imposition of constructive trust.

i.e. $2,275,000.00 .

**Total loss is** in Case No 21-CIV-04197 is

About $1,200,000.00 million, mental suffering for fraud,

+ $1,000,000.00, punitive damages+

+ $99,000.00 absence of constructive trust (4048 Ingram Drive )

+ $2,275,000.00 absence of constructive trust (655 Island Place)

=about 16 million

plus interests from 8/4/2021 (date filed to 4-26-2022 dismissal, prejudgment interest that could have been awarded. Since trial date is speculative, assuming is 4-26-2022, post judgment interest

from 4-27-2022 till to date : 3-26-2023 at 8 % per annum.

Post judgment interest: 11 months on =$15,428,966.16 @ 8 % x 11/12=          $1,131,457.46

Prejudgment interest:8-4-2021 to 4-26-2022: 9 months =$15,428,966.16@6% x 9/12=

                                                                                    $694,303.46

and costs :

filing fees :                                                    $435.00

        service of process: $95 x 2 =                              $190.00

Disbursements for postage, fedex, express mail, mailing, printing etc.          $1,100.16

                                                        --------------

                                                            $1,635.16

Total loss of =$15,428,966.16+$1,131,457.46+ $694,303.46+1635.16=

                                                    $17,256,361.16

587.    As a result of the dismissal of the lawsuit, due to fraud on the Court, and others,  the

following remedies are requested:

As against the attorneys, James Cummins and Jullian Sekona:

(1) Fraud on the Court, committed by Cummins and Sekona, to set aside and vacate the

judgment in Case No. :21-CIV-04197;

(2) Cause of action of abuse of process and others for loss and damages;

(3) Conspiracy for loss and damages;


As against the Court personnel and their employers:

                (1)  Violations of statutory duties, for loss and damages;

                (2)  Negligence, for loss and damages; i.e. , negligence per se for violation of

                     statutory duty.

                (3)  Conspiracy for loss and damages;

92
-COMPLAINT-

Vanessa Jimenez,    deputy clerk

6/8/2022: " Presiding Judge Leland Davis"…


<u>22-cv-8085, Northern District of California, US District Court</u>
588.    Plaintiff sued Cummins for including defamation, Cummins engaged Golden Rees, a law firm not from his professional insurance coverage. The sole purpose is to file Anti-Slapp Motion to claim attorney's fees, and concealing the bribe received by Cummins in the proceedings.

<u>Case No. 22-cv-4605</u>

589.    In 22-cv-4605, Wenzel and Kirk entered appearance as Attorneys for Defendants COOK COUNTY, COOK COUNTY STATE'S ATTORNEY KIMBERLY M. FOXX, MICHELLE POPIELEWSKI, JASON MENARD,
and LESTER FINKLE

William B. Oberts, Esq. – ARDC #6244773 Kevin C. Kirk, Esq. – ARDC # 6329937 TRIBLER ORPET & MEYER, P.C.
225 W. Washington, Suite 2550

Chicago, Illinois 60606
Tel: (312) 201-6400
Email: wboberts@tribler.com

kckirk@tribler.com docket@tribler.com

590.    Michael C. Wenzel, State Bar No. 215388 BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile: (415) 353-0990
Email: mwenzel@bfesf.com

As to those defendants committed fraud on the Court, in 22-cv-04605:
The social worker contacted Allison via phone, Cook County, and Wenzel committed perjury, as he stated under oath the defendant has no contact with California and no "purposeful availment"

Cook County also has extradition arrangement with California for general personal jurisdiction

591.    Case No. 22-cv-4605, Defendants Cook County, Kimberly Foxx, Michelle Popielewski, Jason Menard, Lester Finkle, alleged no personal jurisdiction, their Attorney Wenzel and Kirk as

attorney of record, concealed and stated under oath, no "purposeful availment", but the social worker has contacted Ally in Redwood City, the defendant who was sued in regards to the inheritance of plaintiff. Cook County, moves to severe the claims as two separate events, not related, but the common factor is lky's group and the democrats, similar to plaintiff's New York bar admission cases filed in Eastern Wisconsin and Northern New York. There were at two different States but common factor is the federal administration, bribed by lky's group.

592.    Wenzel and has committed perjury, in response to the Court's order, the defendants Cook County, Kimberly Foxx, Michelle Popielewski, Jason Menard, Lester Finkle, in 22-cv-04605 has no defense to this action.

593.    Alleging unnamed social worker, the contact was stated in the phycological report, identifying [sister in California] of Elgin Mental Health, Phd intern, Lakesha Davis, Supervisor, Dr. Mazhar Khan, EdD,  dated 2/25/2013, page 1 of 7; and by Dr Echevarria[mentioning social worker] in the hearing on 12-18-2012.

594.    And the report of assigning to Elgin, there is a social worker, signed as Carla Joiner-Herrod and Psychiatrist, whose signature unintelligible.

595.    In 2022, Russian and Ukraine conflicts surfaced again, plaintiff voiced his support that NATO has not kept its promise not to expand eastward when Ukraine applied for NATO membership, and that Ukraine as a country next to Russia should stay neutral. While at Walmart, around October 2023, at the shelf storing Yogurt, two Ukrainian male, speaking foreign languages, crowded around, their cart was next to plaintiff's left, and were prepared to commit battery.

596.    In mid 2023, campaign for 2024 general election 2024 started.  In 2024, the year of general election, Lee Hsien Long ("lhl") , son of lky, in order to perpetuate their influence in USA, aided and abetted in conspiracy with then opposition in USA, Republican Donald J. Trump and the related parties, to continue the racketeering, illegal, criminal activities of murder and the attempt when they failed.

597.    The lawsuit thus involves claim, among others, against the family members of lky, Anwar Ibrahim, Obama, Biden and Trump and the governments.  Their liability includes treble damages for each cause of actions for racketeering, joint and several liability, punitive damages against each of the individual defendant and other remedies that the Court while invoking the equitable jurisdiction, could grant.

598.    On Oct 21, 2024 plaintiff emailed PM Lawrence Wong, regarding the illegal acquisition and scheme to defraud of the fund of proceeds of sale of lot 168;fraudulent conversion by the bank in conspiracy, by refusing plaintiff's demand and its freezing of account.

599.    The 1998 acquisition deprived plaintiff of fund set aside for tertiary study including medical school, i.e. direct claim of the fund lost, 2003-2005, [the amount the plaintiff's late father , (thus the estate) would have been entitled to if no compromise, duress, induced by the defendants' threat to enter lesser amount of compensation in the judgment, and the defendants' fraud, had been negotiated.]  ( entitlement as beneficiary of estate of LPK, indirect claim, until Allison replaced as executor of estate ok LPK); 2020 sale proceeds of lot 168, (plaintiff direct interest to claim is 35% of the RM5 million as "depositor"; and resulted in conversion, each denial of plaintiff's demand is a conversion). And plaintiff's rights to seek injunctive relief against government Singapore and Malaysia, as said sum had become coffer of the said governments, first arising in 1998.

Conspiracy to fraudulently convert proceeds of sale of lot 168, in 2020: purchase price of RM 5,217,105-94 (five million two hundred and seven tenth thousands, one hundred and five ringgit and ninety four cents)

The land:lot 168

600.    Title derived from lot 473: rubber estate zoned as agriculture land, has a bungalow built on it, the house's occupant were the plaintiff late father's (Lim Peet Kwang ("LPK"))  half brother, Lim Peet Tun (or Toon) (spelling derived from translation from Chinese) and his family. In 1985, 11 acres , together 20 acres contiguous acres of land belonged to Benjamin Lim Pek Kiah, (youngest brother of late father) acquired,  to build SMK Keladi, (Sekolah Menengah Kerbangsaan Keladi) ( Keladi High School on Keladi Road, Keladi, less than 10 minutes from Kulim home, along Jalan Tunku Putra, then left turn. After acquisition, lot 168 title issued on the remaining lot.  RM 5,217,105-94 (five million two hundred and seven tenth thousands, one hundred and five ringgit and ninety four cents)
The location:

601.    There was no separate title issued since it was an agriculture land and LPK refused to apply to get the separate title issued.

Next to the bungalow is a dirt path, and leading to a road, the bungalow is by the road side. So the bungalow is at the intersection of a road it was facing and dirt path on its side. The dirt path was about half mile long from the smoke house and processing plant. At the other end is another dirt path, at 90 degree, turning left leads to the Lumber factory about half a mile then turning left leading to Kulim downtown about one and half mile in distance.

602.    The dispute with Lim Peet Toon was never resolved and his descendants claimed a sum in order to move from the bungalow,  so upon their leaving , the land can be sold "as it is", a vacant lot with no "encumbrances", on the title. The map does not show any encumbrances but in person inspection will reveal the bungalow built on it. (In Malaysia, illegal squatters have been a problem, and to get them to move, land owners have to pay a sum to the illegsl squatters.

603.     Thus, after late mom had moved to US, she had asked Fong Soon Foong, her younger brother living in Butterworth, to assist with inspection, guarding against illegal squatters who would trespass the rubber estate illegally and build houses. And sometimes they were able to get water and electricity supply, somehow.

604.     Butterworth, Bagan Ajam, is about one plus hour drive from Kulim, by the seaside. Fong Soon Foong, and Fong Wei Keat, who is eldest son of late Fong Soon Yoong, late mom's elder brother, also lives around the area.

605.     Fong Soon Foong, just like late mom, grew up in Kulim, and he has friends living in Kulim, a person named "Lek Chai", who lives behind the cinema, "Coronation" Cinema, about 1000 feet behind the cinema, directly opposite plaintiff ancestral house, 513 Jalan Aman, Kulim 09000 Kedah.

606.     Ah Weng, who is doing business as Lum Kee Restaurant Sdn Bhd (formerly Ming Gaung), , was in his twenties, when plaintiff was at primary school, so he is about in his late 60s now. he was employed by Ming Guang Coffee shop, 514 Jalan Aman, next townhouse to plaintiff's 513. Ming Guang coffee shop has stall sells "Wanton Mee" at the front of the shop and in front by the road side of 513 and 514, the point of boundary was another stall by "Sian Chai" selling curry mee (noodles). The location thus has lots of pedestrian traffics in the morning and less after that. Sian chai only run the business from around 5.30 am to about 11.00 am. It was the "heart " of Kulim downtown.

607.      Ming Guang coffee shop , (now  514 Jalan Aman was run and managed by Zheng Qi Ke, and his wife and their children often visited there, Zheng Liu Nan, who is about two years older than plaintiff and also studied at Jit Sin High School together with his elder sister. The father in law of Zheng Qi ke, i.e. father of the wife of Zheng Qi Ke, who is Hainanese, bequeathed the title of 514 Jalan Aman to the only son, younger brother of wife of Zheng Qi Ke, who later left Kulim and he possibly sold 514 Jalan Aman then or later sold to Ah Weng. Ah Weng later bought 513 Jalan Aman, after having secured a bank loan. The purchase price of 513 was about RM$600,000.00 plus.

608.     After Ah Weng purchased 513, Jalan Aman, and named it "Kulim Rojak", on information, he applied to remove the wall separating 513 and 514, and combining 513 and 514, into one dining area, in the heart Kulim downtown. And he removed the wall and runs it as a coffee shop.

609.     Ah Weng did not sell "Wanton" mee as Teoh Choo Aun had misled plaintiff to believe. The stall selling "Wanton" mee at Ming Guang shop was run by Lee Kouk Chai. Thus, lky's group approached plaintiff's schoolmate-friend who turned into enemy, Teoh Choo Aun. It was an attempt to mislead plaintiff from trying to recall the past and the details.

610.     Teoh Choo Aun was from Chio Min B, plaintiff was from Chio Min A primary school. We attended Jit Sin High School, plaintiff was in A class, he was in D class, according the merits or exams results. There was up to "N" class in single class year. A class of about 45 student each, so, 14 times 45= about 630 students in a class year.

611.     Teoh Choo Aun was in National University of Singapore, was at Raffles Hall dormitory with plaintiff, but he chose to return to Malaysia, after the semester had started, about in the first week, in July 1986, as he could not cope with the study, having problems with English and others. He applied late for admission to university in Malaysia and graduated. After he graduated, he worked as quality control personnel in Butterworth but asked to transfer to be a purchaser, as he narrated, to get extra income. He did the sourcing and accepted bribes and was fired from his job. He later could not find job, and became an estate agent, there is no licensed estate agent, no exams to pass to get license, unlike in USA, no Titles Company, any Tom, Dick and Harry can become estate agent, and most of them do not pay income tax, and after he married his cousin, he approached plaintiff's family to be the estate agent for sale of LPK's lands, but was turned down, and as a result he harbored hatred towards plaintiff's family and plaintiff.

612.     Ah Weng was helping to prepare and serve coffee, coffee with milk, and those drinks with ice, (kopi peng is iced coffee with milk), toasts with butter, Char Sui Bao, Toa Sa Bao, Yee Mi drinks, in the coffee shop, tother with some snacks in the transparent containers at the cashier counter top. Plaintiff's favorite,  "Kong Teeng", a sweet, crispy biscuit like candy, sold in the container. And plaintiff frequented the next door neighbor shop very often. Ah Meng was responsible to make and sell Char Sui Bao, Tao Sa Bao

613.     "Lek Chai" was tasked by Fong Soon Foong, as : Lek Chai , also in his late 60s, is kind of has connection to the local "gangster" , because behind the "Coronation" cinema is a place with many gangsters lived there, gathered, to do the inspection of lot 168.

614.     . "Lek Chai" and ah Weng have lived there in Kulim their whole lives, Ah Weng lived on the second floor of Ming Guang" coffee shop when he worked there. So they know each other very well. Teh Soo Ngee used to live opposite "Lek Chai"'s house behind the cinema.  Teh Soo Ngee was plaintiff's primary school classmate and classmate in Jit Sin High School. We had private tuition together in 513, second floor in primary school days.

615.     . Goh Cheng Guan Holdings Sdn Bhd, conspired with lky's group, contacted ah Weng who in turns contacted Fong Soon Foong to act as middleman to buy lot 168. Each entitled to 1.5 % of the sale price, paid by estate of LPK. i.e. RM 5,217,105-94 (five million two hundred and seven tenth thousands, one hundred and five ringgit and ninety four cents) totaled at 3% commissions as estate broker/known as estate agent in Malaysia.  about  each. (monthly

averaged salary of a new graduate in Kuala Lumpur is about $3,000.00 a month, or $36,000 a year, thus it is about 2 years salary of a new graduate working in Kuala Lumpur.)

616.     Despite the "encumbrances', it was sold "as it is" and the descendants of Lim Peet Toon, received nothing, there is some discussion, but the negotiation never materialized and no compromise was reached.

617.     The sale was completed.

The fraud, conspiracy:

618.     The only road to the lot is the dirt path next to the bungalow, otherwise it is land locked and it was not broad, limited to a size of "economy" rental car, that can travel on it, otherwise, larger vehicles to clear the land, cut the trees, level the land etc, are not able to travel on it, end results it is not a viable option to purchase by housing developer, and the purchase is a conspiracy to fraudulently convert the proceeds of sale, belonged to estate and plaintiff after it had been deposited into a bank account , and in this case, AmBank (M) Sdn Bhd, refusing demands for withdrawals by depositor, plaintiff and etc.

619.     Lky's group engaged in elaborate scheme to mislead even after fraudulent transaction/sale in 2020, of lot 168. The after fraud event was trying to mislead through Teoh Choo Aun in 2023 who falsely stated that Ah Weng is the person selling wanton mee but in fact he was the coffee shop employee.

620.     Alphabet and Google acted in conspiracy deactivated and wiped out data from plaintiff's email: khorchin.lim@gmail.com, an email address which has been in use since 2000 or earlier and by that deactivation, denied plaintiff's access to important email which has been used to communicate for all intent and purpose, stored most of the important information related to this action.

621.     Using the repeated pretext to verify account holder and to keep postponing every 30 days check in since 2022. It acted in conspiracy with lky's group in manipulating plaintiff's account and the analogous to "spoliation of evidence" is malicious, as important information and evidence was stored in that email address.

622.     Sale and purchase agreement is void: no effective and void agreement signed and executed on 3rd June, 2020, by Allison, agreement itself dated 15th June 2020. And is also void for fraud.

623.     Because of the "encumbrances" on the title, the people are more like a squatter, but is legalized, it was impossible to sell, and also because of the large sum involved about RM$5.00 millions in 2020. From around late 2000s , the rubber trees were more than 30 years old and there was no rubber tapping,

624.    On lot 473 there was a bungalow built on it, a two storey bungalow, but no separate title. It was a bungalow built on land zoned as rubber estate, much like legalized squatters, as they are called in Malaysia.

625.    Letter dated May 20, 2024 enclosing Statutory declaration, also mailed to PM Lawrence Wong, via international registered mail,  about the theft of passport by LHL in conspiracy with Wilfred Nathan.

626.    Allison is unable to pursue the action and thus has to be replaced as the sole executor of estate of Lim Peet Kwang.

Case No : 21-CIV-04197 filed on 4th August, 2021:
627.    There were Fraud, abuse of process, and violations of statutory duty, plaintiff's rights to access to the court, conspiracy:
                                        Particulars
(i)Order dated 4/26/2022 is supposed to be Dept 21 and not Dept 1.
Judge Foiles colluded.
(ii)Letter dated 5/10/2022 post-marked 5/13/2022, unsigned letter, Priscilla Tovar.

628.    Concealed bribery by Cummins and Sekona, (two causes of actions of fraud and deceit .)
Each cause of action is 16 million.
Each times 16 millions time 5=$80 million, or times 4 ( no violation of statutory duty, attorney)=$65 million
(1)Ex parte application is fraud
(2) Notice of order, incomplete, abuse of process
(3) Plaintiff's Application for Leave to file, taken off calander
(4)Motion to reconsider, taken off calander
(5)Letter Tovar unsigned, fraud
(6)Letter Tovar signed, mtn reconsider taken off calendar, fraud
(7)Efile rejected, fraud
(8) Motion to Set aside, Section 473, not filed
(9)Vanessa Jinenez 6/8/2022 : pre-fling order required, fraud
(10)Letter to Judge Folies, Private and Confidential, fraud

629.    Sale of real estate of estate of Lim Peet Kwang has to be approved by the High Court of Penang, and consent of beneficiaries have to be obtained.  All declaration for sales:
The declaration drafted by Carolyn, has no phrase that states:
I , so and so..  declare:

Only an affirmation clause.

630.    Sales of lot 168 and all sales of real properties are void.

99
-COMPLAINT-

631.    lhl and all the defendants to set up a plot to freeze the fund, which is the proceeds from sale of land lot 168 in bank in Malaysia in 2020, around RM $5.00 million.

632.    Ah Weng bought plaintiff's ancestral house at 513 Jalan Aman Kulim, Kedah 09000 for over RM$600,000.00.

633.    Fong Soon Foong has been tasked with making check on the lands uncultivated as the rubber trees are old, in particular lot 168, not far from downtown. He asked his childhood friend in Kulim, the uncle of a guy named fu sheng, "lek zai", who lived opposite 513 Jalan Aman, across the road just behind the old cinema named as "Coronation", at corner house opposite plaintiff's childhood friend, Teh Soo Ngee parents' old house,  to check around the land to make sure no illegal trespassers build houses on the land.

634.    Ah Weng, as the runner dog of LHL, approached Fong Soon Foong to act as middle man to purchase lot 168. Lot 168 has been a problematic land to sell, due to dispute with half brother of plaintiff's late father. His descendants refused to move despite the fact the bungalow built on lot 168 has no separate title.

635.    Both of them, ah Weng and Fong Soon Foong, (his eldest son Fong Lih Chee bought the vacant land) obtained a total 3% commission as "estate agent" of the total price of about RM5.2 million, paid by Estate of LPK. The proceeds of sale, in 2020 agreement to sell, after paying "estate agent fees", i.e. 3 % of about $5.2 million, and lawyer's fees, other expenses, was at about RM 4.9 millions, was deposited in AmBank, where YC and Vivian worked, has been unavailable and is now unavailable, due to Prime Minister Anwar Ibrahim, directors of AmBank, AMMB who acted in conspiracy with LHL, and the bank illegally freezing the sum. The agreement with Goh Cheng Hock Sdn Bhd is void.

<u>Void Probate of 2008</u>

636.    And Allison had committed perjury in the Probate Petition Case No. 32-264-2007, in 2008 and the probate was granted. She was not a Malaysia citizen with the purported NRIC number as Malaysia law does not permit dual citizenship and she has been a US citizen since around 2004 before ck and her left US for ck to work in Hong Kong. Probate is void, all transactions are void ab initio.

The following transactions void and the assets are held on resulting trust and or constructive trust:

1. sale of 513 Jalan Aman to Ah Weng
2. sales of 11 houses to Maya Pesona Sdn Bhd
3. sale of lot 168
4. sale of Putra Marine
5. sale of Azura Condo
6. sale of house in Lidcombe, Sydney

7. sale of Hang Kang shophouse
8. sale of vacant land in Penang to Fong Li Chiz

637.    The agreement of sale and purchase between the executrixes and Goh Cheng Guan Holdings Sdn Bhd is void and due to

638.    Plaintiff is among the beneficiaries of Estate of Lim Peet Kwang and late mom Siew Choo Hng, together with Lim Meow Siam ((hereinafter referred to as "LMS)" is the co-executrixes of the estate . AMMB Holdings Berhad (hereinafter referred to as "AMMB"), and AmBank (M) Berhad, (hereinafter referred to as "AmBank") are banking institution licensed by the relevant authorities. AMMB 100% owned respondent/defendant AmBank. LMS has, pursuant to a Declaration of Trust, on or about early 2020, deposited/invested in the respondent/defendant AmBank the sum of about RM $5 millions, which is the proceeds of sale of lot 168, part of Estate of Lim Peet Kwang, who is plaintiff's late father, and all the sales were handled by lawyer Carolyn from the law firm Messrs Tan Lok Heah & Associates, located in Bukit Mertajam, Penang. Yin Ching Tan and Vivian Tham Yoke Foong, assisted, as employees of AmBank, and as relatives of LMS, assisted in the opening of account and deposit by LMS at the AmBank.  EYM is the auditor for AMMB and AmBank and has provided auditor services to their companies' account as in an audited  consolidated financial statements. (Lim Meow Siam later added Allison to her name and became Allison Meow Siam Lim). EYM is Ernst & Young Malaysia.) Yin Ching Tan is younger sister of Chong Kwan Tan, husband of Allison. Vivian is wife of Chong Wei Tan, younger brother of Chong Kwan Tan.

639.    The investment/account of Allison, on information and belief, has been suspended/frozen and or her demands for withdrawal has been refused, denied, or rejected. The said suspension/freezing is illegal, and any contract is unenforceable from the inception due to bribery, violations of Malaysian Anti-Corruption Commission Act 2009, MACC (2009) (bribery) ; The Anti-Money Laundering, Anti-Terrorism Financing and Proceeds of Unlawful Activities Act 2001 (AMLA)(2001), Section 14(1)(a) : (verification and reporting for sum above threshold); and Financial Services Act, (FSA) (2013) (false entries and others ); Income Tax Act (failure to furnish notice of chargeability ) which provides for criminal sanctions. The fraud/deceit is also covered by Penal Code. And due to the relatively large sum of about RM $ 5 millions, EYM must have failed to report the violation of AMMB and AmBank and conspired with them in the unlawful action/conducts.

The sum of about RM $5 million and about RM 1.75 million in Malaysia
(i)bribes by LKY's group
640.    The acts of freezing the account/investments are intentional, it is a conspiracy to defraud, and aiding and abetting by others etc.

641.    As a comparison of the regulatory regimes, in US, the deposit of in banks and financial institutions, of US $10,000.00 and above is considered unusual and report to the authorities is

mandatory; to prevent money laundering and other illegal obtained gains or proceeds being channeled through the financial system. The sum involved in this pre-discovery action is about Rm $5 millions, equivalent to about more than US $ 1.00 millions.
It is believed that Malaysia has in place such analogous mandatory reporting requirements imposed on the banks.

642.    Tan Chong Wei and Vivian met Plaintiff in 2000/2003 when they were studying in US, until plaintiff left the bay area to stay in Janesville, Wisconsin. In 2004, the house at 2466 Stonefield Lane, Janesville , Wisconsin, 53546 USA was bought.

643.    Tan Yin Ching first worked for AmBank, then she recommended Vivian to work at the bank later. It is believed Tan Yin Ching has worked at AmBank since her return from US, about one to two years after we met at Hawaii in 1995, i.e. since the late 1990s to present. She is a long time employee of AmBank. So is Vivian. Perhaps just a few years less.

644.    So, AmBank has notice, as Tan Yin Ching and Vivian both worked at AmBank

645.    The freezing of a relatively large sum of $5 million is extraordinary. No institution will undertake the risks, when they are well aware of the downsides.
What motivated them and emboldened them is the bribery, since any lawsuit, they believe, will be defended by the Bank and not by them personally.
Including all the directors, as individuals, cause the false entry, or its omission.

646.    Ernst and Young possible after the first report as they caused the omission, by not reporting to the BNM or the board regulating the listed company, securities commission.

False eviction by Marvin Hellenbrand:
647.    The following are conspirators involved in 12-27-2011 false eviction judgment.
Marvin Hellenbrand, Stephen Hellenbrand, JC Management , LLC, Carlo Esqueda, John C. Albert """Jay Koritzinsky, Jacob Law Group, SC, Daniel Conway, Elissa M. Bowlin "(Marvin's conspirators")

Plaintiff signed written agreement for renting an apartment with Marvin Hellenbrand at the basement of the building where Marvin used a unit as his office, and Stephen, who is his eldest son appeared later and was aware of the agreement that was signed.

648.    On 12-27-2011, judgment entered by Marvin Hellenbrand's false eviction  in Case No. 2011SC010663. In relation to more than one year tenancy, 30 days notice is required under the pertinent statutory provision, as the purported 5 days notice.  Marvin is for tenancy less than one year. In Marvin's Complaint, no tenancy was pleaded. No cause of action is pleaded. The judgment is void. Also void as Clerk Carlo Esqueda has no authority to sign on judgment.

649.     Marvin failed to return the balance of more than 5 plus month rents that were prepaid and claimed fraudulently for cleaning and eviction, storage charges. Plaintiff filed motion to set aside default judgment.

650.     Hellenbrand's illegal eviction and fraud: 2011SC010663

Particulars of fraud:

1. Clerk has no authority to sign on the judgment
2. no notice of appearance filed by attorney Koritzinsky, thus motion to set aside should have been granted.
3.Judge Albert acted in collusion.
4. concealment of bribes

651.     Plaintiff filed motion to set aside default Judgment, his attorney Jay Koritzinsky did not enter appearance, instead he filed and informed Judge Albert purporting the letter to be his appearance.   Jacob Law Group, filed Case No : 12-cv-296, Eastern District of Wisconsin, no appearance entered by Hellenbrand's attorney, Jacobson law group, SC, ; no defense to present action as 12-cv-296, 6/7/2013, motion to dismiss,  and 2011SC010663 are void in relation to judgment in favor of Hellenbrand; judgment void. Judge Albert colluded. All defendants related to claim against Hellenbrand, pertinent parties in both cases are liable.

Case No. SC112269
652.     During the time in China, Ron Hacker , Tanya letter Feb 1st, 2012, Marvin Hellenbrand eviction judgment entered on December 27, 2011,, Section 704.17(3) 30 days and not 704.17(2), 5 days and subsequent illegal seizure and disposal of plaintiff's belonging is part of the conspiracy in China, the parties in US are thus responsible for acts in China, and court's cases pending in the Eastern District of Wisconsin, United States District Court

Ronald hacker false promise to employ[15]
653.     On 8-14-2013, Dibaei again fraudulently represented that plaintiff was absent for the second time for Case Management Conference, resulting in the judge dismissing the First Amended Complaint and entered judgment of vexatious litigant and awarded sanction and costs.

654.     They had failed to filed Answer to the First Amended Complaint, instead they filed Answer to Complaint. Acting in conspiracy they schemed to commit fraud.

---

[15] A pattern, ploy used repeatedly, starting with false interview with law firm in Chicago, claimed his associate was impressed with appeal filed by plaintiff; California law firm, ; Global Law Group, in Los Angeles, one week at $12/hour, "trial and error" plaintiff flew from Wisconsin to Los Angeles;  Ronald Hacker;  Ramada Hotel, Chen; and also ck, from Hong Kong to Kuala Lumpur.

Particulars of fraud:

1. Dibaei has no junior associate with $100/hr salary as he falsely stated under oath, it vitiated all judgment and proceedings. as objected by plaintiff.

2. Plaintiff was not absent on 6/6/2013.

3. Tanya Bogorad , employee of Hacker, signed as on behalf of the law firm, using the letterhead. A fraudulent letter and voided all judgment and proceedings.

4.      On 9-29-2011, car accident,  at around 6.30 a.m. Jose A Orduna intentionally hit plaintiff's car travelling at around 10 miles an hour in Santa Monica, close to the Court where plaintiff was going to have hearing in SC112269 against Hacker.  Citation was issued by police officer, Brent Wilkening, at Santa Monica, who appeared immediately and asked plaintiff for proof of insurance and stated that plaintiff has none. He proceeded to issue Citation No: 630983, Notice To Appear: for misdemeanor, which is void, as it is an infraction, for not possessing proof of insurance and left out information about the speed of car before the accident. At Value Car Rental, Inc., the car rental company had asked if plaintiff has car insurance and plaintiff said yes and so did not rent the car with the car insurance of Value Car rental. Ron Hacker and others, including Democrats took advantage of the opportunity, stole the proof of insurance while plaintiff booked into Ez Win which plaintiff had booked by telephone earlier and they created a car accident , an intentional hit, on 9-29-2011 to cite plaintiff for not carrying proof of insurance. Jose Orduna followed on plaintiff's car passenger right side very closely and knocked onto the passenger side, and damaged the passenger side door and the rear end facing mirror and part of the right side tire, body.

5. Vincent Quigg filed void Notice of Association of Attorney,  despite plaintiff's objection, Judge Cowan on or about 4-14-2022 dismissed the motion to set aside vexatious litigant falsely based on 60 days limitation to set aside judgment. All judgments are void, including the Judgment by Judge Lisa K Sepe-Wiesenfeld entered on 2-2-2023.

6.Judge Lisa K Sepe-Wiesenfeld on 2-2-2023 falsely denied motion to set aside for fraud on court for sanction and for judgment on the pleading, to compel discovery of financial assets of defendants.

7. Judge Elizabeth Lee on May 17 , 2023 denied the filing of Case No 23-cv-2277.

8. they caused another intentional, criminal car hit "accident" and Value Rental falsely claimed against plaintiff insurance company.

9. concealment of bribes.

656. Defendants Hacker and Bag Fund have no valid defence to this action.

Chen , Ramada Hotel's false promise to employ

3-20-2013,arrest

Forfeiture Complaint: 4-26-2012

Service by mail is void.

104

-COMPLAINT-

657.     After the 3-19-2012 filing an action in US Eastern District Court of Wisconsin, Milwaukee, the next day, on 3-20-2013, the defendant in Case No. 12-c-264-CNC,dismissed on 7-31-2012, Board of Regents of University of Wisconsin System, ordered the false arrest at law building lobby of University of Wisconsin-Madison, at city of Madison, about an hour drive from Milwaukee, and police officer Thiel arrested, without warrant,  in bad faith and charging disorderly conduct through a forfeiture complaint. the Forfeiture complaint has no summons, and was mailed. The service is void.

658.     The arrest report clearly stated she did not witness any acts of alleged disorderly conduct in person. Forfeiture Complaint never listed any police or witnesses stated in the police reports< Shelley Thiel,  and there is no conviction, which is a pre-requisite to file forfeiture complaint to forfeit property of plaintiff. They did not bring plaintiff for a hearing before a Court after arrest as is required. The judgment in 2012FO00791 is void.

659.     False arrest on March 20, 2012, 2012FO91, Dane County filed Forfeiture Complaint , did not list Radtke and Thiel. Mandatory court date on police report is 4/6/2012.
stated as : "BOOK and Release"
…but no citation issued. Not finger printed, no photo taken.

Prosecutor's duty to disclose exculpatory evidence: violated
(i) Evidence is favorable and (ii) prejudice has resulted; (iii) reasonable probability that the result would have been different if the undisclosed evidence (police report) had been presented at trial."

660.     On 4/6/2012 charging  a unrelated "disorderly conduct for which nothing is to be forfeited; void for lack of subject matter jurisdiction; arrest on 3/20/2012,  without warrant while plaintiff was typing on a table at the lobby of law building at UW-Madison, intimidating and retaliating against plaintiff for filing lawsuit on 3/19/2012, Case No 12-cv-264 against UWM; false accusations, abuse of process, letter from Dean of law school, defamation, libel.
Location: Law Building, 975 Bascom Mall, Madison, WI, District #1.

"..Radtke..informed that this was an ongoing case originated from last week…"
Disorderly Conduct:

661.     From last week, not in person, no authority to arrest without a warrant. Plus, plaintiff was typing at the main entrance level, the alleged victim did write on a note her name and email.
for relief: 2011: false arrest, false imprisonment and false prosecution by Dane County.

662.     There exists a statutory coram nobis petition incorporating common law, writ of corm nobis. pursuant to Section 958.07 of Wisconsin Statute, to set aside default judgment entered in Case No.: 2012FO000791 on 4-16-2012.

663.    Wisconsin Statute, section 970.01, provides, in parts, as follows:

970.01 Initial appearance before a judge.

(1)   Any person who is arrested shall be taken within a reasonable time before a judge in the county in which the offense was alleged to have been committed. The initial appearance may be conducted on the record by telephone or live audiovisual means under s. 967.08. If the initial appearance is conducted by telephone or live audiovisual means, the person may waive physical appearance. Waiver of physical appearance shall be placed on the record of the initial appearance and does not waive other grounds for challenging the court's personal jurisdiction. If the person does not waive physical appearance, conducting the initial appearance by telephone or live audiovisual means under s. 967.08 does not waive any grounds that the person has for challenging the court's personal jurisdiction.

**(2)  When a person is arrested without a warrant and brought before a judge, a complaint shall be filed forthwith.**

**Petitioner was not or never  brought before a judge for an arrest without warrant.**

**Arrest on 3-20-2012, the complaint filed on 4-6-2012, the complaint is untimely.**

The failure to hold a preliminary hearing within the prescribed time results in a loss of personal jurisdiction, which requires only a dismissal without prejudice. State v. Lee, 2021 WI App 12, 396 Wis. 2d 136, 955 N.W.2d 424, 19-0221.

The judgment should be set aside as no preliminary hearing was ever held and the court has no personal jurisdiction. History: Sup. Ct. Order, 141 Wis. 2d xiii (1987); 1987 a. 403; 1995 a. 27.

4.      The records in Case No 2012FO000791, in verbatim, set forth the following:

| No. | Description | Class Code. | Sev. | Plea | Date(s). Committed. | Amended From |
|-----|-------------|-------|------|------|------|------|
| 1.  | 32.03. Disorderly Conduct Citation No. | 32999. | Forf. U. | | 03-20-2012 | |

106

-COMPLAINT-

Disposition                      Sent

Guilty due to no                 Forfeiture/Fine

Contest plea

---

                                                          C.O.

                                                          Court Reporter

                                                          Tape/Counter

Date:          Court record entry                    Amount          Location

4-06-2012      Complaint filed

4-16-2012      Default Judgment entered

               Defendant did not appear. Gary R Gomez

Appeared for the Dane County

Court ordered the amount of $326.50

Court granted 60 days to pay or collections

04-16-2012.    Default letter placed in court file. No mailing address on file.

04-16-2012     Dispositional order/judgment

08-07-2012.    Judgment for unpaid fine/forfeiture/other      $326.50

02-19-2013     Return of unclaimed/undelivered mail service

5.       32.03 of Dane County incorporates Wisconsin State Statutory provision.

Default judgment:

Dated 4-16-2012


6.       The Court finds:

-defendant was given notice that the matter was to be heard on April 16, 2012 at 10.00 am.

Description :                   32.03,  disorderly conduct.

7.       Complaint for forfeiture filed on 4-6-2012

KHOR CHIN LIM

-COMPLAINT-

NPA

NPA WI


a.      Did Not state petitioner's address.

b.      No citation was issued.

8.      The 4-6-2012 Complaint states the following:   **"32.03 adopting Section 947.01 of Wisconsin Statute** and upon conviction shall forfeit not more than $1,000.00."

9.      The judgment is void as the court has no personal jurisdiction.

WHEREFORE petitioner prays for the following reliefs:

1       Order of plea of guilt of no contest on default, conviction on 4-16-2012 be set aside.

2.      Judgment entered on 8-7-2012 be vacated;

3.      An order that judgment be entered against the Respondent for the sum of $326.50;

4.      Interest on the sum of $326.50 at 10% per annum;

5.      Such further and other relief as the Court deems fit and proper.

Dated this 16th of July, 2023.


664.    UW-Madison law school dean via a letter dated 3/20/2012, falsely stated citation was issued but no citation was issued.

BMO Harris fraud
665.    BMO criminally manipulated "provisional credits" on plaintiff's checking account statements, of check $26300.00, drawn on BMO Bank, which has sufficient fund and can be cashed, but was deposited into another savings account of another and different individual, was bad faith bank statement; breach of contract, subsequent "flyers" and harassment. BMO is liable for about $360,000.00 for conversion and other causes of action.

August 30, 2012, Elk Groove Village Fraud:

666.    8/30/2012, Warrant of arrest granted which was applied by Elk Groove Village Police Department, police officer Manglo and misdemeanor charge of "fleeing and eluding", DuPage County.  Case No. 12300337201, plaintiff filed for speedy trial or quash arrest (warrant of arrest issued), Court ordered dated December 6, 2013 Nolo prosequi,[16]  but the notice was not mailed

---

[16] Nolle prosequi ( *People v Wells*, 2017 IL App (1st) 152758 "A Nolle prosequi is the formal entry by the State showing an unwillingness to prosecute a charge and leaving the matter in the same condition as it was before the

108
-COMPLAINT-

, instead the deputy clerk mailed a letter dated January 21, 2012, informing of the Order, but without enclosing a copy of the Court's Order.  Also, the correct remedy is dismissal with prejudice and not nolo prosequi.

667.    Plaintiff later petitioned to expunge the arrest records. On Feb 3rd, 2021, Order To Expunge Arrest Record entered. Arrest record expunged. Elk Groove Village falsely stated there is no records, but there is warrant of arrest, and misdemeanor charge.

668.    In Case No.: 12CR18264 criminal prosecution[17] by Cook County, it started in September 15, 2012, and in 2014, coincided with Olson's handling of purchase, bribery through Obama administration, (2008-2012, 2012-2016) the federal system, the District Court, the Seventh Circuit judges, the whole Illinois legal system was corrupted by bribery. Rahm Emanuel[18], and late Barack Obama as bribed parties, 12CR18264: Illegal stamping: collusion, fraud, violation of statutory duty, abuse of process, violation of plaintiff's right to access court.

669.    Motion recuse three judges: order, 5/25/2022, no caption , signed by Pierce, Order, by three judges, 6/28/2022 , no signature by judges.

670. The pertinent details of the police reports are as follows:
Police report:
Transported time : 15-September-2012 20:10 **(8:10 p.m.)**

671.    Few days before the 911 call by Xiao Yu, plaintiff had an argument with the purported son of landlord, Yu Ai Zhang, but possibly is husband of Xiao Yu, possibly named Zhuo Hui Huang. On September 15, 2012, in the evening, plaintiff just returned from library, also on Halstead road, near the police station on Halstead road. The librarian tipped off the police. And the 911 call showed a phone call by daughter of landlady, landlady lived on the second level , opposite plaintiff's apartment. Plaintiff on the rear whereas her apartment facing the road ,2nd floor  front. There was a sidewalk and an entrance with a metal gate, with latch that when lifted upward, will open the gate. From the sidewalk, going further is a door on the left on the wall, and slightly further is a gate, separating the house from the house located at the rear, i.e. houses built back facing back. From the side door, is a metal door with key to enter the house.

prosecution begun. Generally, a prosecution must be commenced within three years after the commission of a felony offence: 720 ILCS 5/3-5(b). ), regarding the  charge, let the matter remain as it is, entails the consequences that as of this date, from august 30, 2013 warrant of arrest, reinstatement , Illinois Supreme Court in *Shinaul,* , 2017 IL 120162, that the State could not reinstate the nol-prossed charges since they were barred by the statute of limitations. The statute of limitation for misdemeanor is 6 months. *People v Lutter,* 2015 IL App (2d) 140139.
[17] Derivative evidence, in the case of Fourth Amendment violations, resulting from an unlawful search or seizure, may be inadmissible ( Wong Sun vs US), traditional 4th amendment "fruits of poisonous tree" except Miranda context. People v Lujan 10/23/2001 Ct App. 92 Cal App. 4th 1389. Popielewski fraudulently stated "disturbance" on the 7/16/2013 plea of guilt hearing, but the 911 call did not allege disturbance, and plaintiff lived alone in the apartment.
[18] He is close aide of Barack Obama in Chicago, and Mayor of Chicago. He always met Barack Obama at the airport when he travelled back to Chicago from D.C.

Once inside the house first floor is a hall with a ladder, the twisting style , spiral ladder with space for one person to climb, to the second floor and at the end of the ladder is another metal gate, with a lock, preventing first floor tenants or trespasser to access the second floor. On the second floor, plaintiff's apartment is on the left and landlady's apartment is on the right, separated by a path of about 8 to 13 feet, with doors facing each other.

672.    Beyond the gate is a storage like room with the ceiling attached to the bottom of the two windows of the rear apartment, the floor/ceiling is about two feet below the base of the two windows at the rear, second floor. The windows are secured with two metal bars built horizontally across, thus, entry from the windows are impossible, The husband of landlady, Yong Cai Zhang had earlier installed the metal bars to prevent trespassing as the storage room of the house at the back of neighbor has a ladder leaned on the wall of the room, enabling access to the roof of the storage room thus outside the windows of plaintiff's apartment. That led the police to commit perjury stating they entered from windows.

673.    Police, after the tipped off call, knocked on the door of the apartment, then entered the apartment, the hall-and-kitchen area, from front door, using keys from landlady, shone torch light on the floor and walked to door of plaintiff's bedroom, used the keys obtained from landlady, opened the door to the room, and saw an empty room, plaintiff already used a wooden plank and stepped on it and landed at the roof of neighbor house.

674.    Plaintiff called 911 and asked if police was dispatched to the address, the receptionist said yes and that a sergeant is also will be there and asked plaintiff to cooperate. Meanwhile a blue shirt police talked to plaintiff and shortly after the white shirt sergeant arrived, and threated if the police is forced to go to the roof, things would get worse. Plaintiff slided the backpack and cell phone downward along the wooden plank, and agreed that fire-department would bring a ladder to let plaintiff to the ground.

675.    Fire-department arrived, plaintiff climbed to the ground and once landed was hand-cuffed by a Mexican, possibly Jose Rodriguez, and a Caucasian by his side, they brought plaintiff to the police vehicle and placed plaintiff on the backseat.

676.    Rodriguez then turned on the screen, looks like a the monitor of computer, about the size of laptop, of MacBook Air, 2021, and started to scroll and waited for more than 45 minutes then brought plaintiff to nearby police station, placed in a cell. By around 12.30 midnight, a guy in plain cloth appeared and did not identify himself and asked plaintiff and did not administer Miranda to ask questions, plaintiff replied said plaintiff has nothing to say to him. No Miranda before arrest or upon hand-cuffing, UW-Madison, likewise did not administer Miranda, Nor Oakland nor Milpitas, during the arrest.

677.    They never produced any "Molotov cocktails for plaintiff to admit or denied, they searched till 1.06 , am sept 16, 2012 the next day, and the Property Index has no Molotov

cocktails. The police report is fabricated, the 911 report stated bomb and arson units notified, Mills was never there on 9/15/2012, never appeared on the scene, as an investigating officer, plaintiff could recover on any theory based on these facts. On 9/16/2012, plaintiff was brought to a court by a van, a lady appeared at outside the jail , called out plaintiff' s name and asked plaintiff's occupation, plaintiff stated a lawyer in Singapore. Before the judge she stated fraudulently to the court that plaintiff is a paralegal, and she never filed appearance and turned out to be a public defender never properly appointed.

678.    Arrest: entry Is illegal,  search is illegal. Unconstitutional arrest
Warrant of arrest and indictment, probable cause of detention already established to detain, but 12CR18264  is warrantless arrest, within 48 hours, preliminary hearing is required to determined probable cause, as there are significant constraints on plaintiff's liberty.

679.    Preliminary probable cause hearings, rights to public trials, Sixth and Fourteenth Amendments guarantee are violated.

680.    The Property inventory was not acknowledged , there is no Molotov cocktails.

681.    Rights to unbiased Judge: due process rights violated, Judge Alonso has been bribed, and actual malice.
Served on 10/23/2022, Case No. 22-cv-04605,

682.    Failed to call to the attention of the district chief judge or circuit chief judge any information likely to constitute judicial misconduct, Kwame Raoul did not file appearance, has defaulted.

683.    Sixth Amendment rights, ineffective assistance of counsel, in plea bargain, deficient counsel not to inform risks of deportation.
Explain nature of charge and elements of the crime, Jason Menard was bribed and colluded.
Bribery: prosecutorial vindictiveness.
Involuntary: failure to meet the standard for taking a plea.

684.    Prosecutor's duty to disclose exculpatory evidence: violated
(i) Evidence is favorable and (ii) prejudice has resulted; (iii) reasonable probability that the result would have been different if the undisclosed evidence (police report) had been presented at trial."

685.    Illegal, abusive stamping: violation of equal protection rights and statutory duty, abuse of process, fraud, collusion.

686.    On or about February 20th, 2022, plaintiff mailed the Amended Section 2-1401 Petition for filing via USPS mail.

687.     Defendant Iris Martinez, the Clerk of the Circuit Court of Cook County, and or the deputy clerk acting in conspiracy and aided and abetted by the Democrats of USA, stamped it as received on Feb 24, 2022 and then stamped as filed it on April 15, 2022.
On April 2022, plaintiff has mailed the Notice of Appeal for filing, and it was stamped as file don April 11, 2022.

688.     On April 11, 2022 Circuit Court has lost jurisdiction with the filing of the Notice of Appeal.

689. In the Case No.: 12CR18264, interlocutory appeal, Notice of Appeal, motion to file late appeal, supporting documents, filed on 2-25-2013 while plaintiff was still at Elgin, Case No. 13-0943, Judge Biebel, falsely stated it as a final Judgment, and appellate defender attorney, Lester Finkle committed perjury in the Motion To Dismiss Appeal as Moot, also failed to communicate and send copy records of appeal to plaintiff, i.e. filing motion without plaintiff's consent and instruction. The Court of Appeal, allowed the motion, dismissed the appeal and plaintiff's motion for rehearing was denied as time barred and the court having no jurisdiction, by three appellate judge, entered May 7th, 2014, two of them dismissed the appeal on Sep 10, 2013. There are other incidents. (see infra). Supreme Court of Illinois, allowed the withdrawal of motion for leave to file petition for leave to appeal late on 9/23/2013.  And Mandamus/habeas corpus on 9/26/2013.  The Case No.: 12CR18264 , interlocutory appeal, Case No 13-0943 Mandate of appeal entered on 10/30/2013.
9-23-2014,motion by petitioner to withdraw his motion for leave to file a late petition foe leave to appeal, is allowed.

690     Case No. 12CR18264, the defendants committed fraud.
Particulars  of fraud:
(1) 911 call: Popielewski 7/16/2013 "disturbance", perjury.
(2) US v Minnessota: no exigent circumstances: trespass, arrest unlawful, fruits of poisonous tree, evidence not admissible;
(3) No within 48 hours probable cause hearing when plaintiff likely to lose liberty.
(4) No order to appoint PD at bond determination hearing, void hearing and order, collusion to perpetuate a scheme to defraud, defrauding plaintiff by all Court, PD and ASA. (assistant State Attorney) , bond of $40,000.00 is void on 9/16/2012.
(5) Plaintiff was detained illegally, all appearances were involuntary and void.
(6) fabricated Property Inventory, 9/16/2012. (not acknowledged);
(7) fabricated Police Report; 9/16/2012, inter alia, ASA Toledo found probable cause at around 3.06 am to prosecute before there was probable cause to arrest , a hour plus later at about 4.17 am.
(8) fabricated "Felony" Complaint by Sollis filed on 9/16/2012; no leave to file, Complaint is only for misdemeanor.

(6) fabricated Index by Clerk, Dorothy Brown, commencing 10/3/2012; the earlier Index strating from 9/15/2012 was concealed, on appeal in Case No. 20-0104, (Daniel Pierce, James Fitzgerald Smith, Sheldon A. Harris[1/10/2022], denying ) , Sharon Oden Johnson, Mary Mikva) changing panel without notice)  and when it was submitted to the DHS and filed by the DHS on 12/19/2013 at Immigration Court, together with fabricated Notice To Appear.

4/12/2022 order by James Smith, last day was july 6, 2022.

(7)Letter of 6/28/2022,: failed to serve mandate.

(8)Order recusal not signed. 6/28/2022.

(9)5/25/2022, recusal order signed only by Pierce. Without caption

(10)Motion to recuse filed on 5/2/4/2022, recusing all three judges, first denied by Daniel Pierce, on 5/25/2022 and again by three judges on 6/28/2022, is void.

(7) fraudulent concealment: fabricated Property Inventory, (not acknowledged) ;

(8) fraudulent concealment: fabricated Police Report;

(9) fraudulent concealment: fabricated Complaint by Sollis filed on 9/16/2012;

(10) collusion: notice of substitution, fraudulent stamping;

(11) collusion: proof of service of send amended petition, fraudulent stamping;

(12) Amended Second Petition, stamped "Received : 2/24/2022", "Filed 3/9/2022", "Filed 4/15/2022".

(13) Fabricated Notice of indictment from PD, "You have been indicted", "continued to 10-12-2012" and another notice continued to 10-18-2012.

(14) 5/3/2013 hearing, recusal motion duplicate not dismissed, perjury by Popielewski " not in compliance", but 3/22/2013, Order Involuntary Administration of Psy. Medication

(15) fabricated Discharge Documents: Olenek: 20MG QHS, Court order 30 mg Max.

(16) fabricated Discharge Documents: Olenek PRN (when necessary) IM( intra-muscular) QHS.

(17) in addition to all the 3 jabs by RN and the bad faith restraints and involuntary jabs.

(18)Void 12CR18264, Property Inventory empty fraudulently concealed, Complaint of Sollis filed

(19)on 9/16/2013, fraudulently concealed, PD not appointed at Bond hearing on 9/16/2012; voided 9/27/2012,

(20)Grand Jury Indictment, (fraudulently concealed the above- mentioned)

(21)collusion among Court, Prosecutor, (abusive stamping of Notice of Substitution, etc) voided 12CR18264, and voided 13MH33; bribery of judges,

(22)Bond hearing 9/16/2012 Judge Brown; 10/18/2012, Judge Alonso voided judgment; perjury , judgment is voidable (*People v Hixon,* 2019 )

(23)Plaintiff mentioned 12-cv-1390, TRO at the hearing but Alonso ignored.

(24) Plaintiff placed the mail for the Case 12-cv-1390, in the institutional mail of Chicago Jail, Judge Alonso pretended he did not know, when plaintiff asked him to take Judicial Notice, although was not in possession of the document.

(25)"Disturbance": (a) 7/16/2013 hearing, Popielewski alleged : "Disturbance", but 9/15/2012 "911" call, by Xiao Yu, Yu Ai Zhang, no allegation of "Disturbance"; (high risk male etc.)

(26) Charging documents, Popielewski, on 11-9-2012 hearing stated, given to Ms Smith, Chandra Smith.

(27) 5-3-2013 Recusal denied, plaintiff was not brought to Court, but index fraudulent.

(28) Letter dated 5-10-2013, Emily Goldsmith mailed charging documents and transcripts, but no police reports. Throughout prosecution, no police report was made available to plaintiff, except on 10-18-2012 plaintiff represented himself but on same night around 12 mid night past, the documents were wrongfully seized by the prison guards, who also interfered with Case No 12-cv-1390. Filed 9/11/2012, mentioned on 10/18/2012 before Alonso.

(29) Emily Mallor, on behalf of Sheromme    of PD also refused to release any documents, which plaintiff requested as a "client" represented by them, she falsely listed the case number and alleged the request is a FOIA request, and denied release fraudulently, twice, first in 2020 and again in 2022. Plaintiff avers that PD as an agency or organ of Illinois State, department is immune, but not the PD who accepted bribes.

691.    In case no. 13MH33, defendant Olenek, as psychiatrist, filed petition for involuntary administration of medication and committed fraud.

Fraud:

Particulars

(1) Petition : Para 2: information from staff members is hearsay evidence

(2) Para 3  : "bu"..

(3) Para 5: positive mantoux,: did inform that plaintiff took TB vaccine and the test is positive and prior to admission to Nursing school did get it verified by a hospital in nearby Rockford.

(4) Para 7: perjury, never took a pill.

(5) Service on Guardian and not Kane PD

(6) Para 12 is perjury

Para is perjury: plaintiff is legally incompetent, since committed to elgin.

(7) Para 18, is perjury that no legal interest, financial interest, not in litigation.

But plaintiff has sued him as follows:

Case 13-cv-229 , Lim v Olenek was sued by 3/22/2013 hearing dismissed, instead of transfer, as the case would impact the detention at Elgin if no bribery is involved .

692.    13MH33: proof of service: Anita M. Davis,  dated **2/25/201**, "**FTP, F&G**, **Khor Lim"**, wrong date, wrong party.  is invalid,

William Parnhark, J appointed OSAD on 4/1/2013.

693    Complaint filed at Kane County Circuit Court was delayed or filed delay by the defendants, and were sealed and no case number was assigned, The no case number and no judge was assigned.

694.    All parties in 13MH33 and removal proceedings have notice of void proceedings.

695.   In addition, void 12CR18264, voided 13MH33. Vitiated everything, removal proceedings also voided.

696.   On 3/27/2013 Complaint filed at Kane County Circuit Court, Ex Parte Motion For Temporary Restraining Order requested, but was sealed.

697.   Case 13-cv-229 , Lim v Olenek was sued by 3/22/2013 hearing dismissed, instead of transfer, as the case would impact the detention at Elgin if no bribery is involved .

698.   Magistrate Hummel denied based on IFP, but payment had already been made, on 4/22/13, entered on 4/23/13, $350.00 the day before his recommendation as Magistrate Judge.

699.   On 5/13/2013 judgment was entered by Mordue, J.

Petition for Habeas Corpus in US District Court:
700.   13-cv-426, Hummel was the Magistrate Judge, a habeas corpus case, no payment made and it was transferred, to Northern Illinois.

701.   Case No. -13-cv-2908, Northern Illinois US District Court, habeas corpus, presided by Judge Kennelly, habeas corpus petition also filed in New York, and transferred to Northern Illinois, Judge John D Darrell, in 13-cv-3170, filed on 4/17/13, held duplicative of 13-cv-2908, and dismissed it.

702.   Judge Crabb of Western District of Wisconsin, also ordered transfer of Habeas Corpus petition, to Northern Illinois, but it was not transferred.

703.   7/16/2013, 7/18/2013 arrived at Stateville, falsely informed, by a Chinese psychiatrist, as he informed plaintiff, inmates are violent and placed in a padded room, for psychiatrist patient, arrived at Dixon Correction and Detention Center 7/25/2013.

704.   Helen Yu's letter , from Metcalf & Associates P.C., addressed to Dixon, forwarded to Juneau.


705.   On 7/17/2013, -13-0943 was pending. Dismissed on 9/10/2013, Court has no jurisdiction. Supreme Ct,
September 23, 2014, motion to withdraw motion for leave to file late petition is allowed.
The final decision is September 23, 2014. The guilty plea on 7/16/2013 is not final.

Supreme Court of Illinois was informed by plaintiff via a May 2014 letter that plaintiff has no records of case no 13-0943, they were put on notice and ignored the abnormal circumstances.

706.    Removal proceedings is pre-mature as filed on January 2014 and ended on 5/21/2014.

Thus, judgment in 12CR18264 is void, removal proceedings and order is void.

707.    -13MH33, appeal was pending. Appeal dismissed, Entered on 8/15/2013.
No factual basis to plead guilty, or not all issues resolved, .

708.    In 2012 plaintiff took the New York Bar Exams, and  Law Examiners failed plaintiff in bad faith. Plaintiff wrote to complaint with the parties. Plaintiff filed lawsuit,  against the New York Board, Case No 12-cv-1390 in United States District Court, North District Court of New York,  and 12-cv-429 in Wisconsin United States District Court, Eastern District of Wisconsin.
12-cv-429-CNC, Lim v New York Board of Law Examiners, et al. filed 5/3/2013

709.    On 5-3-2012, Case No. 12-cv-429, Lim v New York Board of Law Examiners, et. al;  was filed at Eastern District of Wisconsin, United States District Court. Plaintiff filed motion for injunctive relief against the defendant New York Board and others.

710.    On 6-7-2012,  defendant New York Board's attorney, McCartin purported to enter appearance by filing a letter.

711.    The letter purporting to be "Notice of appearance" or "appearance", was stated on the Docket, by Michael McCartin, continuing the trend of attorney Jay Koritzinsky who filed a letter purporting to attach retainer, in 2011F0663 eviction in Dane County, before Judge Albert despite plaintiff's objections. Koritzinsky refused to admit in Case No. 12-cv-296, before Judge Clevert. Plaintiff failed to set aside the Judgment , thus filed in the federal court, but to no avail.

First Amended Complaint
712.    On 5-17-2012, First Amended Complaint was filed, at paragraph 33, plaintiff pleaded that Judge Clevert failed to rule on TRO in Case 12-cv-296. McCartin,

713.    Thus, the judgment is void. Judgment should be entered for the relief claimed as default.
315.    Plaintiff 's Complaint was mailed on 9/9/2012, right before the false arrest on 9/15/2012.

714.    Plaintiff sought restraining order but democrat have planned to falsely prosecute plaintiff. The motion was ignored.

715.    Plaintiff's letter informing the Clerk that plaintiff was seeking TRO, and enclosed a copy of the civil cover sheet, and the Complaint.

Despite the urgency of the matter, the Court failed to act.

716.     On 11/20/2012, McCartin it is believed, after purporting to enter appearance, sent a **fax** from Michael McCartin, Assistant New York attorney sent to Judge Hurd, and signed by Judge Hurd and McCartin, purported to delay the ruling of TRO until the defendants are served in Case No. 12-cv-1390.   The fax is clearly improper, it was cc: to both addresses of plaintiff but no proof of service.

717.     No appearance has ever been filed. The Court failed to rule on TRO.

718.     This New York Attorney had acted in bad faith, like the case of Alvin Bragg and Letitia James, Guan Merchan, plaintiff avers all must be restrained.

Cook County interfered:
719.     In case No : 12-cv-1390, filed on 1/4/2013, Plaintiff mailed letter from cook county jail, a motion for Temporary Restraining Order and a petition for habeas corpus. Defendants from Cook County, Government of Cook County, Toni Preckwinkle, District Attorney Foxx, Tom Dart, Olenek, fabricated evidence, spoiled the evidence and committed fraud on the Court, abuse of process, by adding at page 2 and other pages, denying and crossing out the paragraph, negativing the plaintiff's motion and petition, interfering/obstruction of justice, with justice, as it is a criminal proceedings. Adam J C Weber via letter dated June 8, 2022, deputy director of Conviction Integrity Unit, denied the request in bad faith.

720.     Michael McCartin, sent a fax to Judge Hurd and got him to delay ruling on plaintiff's Ex Parte Motion for TRO until the defendants are served. It is an abuse in bad faith.

721.     Cook County Jail staff added pages to plaintiff court documents sent for filing at New York, Case No 12-cv-1390, added many pages in bad faith, as a direct acts of Preckwinkle, Kimberly Foxx, as plaintiff then was prosecuted by them in Case No. 12CR18264 and was detained at Cook County jail.  Such bad faith intervention, also corroborated the bad faith prosecution in Case No. 12Cr18264. The conviction is void.

722.     On 5-3-2012; Case No. 12-cv-429, Lim v New York Board of Law Examiners, et. al;  was filed at Eastern District of Wisconsin, United States District Court.
Plaintiff filed motion for injunctive relief against the defendant New York Board and others.

723..     On 6-7-2012,  defendant New York Board's attorney, McCartin purported to enter appearance by filing a letter.

724.     The letter purporting to be "Notice of appearance" or "appearance", was illegally filed by Michael McCartin, continuing the trend of Jay Koritzinsky, despite plaintiff's objections.

725.     Thus the judgment is void. Judgment should be entered for the relief claimed as default.

726.    It was mailed on 9/9/2012. Right before the false arrest on 9/15/2012.

727.    Plaintiff sought restraining order but democrat have planned to falsely prosecute plaintiff. The motion was ignored.

728.    Plaintiff's letter informing the Clerk that plaintiff was seeking TRO, and enclosed a copy of the civil cover sheet, and the Complaint. Despite the urgency of the matter, the Court failed to act.

730.    On 11/20/2012, McCartin it is believed, after purporting to enter appearance,  sent a **fax** from Michael McCartin, Assistant New York attorney sent to Judge Hurd, and signed by Judge Hurd and McCartin, purported to delay the ruling of TRO until the defendants are served in Case No. 12-cv-1390The fax is clearly improper, it was cc: to both addresses of plaintiff but no proof of service.

731.    No appearance has ever been filed. The Court failed to rule on TRO.

732.    This New York Attorney had acted in bad faith, like the case of Alvin Bragg and Letitia James, Guan Merchan, plaintiff avers all must be restrained.

Cook County sheriff interfered:

733.    In case No : 12-cv-1390, filed on 1/4/2013, Plaintiff mailed letter from cook county jail, a motion.

734.    The defamatory, libelous, description that publish plaintiff in false light are as follows: accusing plaintiff of crime at page 2

Illinois Jurisprudence

//

II. OFFENSES ARISING UNDE THE **CONTROLLED SUBSTANCES** ACT

//
**§56.14 Unauthorized possession**

It is unlawful in Illinois

**substance**
**substance**
**substance**
**substance**
**substance**

118
-COMPLAINT-

The mailing in the cook county jail

735.    As inmates, in a hall together with about 67 people, all on a double-decker bed, after plaintiff was removed from the general population, inmates queue up for dinner tray during fixed dinner times. Inmates proceeds to the tables where a few inmates serve the tray with dishes and that is the dinner. Next to the table where they hand over the trays and on the floor is a plastic box container whereby inmates could drop and place their letters.

736.    The mailing of letter is thus once in the evening and it takes much longer time for the letters to go from the prison, as they are gathered together and get posted.

737.    It was the dropping off, collecting, and sorting and posting process that the staff at Cook county jail, under the purview of sheriff of Cook County, added those pages and trivialized the court papers filed by plaintiff and added libelous publication.

738.    The defendant interfered with judicial process, and in bad faith caused the case be prejudiced, and as conspirators in Case No 12CR18264, the conviction in criminal Case No. 12cr18264 prosecuted by Cook County Kimberly Foxx, should be overturned. It is they have anticipated plaintiff's looking for job as a paralegal, in nearby Chicago from Janesville, in 2005 and 2007, while at University of Dubuque's Nursing Program, a story book about nurses working in Cook County were among the reading materials, in addition to those text books. The false prosecution was pre-meditated and planned. By failing plaintiff in Bar Exams, held in July 1996, Feb 2012, plaintiff would look for paralegal job in Chicago and big cities. Plaintiff did attend an interview with a law firm in Chicago in 2010, Z Wang & Associates, before travelling to Los Angeles to look for job as a paralegal. Wang stated in the interview that his junior associates, who was present during the job interview, was "impressed" with the appeal plaintiff "did" in California. He was referring to Lee Kai case in Singapore. To add insults, he also said plaintiff should attend Illinois Institute of Technology, Chicago-Kent College of Law, where he had attended earlier, get exempted for one year, and attended the rest two years law school. Plaintiff already told him plaintiff is qualified to take bar exams. And in Case No 12cr18264, the Clerk, judge, prosecutor, public defender, plaintiff's hired attorneys colluded.

New York
Case filed on 3/1/2013, New York Case **1:13-cv-00229-NAM-CFH,** Lim v. Olenek et al
739.    Letter mailed to Judge Hurd, Received 2/27/2013, Albany, received 3/1/2013, Utica,  ut did not transfer in time to restrain hearing filed on 2/21/2013, heard on 3/22/2013.

740.    The Complaint in 13-cv-229 and the related Temporary Restraining Order sought and filed against Olenek, the Judge Norman Mordue, also failed to rule on Ex Parte for Temporary Restraining Order and failed to return the $350 , and proceeded on the basis of non-payment and dismissed it , even though plaintiff had made payment on 4/22/2013.

They are liable for the damages suffered at Elgin Mental Health Center. The

741.    It was sent to Albany, there is no reason to re-route to Utica and dismissed it on wrong venue ground. It should have been transferred, like the other New York case. At Albany, 13-cv-3170, petition for Habeas Corpus.

742.    It was addressed to Judge Hurd at Albany, received on 2/27/2013 and as a results of conspiracy, it was rerouted to Utica and received on 3/1/2013.

743.    While at Elgin, all letters, correspondence were handed over to Stephen Fossing who mailed them out. Stephen Fossing , known as "case worker" is the person who handles plaintiff's letters, and other matter, from whom plaintiff got envelope of the Hospital to send mails.

744.    Stephen Fossing ever asked plaintiff if plaintiff has inheritance of one millions dollars. This is from the application sent to New York, suing Olenek, who stated in perjury that there is no proceedings against him in 13MH33 mental health Court proceedings for involuntary administration of medicine, the Complaint was filed on 3/1/2013, Stephen Fossing has close watch on plaintiff, and they all knew the filing in the New York Court.

745.    In **1:13-cv-00229-NAM-CFH** ,  fees were paid on 4-22-2013, but judgment entered on 5/14/2013, the fees were never returned.

746.    Psychitrist Olenek on 3-22-2013 Mental Health Court , administration of involuntary medication hearing never disclosed that he knew plaintiff sued him but he has not been served. His petition was dated earlier.  He was aware of lwsuits as all letters were mailed Stephen Fossing the social worker who worked with him.

747.    In that case, Plaintiff is requesting Ex Parte motion as there exists immediate and irreparable harm.

748     The petition filed by Olenek, stating there is no court proceedings. It is untrue that Olenek stated there is no court proceedings against him. Stephen Fossing asked plaintiff if plaintiff has a million dollar inheritance. That information is from the Court papers submitted to the Court in that case. By 3-22-2013 hearing, the case 13-cv-229 had already been filed.

749.    The Case No. 12-cv-229 was filed on 3/1/2013 and the hearing of 13MH33 was held on 3/22/2013

**Para 18 is perjury: not in litigation, mail handled by Stephen fossing**

120
-COMPLAINT-

750. While at Elgin Mental Health Center, Plaintiff was informed by Christopher Christiansen that they, the staff at Elgin would apply for involuntary administration of medication, like what they did to him and stating that the Court is just opposite the Elgin hospital. Thus plaintiff mailed Complaint to New York Court, seeking injunctive relief.

751. The driver, who drove plaintiff to the Mental health Court, purposely went on a detour on the morning they brought plaintiff to the court house.

752. On 6-7-2012, McCartin filed motion to dismiss and the Court granted the motion.

753. Defendant from attorney General of New York, defendant McCartin, abused the process by writing a letter as an appearance. McCartin from New York, Attorney General office. The fact is the defendants have no attorney of records, there being no appearance filed. Any motion, papers, documents are void. McCartin proceeded to file motion to dismiss. And the Court granted the motion.

754. The judgment is void and the bad faith on the part of the New York Board is evident. Not only NCBE failed plaintiff, the written portions were also suppressed, resulting in plaintiff not achieving a passing score for the Bar Exams.

Case No. 12-cv-1390, Lim v New York Board of Law Examiners, et.al; Northern District of New York, United States District Court. McCartin from New York  Attorney General

755. Michael McCartin committed fraud, abuse of process: they includes the following:

Particulars

1. No appearance, letter purported to be "Appearance", Case No 12-cv-429, Eastern District of Wisconsin, United States District Court.

2. Fax , not accompanied with proof of service when filed; purported to serve as Order of the Court and Order signed not served.  Case No 12-cv-1390, Northern District of New York, United States District Court. Order never served. No proof of service.

756. McCartin committed the following: in Case No:. 12-cv-429 (letter an abuse ) and 12-cv-1390 (fax an abuse), and the judgments are void.  Plaintiff's lawsuit against New York Board, the Board has no defense.

In Case No: 12-cv-229

757. Magistrate Judge Christopher F. Hummel,  his recommendation dated April 23, 2013, referred to Judge Hurd's dismissal on 15-january-2013 , (at page 4) but dismissal is Case No. 12-cv-1390, and not the case he cited, he colluded and cited Case No: 12-cv-229, the case he himself is deciding. Judge Mordue acted on his recommendation.

758.    Magistrate Hummel also denied IFP, (at page 1) i.e. indigent plaintiff, but payment had already been made on April 22, 2013 entered on 4/23/2013. For $350.00 filing fees the day of the decision.

759.    Subsequent Hurd judgment to dismiss on 1/15/2013, who colluded with McCartin, on 11/20/2012 fax, is void.

760.    Hummel's decision in Case No. 12-cv-229 , with citation citing Judge Hurd in 12-cv-1390, which is void , thus has no basis for the issue he was ruling on.

761.    The $350 payment was never refunded. They dismissed also on basis on IFP's rejection. But did not state filing fees was paid.

762.    The refusal to refund was done in bad faith. Judgment in Case No: 12-cv-229229 is void. Payment had been made on 4-23-2013, it was not mentioned and the sum not returned.

763.    Mordue's judgment on 5-13-2013 at Syracuse is also void for bad faith. Judge Hurd decision is void, the recommendation by Magistrate Hummel also can not be based on Judgment of Hurd. (The fax's to delay ruling on TRO is void in 12-cv-1390)

764.    The inference of conspiracy can be made since the cases against New York Board (12-cv-1390) against Olenek (12-cv-229) , are in Northern New York District Court.
353.    MBE is also multiple-choice questions exams which counts for a major portions of the total scores of the Bar Exams in both California and New York.

765.    New York , 2012 Feb Bar exams , Law Examiners failed plaintiff, with the score of MBE reported by NCBE.

766.    The MBE score was suppressed so that plaintiff could not pass. In 2012, plaintiff requested that NCBE produced the Answer sheet of plaintiff to re-score but they side-stepped, refused to reply to the request.

767.    MBE score can be transferred to any State that use it for admission. It is the part of the score of all bar exams, except Wisconsin, where there is no bar exams.

768.    That is, MBE covers all topics common in all US law school, e.g.,  Criminal Law and Procedures, Contracts, Torts, Constitutional law, Property, Evidence, etc.
While local California law portions and MBE subjects are tested via the Essays questions.

769.    The MPRE in the 2021 exams was when NCBE scored the lowest score ever at 70, even though plaintiff answered almost all of them correct.

770.     NCBE suppressed plaintiff's score at California and New York Bar Exams, through the MBE exams. And conspired with LKY's group , aided and abetted and through bribery.

771.     In 2021, Plaintiff took the California Bar Exams, and the MPRE score was fraudulently suppressed to 70.

2012 bribery:
772.     Ms. Olson has represented various clients on significant transactions, including: -  GIC in connection with (i) a take-private $15 billion acquisition, in partnership with Oak Street, of STORE Capital and a related $2.6 billion acquisition financing and (ii) a take-private $4.4 billion acquisition, together with Dream Industrial Real Estate Investment Trust, of Summit Industrial Income REIT. Entities involved:
Summit Industrial Income REIT is an unincorporated open-ended trust ;
Dream Industrial REIT (DIR);
Dream Summit Industrial LP.

723.     On information and belief, Nancy Olson and Blair Thetford of Skadden, Arps, Slate, Meagher & Flom LLP acted as legal advisors to GIC. e.g. it was reported as follows:

"GIC Real Estate, Inc. and Oak Street Real Estate Capital, LLC completed the acquisition of STORE Capital Corporation (NYSE:STOR) from Berkshire Hathaway Inc. (NYSE:BRK.A), BlackRock, Inc. (NYSE:BLK),The Vanguard Group, Inc. and others on February 3, 2023."
Store Capital Corporation
Type     Private
Services          Real Estate leases
Revenue           US$783.8 million (2021)
Net income
US$268.35 million (2021)
Total assets
US$9.7 billion (2021)
Total equity
US$5.1 billion (2021)
Owner •        GIC,     Oak Street Capital

724.     Store Capital Corporation (STORE stands for Single Tenant Operational Real Estate) is a private American real estate investment trust headquartered in Scottsdale, Arizona.
The company was founded in 2011 and is based in Scottsdale, Arizona.

725.     In September 2022, Singaporean sovereign wealth fund GIC and American private equity firm Oak Street, a division of Blue Owl Capital Inc., agreed to acquire Store Capital in an all-cash deal valued at about US$14.7 billion.

123
-COMPLAINT-

726.. The form of the transaction is just a cover, Plaintiff's former employer, Joseph Yoong Tat Choy, prepared the sale and purchase agreement of a real property, but later the client filed complaint with the Law Society that it was in fact a high interest rate loan, using the house as a collateral.
Relief:
Alien Torts Act, treble damages, equitable remedy.
Plaintiff never revealed or publicized the news,

727 A clear case of bribery is the Singapore-linked corporation in USA, Keppel Offshores Marine USA, Inc.,("KOM USA") and the above-mentioned fraudulent treatment in Shanghai Renji Hospital on Jan 25, 2012.

728. Attorney of the Keppel Group, Jeffrey Chow, based in USA, pleaded guilty to a misdemeanor charge of violation of certain provisions of Foreign Corrupt Practices Act, having involved himself in drafting and sending the agreement to Brazil for bribery.

729. Lky's group however, managed to bribe the prosecutor and the judge to seal the documents, effectively preventing the disclosure of the identities of the "senior management" of Keppel Group, which includes Lim Chee Onn who bribed.

Removal : 12-12-2013 to 5-30-2014,  to terminated on 7/29/2021

Notice To Appear

Bucio: (ICE) (Aggravated Felony)
1/27/2014: Motion FOR Bond Determination
On 12-12-2013, Bucio met plaintiff upon release from Dixon and drove to ICE Field Office Long Islands, IL.

730. After running checks on computer about plaintiff, he prepared the Notice To Appear. It was aggravated felony.

731. Plaintiff has requested to call his mother and arrange to hire an attorney. A plan to try to stay in USA that we had discussed a long time ago.

But Bucio said I could make phone call after the paper work is finished with. So, I did not get to call and get to talk to plaintiff's mom about hiring of attorney.

732.    After the paper work is signed, another male appeared from the door situated at the rear and walked into the lobby where Bucio has been doing his work. He told Bucio, aggravated felony is proper.

After signing the paper work, Plaintiff spent a night at a local detention center at Long Islands, IL, and the next morning was transferred to Juneau, Wisconsin.

A few days later while at Juneau, the prison guard, handed a copy of the Notice To Appear during the time plaintiff was at the first floor. It was Section 921, Firearms , Destructive Device,

733.    On 12-19-2013, the Notice To Appear is filed, It was Section 921, Firearms , Destructive Device,

Aggravated Felony, although signed on 12-12-2013, was never filed.

734.    Plaintiff did not refuse to sign. Bucio stated "you have only one conviction, I can assure you that you won't be deported."

735.    To be entitled to Cancellation of Removal, plaintiff have to be a Permanent Resident of over 5 years. But from Dec 2, 2009 , time of permanent resident, to 12-12-2013, the time is less than 5 years.

Without cancellation of removal, plaintiff will certainly be removed/deported.

He refused to let plaintiff make phone call until all the paper works have been signed.

736.    Notice To Appear, "Aggravated Felony" , was not filed, Plaintiff was already at Juneau. The Destructive Device, Notice To Appear was a combination, combining the charge with the service on plaintiff, papers of different dates, plaintiff did not sign it after the first signing at Long Island, Illinois ICE office. Wiese pre-signed it as SDDO.

They later re-organized the Notice To Appear and filed on 12-19-2013. Destructive device.

Combined papers from different dates, but dated it on 12-12-2013.

737.    Plaintiff's 4-7-2014 dated letter, sent "Additional Defense", including Mendez-Orellana to IJ and ICE. EOIR rejected since Metcalf is attorney of records and according to the Immigration Court Manual, IJ can not accept filing from plaintiff who has retained counsel, and returned to plaintiff and forwarded to Metcalf. Cc to Patrick McKenna of DHS.

738.    ICE filed it and sent to Chief Counsel. They were aware of Mendez-Orellana. Shifting of burden in cases where there is statutory exception, of definition of destructive device.

739.    In 2013 US Supreme Court case, Moncrieffe v Holder, had overruled Mendez-Orellana, and adopted the more common categorical approach with long precedents, developed since 1990s.  The statement about " antique firearm", statutory exception, a subsection preceding the destructive device, would be applicable and terminate the immigration proceedings.  In 2014, there were many publications about Moncrieffe case, commentaries, and DHS never made submission, concealed the 4-7-2013 letter and proceeded to 5-21-2014 hearing for immigration relief, i.e. , withholding of removal.

Metcalf has already conceded "removability" in a January hearing. So, the only issue is relief. Analogous to having been found liable/guilty, the methods to be relieved from punishment. Cancellation is not possible.

740.    During one of the hearings, in the morning, while waiting for Metcalf to arrive at Immigration Court, his late arrival at Immigration Court, DHS 's attorney informed the Court that DHS agrees that Cancellation is available and granted, however, to correct the misconception, a question of law, Plaintiff stated in Court that plaintiff Cancellation is not available, as the time of residency is less than 5 years. It looks like a set up by DHS who made submission in the absence of plaintiff's counsel. Obama tried to implicate Plaintiff.

741.    Although it was done in the presence of IJ. As the opposing counsel, they are not supposed to have contacts with plaintiff. Plaintiff have been doing legal research at Juneau computer, and after making payments , getting printouts from Juneau computer all those cases and searches. And Juneau was aware of what plaintiff searched.

And on 4-7-2014 sent those legal authorities.

742.    Caught off guard in the court room, plaintiff could have deflected the question for Metcalf to respond. But, plaintiff is aware of the relief and falsity of the statements, a truthful response saves the day.

743.    It is believed that plaintiff being candid with IJ that resulted in the withholding of removal and the later termination of removal on merits in 2021.

744.    Via a letter dated April 7, 2011, plaintiff mailed "Additional defense" to IJ and ICE. It was rejected by IJ but accepted by ICE.

Immigration Court rejection Notice:
April 11, 2014:

To Metcalf:

cc: Patrick McKenna
525 W. Van Buren St, Ste 701
Chicago, IL 60607

126
-COMPLAINT-

The address is the address of DHS counsel.

745.    Metcalf has sought continuance, appeared on his behalf and present at the hearing is Kola in Immigration Court, to resolve the "fitness" issue at Cook County Court, the "fitness" issue was later suggested by Joseph Kennelly in 2019 who picked up from 2014 Metcalf's suggestion of raising "fitness" issue., i.e. was not fit to plead guilty.

The unity of actions. DHS suppressed the categorical approach.
746.    On 4-14-2012, Metcalf filed motion to terminate removal proceedings.

747.    He is a former prosecting lawyer,  attorney Kola who is of counsel , also does criminal work, he stated that Plaintiff was "charged" a general term, on Oct 3, 2012, presumably based on the index prepared by Dorothy Brown, and avoiding the specifics. He went on to state plaintiff was facing aggravated felony proceedings, and went on to cite Section 921 and Mendez-Orellana.
IJ denied the motion. Metcalf two-page motion was barely a motion.

748.    DHS, was sent a copy of the plaintiff's letter of 4-7-2012, in which plaintiff mentioned Mendez case, and burden shifted to the DHS, and as the Conviction papers has no evidence , DHS could not discharge the duty, all is required is plaintiff raising the issue and the burden shifted.

749.    Plaintiff on 5-21-2014 hearing did mention that plaintiff is "not deportable" i.e. seeking to reverse what Metcalf has conceded in the Jan/Feb hearing. Metcalf looked alarm with his eyes opened with a smile, but did nothing.
DHS, Patrick McKenna, has notice of Moncrieffe case as it is the US Supreme court case, with precedential authority. Soon after the decisions, many articles, commentaries were published , about a year has passed on 5-21-2014, it is unbelievable that DHS, has missed the issue.

750.    An example is "Practice Advisory", dated May 2, 2013, by Legal Action Center, American Immigration Council, National Immigration Project, of the National Lawyers Guild, Immigration Defense Project that was published online.
Moncrieffe V Holder : Implications for drug charges and other issues involving the categorical approach.

751.    Patrick McKenna may not have appeared in IJ Courts, as all attorneys from DHS, on the three occasion that plaintiff was in Court were represented by female DHS attorneys.
But in a year time, there must have been thousands of cases of deportation, decided by Board of Immigration Appeal, Immigration judges throughout USA, and indeed in California,

752.    Metcalf, and kola committed fraud

<u>Particulars</u>

1. Defended on aggravated felony that was never filed. The inference is he conspired with DHS/ICE.

2. Committed perjury in affidavit filed in Wisconsin Court, that no personal jurisdiction at Wisconsin District Court Case No.: 22-cv-323, dismissed without prejudice on but the judge falsely stated as Motion for involuntary dismissal, when it was Notice. and which was removed from State Court. Although he never mailed any letter to plaintiff, he did call plaintiff at Juneau and sent faxes to Juneau at Wisconsin.
And the initial few hearings of immigration court was held remotely through computer, with plaintiff at Juneau and the hearing at Chicago Immigration Court.

3. Committed perjury that isuf kola was never involved, but kola did appear since he is of-counsel of Metcalf & Associates, also listed on the law firm's website, as of-counsel.

4. Abandoned Plaintiff's criminal case. Plaintiff emailed him on June 9, 2014 asking him about the motion/petition to overturn conviction, but he never responded.

5. He was formerly working in criminal law related practice, and later worked in criminal and immigration fields.

6. After the 5-21-2014 hearing, Metcalf misled plaintiff by stating that the withholding of removal is" good for 20 years", "you are better than me." He was referring to lky's group

753.    On 6-7-2021, plaintiff mailed motion to reopen to Immigration Court, it was filed on 6/10/21, the court set a date for DHS to file response, after DHS's response filed on 6-10-2021 and plaintiff's reply, via a decision dated 7-29-2021, IJ reversed the 5-21-2014 decision, terminated the removal proceedings and plaintiff regained his permanent resident status.

754. On 12/12/2013, Plaintiff was taken into custody of ICE after serving the sentence at Dixon Correctional Center. While Plaintiff was at ICE office in Illinois, Plaintiff was served with a Notice To Appear ("NTA") charging aggravated felony as a basis for removal. However, the Notice To Appear was not filed. Subsequently Plaintiff was detained at Juneau, Wisconsin starting from 12/13/2013.

755. On or about 12/19/2013, Plaintiff was served with another Notice To Appear, charging Plaintiff with possession of firearm/destructive device while in Juneau, Wisconsin. A copy of the NTA is attached and exhibited as "Exhibit A".

A copy of the Proof of service of DHS is attached and exhibited as "Exhibit B". In the Proof of Service, it is stated that DHS is asking for "detained hearing". This seems to contradict what Metcalf stated in his letter of 7/15/2021 that "expedited under a detained calendar" for other reasons.

.

756.    According to the Order dated 7/29/2021, the Department of Homeland Security ("DHS") filed the NTA on 12/23/2013 and initiated the removal proceedings charging possession of firearm/destructive device. Plaintiff was detained at detention facility in Juneau, Wisconsin while the removal proceedings was in progress.

757.    .In the course of the months of December 2013 right through April 2014, Plaintiff sent various case reports to the defendant Metcalf PC but was informed that those are criminal cases and they are not relevant. Plaintiff later sent a "defense" to Immigration Court but was rejected. A copy sent to ICE was likewise returned.

758.    .Defendant Metcalf PC filed a Motion To Terminate the removal proceedings dated 4/14/2014.  It was based on Matter of Mendez-Orellana, 25 I & N. dec. 254 (BIA), raising an affirmative defense.  It was denied. Defendant Metcalf failed to raise categorical approach Plaintiff later sent the defendant Metcalf PC a letter with information setting out the timeline about Plaintiff.

759.    .On 5/21/2014, Plaintiff signed the I-589 Form (Application For Asylum And Withholding of Removal) in the Immigration Court, and proceeded with the final removal hearing.  At the end of the final hearing, Plaintiff was granted withholding of removal. Defendant Metcalf waived the Appeal. Defendant Metcalf told Plaintiff that Plaintiff was better than him and that the withholding of removal was good for twenty years. The fraudulent representation induced Plaintiff to rely on the Order for Withholding of Removal for 20 years and Plaintiff justifiably relied on his representation. The representation was false as there is no time frame for the usual validity

of the Order for Withholding of removal. DHS may apply for removal if, among others, conditions change in the country.

The comments about good for twenty years are the results of GCT aiding , abetting and instigating Metcalf. This is an incident whereby Metcalf revealed confidential information to GCT and others and acted in collusion and in conflicts of interests of Metcalf and Plaintiff.

760.    On 6/9/2014 Plaintiff emailed Metcalf asking about the petition/motion to overturn the conviction. Defendant Metcalf refused, failed or neglected to reply.

761.    On or about 10/18/2019 and 10/20/2021, Plaintiff sent emails to Metcalf asking him why he did not argue the categorical approach and why he waived the appeal. Defendant Metcalf on 10/21/2019 fraudulently concealed the facts and represented that it was the best results then that could be achieved and refused to discuss any further.  A copy of the email correspondences is attached and exhibited as "Exhibit C". Metcalf fraudulently represented to the Plaintiff and Plaintiff justifiably relied on the representation.

762.    Later Plaintiff sought legal advice and on 3/30/2021, Plaintiff hired attorney Kevin Layde to file motion to reopen and terminate the removal proceedings and to regain the permanent resident status. A summary of the applicable legal arguments that could have terminated the removal proceedings is as follows:

The relevant Federal provision is as follows:

18 U.S. Code § 921 - Definitions

(a)      As used in this chapter—

(4)The term "destructive device" means—

(A)any explosive, incendiary, or poison gas—

(i)bomb,

(ii)grenade,

-COMPLAINT-

(iii) rocket having a propellant charge of more than four ounces,

(iv) missile having an explosive or incendiary charge of more than one-quarter ounce,

(v) mine, or

(vi) device similar to any of the devices described in the preceding clauses;

(B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

(C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 7684(2), 7685, or 7686 of title 10; or any other device which the Attorney General finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational or cultural purposes.


DHS proceeded on "incendiary" element of the offense, in bold.


The relevant Illinois State Conviction Statute is as follows: :

Unlawful Use of a Weapon under 710 ILCS 5/24-1(a)(7)(iii).  This statute has the following two elements, in relevant part:

(1)      sells, manufactures, purchases, possesses, or carries

(2)      a bomb, bomb-shell, grenade, or bottle containing an explosive substance of over one-quarter ounce.

The definition of " explosive substance" in Illinois Statute does not fall within Federal "destructive device' definition

763.    In State of Illinois, People v Olsen, No. 1-97-2928., Decided: December 22, 1998, the Court held that incendiary device is not explosive substance of over one-quarter ounce. The defendant was acquitted of the charge of "explosive substance".

The removal proceedings should have been terminated with this definition.

Thus, Defendant Metcalf should not have conceded that Plaintiff is deportable under this definition. In addition, there is also categorical approach that could have terminated the removal proceedings.

Categorical approach: (A brief summary)

764.    This approach in  immigration case, seeks to compare the  State Conviction Statute to the Federal Statute for removal proceedings. When the State Conviction Statute is broader than the generic federal statute, the person is not deportable. The approach is also utilized in federal criminal proceedings.

765.    In the removal proceedings, the generic federal statute making up the definition of a destructive device under 18 U.S.C. § 921(a), on the other hand, possess the following elements, in relevant part:

a.    A bomb or other explosive device, or

b.    A weapon which does or can easily be made to file a projectile through a one-half inch or larger barrel, or

c.    A combination of parts which may be used in converting any device into one of the above two devices,

d.    **But not including any device which was not designed or redesigned for use as a weapon**

-COMPLAINT-

766.    The bolded exception above provides a key difference between the state criminal and generic federal statutes.  Under Illinois law, any possession of a bomb, projective weapon, parts to develop a weapon, or a bottle containing an explosive substance of over one-quarter ounce is a violation of the statute, without exception.  However, under federal law, possession of a bottle with explosive liquid would not fall under the definition of a "destructive device" if said bottle, for example, was "neither designed nor redesigned for use as a weapon."

767.    The existence of this exception means that the state statute criminalizes conduct which is not criminal under the federal statute.  Under Moncrieffe v. Holder, 569 U.S. 184 (2013), the Supreme Court of the United States clearly indicates that the existence of an exception in a federal statute that does not exist in the corresponding state statute means that the state statute is overbroad and not a categorical match.

768.    Moncrieffe case was decided on 4/23/2013. The finl removal proceedings was held on 5/21/2014.

Metcalf has failed to do research on an important US Supreme Court case. In Moncrieffe, the Court stated that "This categorical approach has a long pedigree in our Nation's immigration law. See Das, The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law, 86 N. Y. U. L. Rev. 1669, 1688–1702, 1749–1752 (2011) (tracing judicial decisions back to 1913)."

769.    The result is, under the categorical approach , that Plaintiff is not deportable.

Metcalf should have done research and made submission regarding the categorical approach and get the removal proceedings terminated and Plaintiff would not have been detained under custody of ICE and be released and also not suffered further injury.

770.     A Request To Investigate was sent via facsimile on 5/24/2021 to the Attorney Registration and Disciplinary Committee of Illinois ("ARDC") against attorney Metcalf. A copy of the Request To Investigate is attached and exhibited as "Exhibit D".

771.     On or about 6/4/2021, a Motion To Reopen was filed with the Immigration Court. Department of Homeland Security ("DHS") was duly served. DHS filed and served their opposition on 6/10/2021 and Plaintiff filed and served the Reply on 6/17/2021. On 7/ 29/2021, the Immigration Court granted the motion ("Order To Terminate"), and terminated the removal proceedings. "A copy of the Order To Terminate is attached and exhibited as "Exhibit E".

772.     The Honorable Immigration Judge, held that question of law was involved and that Plaintiff acted with diligence in pursuing his rights and based on the categorical approach, the Honorable Judge granted the Motion To Reopen and terminated the removal proceedings. Thus, on 7/29/2021, Plaintiff got back the status of permanent resident of United States.

773.     ARDC informed Metcalf PC about the Plaintiff's request for investigation and in a letter dated 7/15/2021 attorney Metcalf responded to the Request For Investigation. The relevant parts of the written letter is set forth verbatim below (after the *** symbols, and ended with *** symbols):

****************************

Immigration Court Proceedings

I was retained by Mr. Lim after he was placed in immigration proceedings. By then, his criminal case was already finished and found guilty of Unlawful Use of Weapon, in violation ifILCS Chapter 720 Act 5 Section 24-1 (a)(7)(iii). See Exhibit A. He was sentenced to two (2) years and six (6) months. See Exhibit B, page 44, Lines 8-10.

Upon conviction, Department of Homeland Security placed him under proceedings to remove him from the United States. See Exhibit C. Under US immigration law, this firearms conviction is considered an aggravated felony. See Exhibit D. This conviction rendered him deportable, without any relief. Further, having been convicted of an aggravated felony, he was not eligible for an immigration bond. As such, the removal proceeding was conducted expedited under a detained calendar.

Our initial motion to terminate proceeding was denied. See Exhibit E. After exploring all the options, the only available solution to keep him in the US was to request a deferral of removal. Being an ethic Chinese in Malaysia, Mr. Lim would have been in grave danger ifhe were to be removed to Malaysia, especially for someone with mental issues. Immigration Judge and the Department of Homeland Security trial attorney agreed to proceed in this direction.

No. 2021IN01614

KhorLIM

Page2

At the final the hearing, immigration Judge found Mr. Lim removeable, and later removed him to Malaysia. Immigration Judge also granted him an immediate deferral of removal, based on United Nation's Convention Against Torture. So, in the end, Mr. Lim was able to stay in the US without having to physically leave the US.

Criminal Court Process

Upon completion of the Immigration proceedings, his family thanked me and asked me to investigate the outcome of Mr. Lim's criminal case. His conviction was held after a separate hearing was held to see if Mr. Lim could stand trial. After the hearing, criminal court Judge found him lucid, requiring him to proceed with his criminal case. After the hearing, his attorney plead him to a firearms conviction. I discussed the ramification of the firearms conviction above.

The conviction arose because he was storing several vats of gasoline in his apartment. The police were alerted when his neighbor called them and was concerned about the gasoline stored in the apartment. His family told me that Mr. Lim was storing the gasoline in the apartment because he wanted to use the gasoline during his next long road trip. He thought it was necessary because the gas gage in his car was broken.

On a side note, I was in contact mainly with his family during my representation because Mr. Lim was not lucid, compromised stemming from his mental condition. His family advised me that he was having hard time taking his medication on time. After the investigation, I drafted a motion to reopen his case, but the family decided not to proceed further with the reopening the criminal case. See Exhibit F

*****************************

774.    The foregoing statements contain a number of defamatory statements concerning Plaintiff, including but not limited to, the statements that Plaintiff  ".. found guilty.", ".. convicted of aggravated felony",  " found him lucid",  "storing vats of gasoline", "not lucid",

It also includes the following false statements:

"  ..the only available solution is .....to request deferral".. conducted expedited under a detained calendar"  ( this seems to be contradicted by the statement in Proof of Service, Exhibit B")

"Upon completion of the Immigration proceedings, , his family thanked me and asked me to investigate the outcome of Mr. Lim's criminal case."

" .. he was storing several vats of gasoline in his apartment. .. to use in his next long trip

"...but his family decided not to proceed further with the reopening the criminal case."

" hard time taking his medication on time."

".. his family decided not to proceed with his criminal case."

"I drafted a Motion to Reopen" : this was never sent to Plaintiff.

136
-COMPLAINT-

This letter of 7/15/2021 by Metcalf PC was emailed to Plaintiff on 7/20/2021 by ARDC. It was published to third parties. Thus, on 7/20/2021 Plaintiff discovered that the defendants Metcalf had acted with negligence and had based his representation of Plaintiff in the removal proceedings based on aggravated felony. The DHS had proceeded on firearm/destructive device charge.

The Order To Terminate dated 7/29/2021 also confirmed that the charge which DHS proceeded on is possession of firearm/destructive devices and not aggravated felony.

Unfortunately, Metcalf's defamatory statements have had the intended effects to harm Plaintiff. This defamatory statement was aided and instigated by GCT. This is an incident in which Metcalf acted in self-interest to harm Plaintiff. There exists conflict of interest and breach of fiduciary duty. The statements were made with "actual malice" when the defendant makes the statement with knowledge that the statement is false, or with reckless disregard for whether the statement is true or false.

27. On 7/20/2021 Plaintiff first discovered that Defendant Metcalf had proceeded to defend the Plaintiff on a wrong basis for removal. The NTA charging aggravated felony was replaced by subsequent NTA charging possession of firearms/destructive device. During the hearing, DHS proceeded on the definition of destructive device, not aggravated felony. This discovery of negligence on 7/20/2021 is the date that the statute of limitation/statute of repose, start to run. Plaintiff has knowledge of statutory exception of definition of destructive device, but not the categorical approach.

775.    As Metcalf failed to bring up categorical approach, the removal proceedings was not terminated. Plaintiff has no knowledge of categorical approach at that time. Metcalf also stated that he mostly communicated with Plaintiff's family during the course of the proceedings, which is false. Metcalf failed to develop the argument based on the statutory exception and the Motion

To Terminate was denied. Plaintiff was not aware of any injury that he suffered until later, caused by the Metcalf's failure to develop the argument regarding the statutory exception. And the definition of "incendiary".

776.     On 8/18/2021, Plaintiff responded to Metcalf's letter and attachments with a letter and attachments. Plaintiff's letter stated, among others, the following: Plaintiff was not "found guilty"; NTA charging aggravated felony was served but not filed. The attachements included letters and correspondence showing that Metcalf was in contact with Plaintiff throughout the removal proceedings and not as Metcalf alleged that Plaintiff was "not lucid" so he was mainly in contact with Plaintiff's family.

There was a Seventh Circuit Court case, Bridges v United States, 201623 (7th Cir. 2021), which states that even when there is no on-point precedent within the circuit exists, counsel can still be ineffective if he fails to argue the categorical approach.

777.     Metcalf also failed to file Petition to vacate conviction during the time while Plaintiff was still under parole in 5/30/2014 till about 12/12/2014 when the parole was discharged.     The petition for relief under Post-Conviction Relief Act has to be filed while Plaintiff was in custody, and custody includes parole, and that opportunity was missed.

778.     From the content of the letter of 7/15/2021 of Metcalf PC, in particular the charge of "not lucid" it reminded Plaintiff of the representation that the withholding is good for 20 years, and it revealed that Defendant Metcalf had been instigated by GCT, making various defamatory statements about Plaintiff. Metcalf also breached the duty of loyalty and confidentiality by disclosing confidential information to GCT. Metcalf was in conflict of interests situation, acted in self-interests.

779.    .On or about the time Plaintiff hired defendant Metcalf PC in December 2013, Defendant GCT conspired with the defendant Metcalf PC and caused the Plaintiff to be detained during the course of removal proceedings and later lost the permanent resident status. GCT also instigated Metcalf PC not to proceed with the petition/motion to overturn the conviction.

As a result, Plaintiff was wrongfully detained for the period of removal proceedings, from 12/12/2013 to 5/30/2014, lost the permanent resident status, was further placed under order of supervision, restricted in movement by wearing ankle bracelet electronic monitor for a few months from 5/30/2014 to 12/12/2014, lost the constitutional rights to possess arms, suffered indignity of the person being conviction with felony, great difficulty in getting a job, loss of liberty to travel outside of WI, IL, IN for more than 48 hours without first obtaining approval from ICE. Moreover, Plaintiff could not travel internationally. Without a permanent resident status, it is also very difficult to renew Plaintiff's Malaysian Passport.

780.    The defendants Metcalf PC failed to defend Plaintiff for the charge by DHS and was negligent in defending on the wrong basis of removal.

Defendants Metcalf PC also failed , neglected to argue that the definition of  "explosive substance" in state of Illinois criminal statute does not fall under the definition of destructive device of "incendiary" substance. Plaintiff did not discover this flaw of until around 9/1/2021. This argument could have terminated the removal proceedings.

In addition, the argument of application of categorical approach could also have terminated the removal proceedings as there exists a statutory exception in the definition of destructive device in the federal statute which was the basis for removal.

Treble damages:
All claims: BMO, Case 2:11-cv-00666-LA
        False prosecution:
        Removal proceedings:

139
-COMPLAINT-

Loss due to non- admission to NY Bar.
21-CIV-04197, 16 x 3 million (two motion taken off, one fraud-jimenez;
times 3 = about $48 million/per party,

Case No. 20-0104: suppressed records of Case No. 13-0943.
Case No. 13-0943: Motion To Dismiss, Lester Finkle, perjury
Case No. 12CR18264: collusion by all
Case No. 13MH33: APD not authorized to act. Alice Tracy acted in collusion.
3/1/13 continued to 3/15/13 By agreement
3/1/13: filed appearance, if is competent, appearance is valid
3/1/13, motion for continuance and for discovery
Case No. 12-cv-0429: No Notice of Appearance filed, 5/17/2013, FAC filed.
Case No. 2011SC010663: Marvin: No Notice of appearance filed by Koritzinsky.
Case No. 2012FO791: No preliminary hearing, voidable.
Case No. 22-cv-323. *Notice* of Voluntary Dismissal, but was described as *Motion* For Voluntary Dismissal in bad faith. Text only order dated 12/22/2022. Metcalf and Kola perjury on affidavit: has contacts with Wisconsin.
Removal proceedings: fabricated Notice To Appear by DHS.
And as particularized hereinafter.

Titles, rights, interests of plaintiff:

781.    Allison and CK Tan are involved in the causes of action claiming against the fraud on the court committed by their attorneys in Case No 21-CIV-04197, which binds them as their "agents-fiduciary", the attorneys received bribes and breached the agreements with Allison and CK Tan, when Cummins did not make claims under the attorney's insurance policy and get Insurance Company to defend him in Case No. 22-cv-8085. Instead, Cummins concealed the bribery, and got another law firm, which is not related to the insurance policy to defend him and attempted to file Anti-Slapp Motion to claim attorney's fees. Their attempt failed as they had to first set aside the default entered against Cummins, before they can file Anti-Slapp Motion for attorney's fees, usually is more than ten thousands. Thus, there is evidence of bribery.

782.    Thus, upon appointment of plaintiff as executor of estate of LPK, Plaintiff's claims for relief, include remedy and redress for the voiding of all transactions executed by late mom and Allison as executors of estate of LPK and pursue further relief.

783    All the above-mentioned, and plaintiff's titles, rights, interests and 1992 Ambush and 1994 false extradition, illegal extradition (also involved briery) and bribery that voided all prosecution in SG, all judgment by conspirator Democrat of USA, including false retention of passport and detained in SG for more than a few months, without passport; losses of freedom etc.

784.    False prosecution by SG voided by false few-minutes-hearing-and-one-day-extradition to SG as the 3 false charges were filed in 1994, and via letter dated May 31, 2011 there was withdrawal of all charges by SG Attorney General and warning was issued in lieu of prosecution. Loss and damages suffered for 17 years: 1994 to 2011.

Joint and several liability of conspirators in SG, US, Malaysia, Australia
785.    The conspirators in US, Australia also involved in the events in Malaysia, Singapore regardless of when the events began.

786.    All US court proceedings are vitiated by illegal extradition and bribery, racketeering, money laundering.

787.    As SG, its state organ, corporation owned, government-linked company, each is a legal entity falling under the definition of Alien Torts Act ("ATA"), ATA and treble damages (racketeering, bribing activities) are among the remedy requested in relation to the following:

-Illegal, bad faith, arrest, extradition, voided all prosecution, all judgment, court proceedings, in SG, US and Malaysia, including the three charges, as the applicable law is law of New York and choice of law pursuant to ATS, not Singapore.

788    Federal Rule 10 ( c ) makes exhibit attached to pleading part of the pleading.

789.    Events in US all involves violation of FCPA. And conspiracy to violate.

RESTRAINING ORDER

790.    At Garden Asian Market, 6136 University Avenue, Middleton, WI
And tried to run plaintiff's down by waiting nearby plaintiff's car, either parked closely nearby or drive dangerously in plaintiff's direction close by to plaintiff at various parking lots.

791.    Attempted to commit battery at USPS, CVS, Walmart, gas stations Woodsman grocery stall. Attempted to steal plaintiff's vehicle, used powerful tool to cut off the newly purchased printer, Brother laser printer with copy, fax and scan, print function, the cable, the metal three prongs, made it impossible to plug the cable into socket, while plaintiff parked at the gas station in Naperville. A car parked at the other side of the pump, analogous to the other side of the coin, and the cashier pretended to be busy and during the interim wait time, the driver who just parked nearby used the illegally duplicated car key, opened the car door and damaged the printer which was stored at the backseat.

792.     They subject plaintiff to illegal surveillance and stalking, tailgating plaintiff's car.

141
-COMPLAINT-

793.    Plaintiff made remarks about Dr. Goh Jin Hian's  civil case as not all directors have been joint as a defendant on or about 9/11/2014. And that caused lky's group and the conspirators in USA, Trump and Vance to retaliate further.

794.    The following day, on 9/12/2024, plaintiff parked his car and did grocery shopping at Schaumberg, Illinois, Joong Boo Grocery Store, at around 6.30 pm plaintiff exited the store, and after driving about 17 minutes , travelling along I-90 west bound nearby Elgin, the car skidded and made loud cracking sound as if the tire had punctured. Plaintiff later requested road side assistance as the front left drive tire had been slashed.

795.    It was cold in the early spring, plaintiff turned on the heater and emergency light, and that exhausted and wore down the car battery.

796.    On 9/13/2024, at around 12.25 am plaintiff was helped by State's roadside assistance, in changing the slashed tire and jump-starting the car.

797.    Donald Trump campaigned on behalf of Republican candidates running for seats in the Senate and House, and is engaged in the Republican Party's election as a whole.

798.    As part of the Republican's Conspiracy, Speaker of the House sent correspondence to the plaintiff.

799.    All the election results contested by the Republican in the Senate seats and House seats are also not valid. And due to the illegality in :
-Non disclosures of foreign contribution from lky's group, Israel in the use of foreign fund in US election;
-bribery, racketeering activities to commit battery, murder;
-criminal conspiracy to commit all of the above.


800.    A police report was made and the police report number is SCP-24-010769.
Criminal attempts:

801.    Earlier at Woodman's store in Janesville, around November, December 2023, plaintiff was doing grocery shopping and was at the bakery section contiguous section with vegetable, fruit section.

802.    October, 2024, two latino at Janesville Mall, near ATM machines.
October 2024, two guys at Van Galder Bus Janesville, station, one black in his twenties and one husband and wife team of indigenous people, man sitting with both arms outstretched on the top of the back of the seats, with posture elbowing the black male sitting behind.

803.     At the path dividing the bakery section from the vegetable/fruits section, a middle-aged man in his fifties, short about 5 feet tall, wearing a cap and had his right hand hidden and was reaching his hidden weapon inside the jacket, walked surreptitiously behind plaintiff from plaintiff's right side, at 90 degree to the "intersection-like" junction, and was staring at plaintiff instead of browsing or carrying a basket or pushing a cart or trolley.

He was a hitman there to hit at plaintiff.

804.     Plaintiff also tracked the incidents in middle east, every so often less effective tactics of shelling, stone throwing from Palestine, minor uprisings in west bank and Gaza strip, met with army sent by Netanyahu who used vicious, cruel suppression to crush the civilians, out of proportion of killings of the innocent. Not too long after October 7, 2023, Netanyahu has again engaged in genocide and plaintiff emailed his view online and as a result attracted the attention of Netanyahu, and republican jewish, and they worked together with LHL to attempt to murder plaintiff while plaintiff was returning from California to Wisconsin late in August, 2024. During the first attempt, fleet of heavy truck and industrial vehicle, resembling cement-mixer heavy vehicle, rolled down in quick speed and succession, along the curving stretch of slope on the US I-80, where plaintiff had parked his car at the shoulder of the curving I-80, and the rear and side rear mirror has no clear view of the cars approaching from the back, due to the curving contour of the I-80, for more than half and hour, heavy vehicle rolled quickly by, next to plaintiff car, attempting to hit plaintiff's car should plaintiff tried to steer left from the shoulder of the I-80 and enter the lane for driving where the heavy vehicles kept driving past by.
They failed to hit plaintiff's car. At the end, they ran out of "ammunition" as each heavy vehicle is analogous to a flying missile, a police patrol car approached from behind on the shoulder and before it stopped completely behind plaintiff's car, plaintiff entered the driving lane and left.

805.     Not too long after, plaintiff stopped at a rest area. Plaintiff parked furthest away from the building/ structure which has rest room, vending machines, etc, at the first parking space on the east bound I-80, i.e. the first left parking space furthest from the building. From the plaintiff's parked car to the building there is a distance of about 7 to 8 parking spaces, with waste land next to the building, covered with low growing shrubs and grass. Two[19] hired hitmen has been hiding behind the shrubs, immediately in front of the plaintiff's car. After more than 18 minutes and plaintiff did not appear from the car, two hitmen appeared from behind the shrub

---

[19]  On Wednesday, October 23rd 2024, two Mexican hitman appeared at Janesville mall, from the side entrance of the mall and was about three feet or less next to plaintiff who tried withdraw from the ATM machines. Plaintiff was walking and in front of the stall selling Mexican food, two men walked suddenly at 90 degree in front of plaintiff trying to block plaintiff from reaching the ATM at about 17 feet away from the stall, with the girl at the stall smiling.

of about 7,8 feet tall, staring grimly at plaintiff, where they have been waiting , with the shrub tall enough to hide their presence, thus preventing plaintiff from noticing them. Plaintiff had been given warnings that gun and pistol will be used to harm plaintiff, both at Walmart where a man carried a concealed gun, wearing it on right side of his waist and walked in the presence of plaintiff.

806.     They used two hitmen, also at the USPS office, the day plaintiff went to mail letter to Rock County Honda, on October 20, 2024, one man appeared and went to the lady, handing over a stack of blank papers and said "equal weight", he is stout, strong man of about 5 feet 9, and another shorter man of about 5 feet 3, also appeared, with his hand and palm facing up, stretched out on his right at the slightly above the waist level, holding a brown about 8 inches by 5 inches padded envelope and was smiling and looking at plaintiff, wearing green. Two is going to be the mode of operation, plaintiff will get hit from "two" hitmen.

807.     Israel, Donald Trump, JD Vance, lky's group engaged in attempt to commit battery, an alliance of including Miriam who contributed over 100 millions to Trump's election campaign,

808.     Plaintiff was subject to various, numerous  attempts to commit battery against plaintiff at Walmart Supercenter located at 6815, Retail Road, Dallas recently around Feb 23, 2024 till March 3, 2024 at Dallas; at underground car park opposite the court house; at Starbucks located 5905 Northeast highway, Dallas; at various gas stations in Dallas; at pizza restaurant nearby Walmart supercenter at 6815 Retail road,  at MJ's chicken rice restaurant, Dallas, and at gas stations on the way returning to Janesville recently, and police cars waited at gas station at midnight, even though it was not in business at St Louis, MO,  and is liable to be falsely arrested again. Plaintiff has no adequate remedy at law.

809.     On 9-12-2024, defendant LHL, slashed the tire of plaintiff's car, front left wheel,  parked at the car park of Joong Boo store, while plaintiff was doing grocery shopping, causing the vehicle to make noise of bumping sounds and veered slightly off the side, and forcing plaintiff to stop the car. Illinois High Hay helped plaintiff to replace the tire and jump start the car on I-90, around Elgin area of Illinois.

810.     Two Petitions were filed.

2024CV0001299
Joshua Mummery -vs-Khor Chin Lim
Filed on Dec 12, 2024 **4.00 pm**

Document 1: Petition For Temporary Restraining Order and/or Motion For Petition and Motion For Injunction Hearing (Harassment-30711)

144
-COMPLAINT-

Paragraph 2: Another no contact order between the petitioner and the respondent

[ X ] **Does exist**

[in bold  is perjury]

Paragraph 5.    10 years, if...1st or 2nd intentional homicide,..1st, 2nd or 3rd degree sexual assault…
//
//

Paragraph 6 . If the court grants the injunction, the petitioner requests the Court
[b] Order the respondent to surrender…
//

I declare under the penalty of false swearing that the information I have provided is true and accurate.

/s/ Josh Mummery
---------------------------
12/5/2024

//
//

12 pages petition. Another petition by Andrea Mummery vs Khor Chin Lim, Case No. 2024CV001300 was filed. The filing date was Dec 12, 2024 **3.58 pm**
But no perjury as appears in paragraph 2 of Joshua Mummery

But first three pages were testified to, the form.

The attachment to the petitions are not exhibit and should be stricken as scandalous and prejudicial against plaintiff.

Temporary Restraining Order ("TRO") by Judge Grubb, dated: Dec 11, 2024. Filed on Dec 12, 2024, 8.31 am. **It is filed earlier than the filing date of the two petitions.**

**There had been no records on file and records for him to issue the TRO.**
**Thus, the Order is void ab initio.**

Index              Filed                        SERVICE          Hearing date [ORDER,TRO]Grubb,J
PETITION(Andrea)12/12/2024, 3.58pm        12/13/2024    12/11/2024
PETITION(Josh)    12/12/2024, 4.00pm        12/13/2024    12/11/2024

Setting the hearing date for permanent injunction and "Firearm Surrender" on: 12/23/2024, before Commissioner Shane A. Falk

                                       12/23/2024[INJUNCTION]+FIREARM ~12/30/2024
                                       [NOT SERVED]
Plaintiff did not appear but filed request to change judge, and other motions;

FIREARM        12/23/2024            1/2/2025      [12/30/2024[FIREARM,WARRANT OF ARREST]
                                                   [NOTICE LEFT WITH KHANG]
WARRANT      1/2/2025[EXECUTED]  NOT SERVED, left at jail
FIREARM                          1/3/2025      1/6/2025        GRANTED
surrender                        [VIA MAIL AMANDA, on 1/3/25]

exhibit not testified to, not admissible,

no Frank and Full disclosure
no harassment, the thumb-up

The other documents served are as follows:

CV-800, Respondent's Statement of Possession of Firearm, §813.1285(5)(a)

CV-804, Information For the Respondent Regarding the Surrender and Return of Firearms.

CV432,Notice of Firearms Possession Penalty

GF-180(CCAP), Electronic Filing Notice

Criminal complaint: Case No 2025CF19
Felony have to be initiated by information.
DA has not signed on the Criminal Complaint
1.      Citation served on Jan 3rd, 2025, before Jan 6th, 2025 Criminal Complaint.

It is void. double jeopardy, was filed later.

2.No probable cause:
1. Hospital, was brought to hospital, wrist band.

146
-COMPLAINT-

2. Trespass, broken glasses, car door broken. Warrant at jail, no right to enter without warrant of arrest.

3. warrant void, no service [left with Khang, the Sheriff Officer at Rock County Jail, at 200 Hwy E 14, Janesville, WI 53545, who left it in my property bag] as evidenced by the yellow sticker, until Jan 2nd, 2025, after the Hearing on Dec 30, 2024.

4. warrant void

5.arrest void.

Relevant evidence:

1. copy of pic of wrist band of Mercy West Emergency Room.

2. copy of yellow sticker with two pages of "Notice of Hearing", endorsement of service on Jan 2nd, 2025, by Sheriff Officer Barr.

3. copy of pic of garage at 4048 Ingram Drive, Janesville, WI 53546, with car parked inside garage and broken glasses on the floor and broken glasses inside the car.

4. Copy of pic of triple-antibiotic cream, about one ounce packet, prescribed by the nurse at Rock County Jail.

5. Copy of the text messages, showing the thumb-up and the subsequent "who is this" after December 3rd, 2024.

No full disclosure by the Petitioners, the **thumb-up** was concealed.

Injuries sustained at the garage:

There are broken glasses also inside the left pocket of plaintiff's blue-colored winter, doubled-layered jacket.

Injuries:

Left arm: elbow, left inner forearm, about one and half inch laceration, left thumb.

Right hand, palm: (i) cut on forefinger, the palm side, about 1 cm, still unhealed;
(ii) cut on the middle finger, one cm in length, on the side of the middle finger;
(iii) a small hole, on the middle of the knuckle;

Right inner upper-forearm, a small hole on the right, about an inch from the joint.

Right shoulder: bruises on the right shoulder, extending to the upper forearm, about 5.5 inches on the outer upper forearm.

Right leg: scratches on the front portion of the right calf.

Allegation of exemplary damages

147
-COMPLAINT-

811.    The aforementioned conduct of Defendants was oppressive, fraudulent, and malicious, in that said actions were intended to cause damage to Plaintiff; was despicable conduct carried on with a willful and conscious disregard of the rights of Plaintiff, that subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights; and that said conduct was used by Defendants to deprive Plaintiff of his legal rights and to otherwise cause injury, so as to justify an award of exemplary and punitive damages in amount commensurate with the wealth of Defendants, and each of them, and designed to punish and deter similar conduct. Further, Defendant LKY'S group has repeated his oppressive, fraudulent, and malicious actions and punitive damage is justified to deter him/them from committing the same actions.

Tolling of statute of limitation

812.    The applicable statutes of limitations, and/or repose were tolled, due to, including but not limited to fraudulent representation, concealment, equitable estoppel by the conducts of the defendants and others.

Joint and several liabilities;

813.    Conspirators are jointly and severally liable regardless of the time they joined the conspiracy and extent of their acts.

Remedies

814.    Plaintiff alleges that Defendants in Malaysia are organs of State of Malaysia, statutory body, minister, (legal entities created by Malaysia statutes), associates, agencies, agents, employees, authorized individuals of Government of Malaysia as alleged herein, service of legal process is on the Government of Malaysia, and on behalf of the Government, service is on the Attorney General of Malaysia Datuk Mohd Dusuki Mokhtar at address:  Attorney General's Chambers (P4) No. 45, Persiaran Perdana Precinct 4, 62100 Putrajaya, W.P. Putrajaya, Malaysia.

USA defendants, racketeering, treble damages, punitive damages: from 1995 and ongoing
1995-1996

Also violated is the Alien Torts Act.
Treble damages is appropriate, and is prayed for to be imposed against defendant pursuant to the following definition:"[a]ny person injured in his business or property by reason of a violation of [ 18 U.S.C. § 1962]" has a cause of action for which treble damages may be recoverable. 18 U.S.C. § 1964(c).

815.    Violations in provision 18 U.S.C. § 1962 includes bribery, racketeering. Thus, cause of action is pleaded herein for treble damages, to be imposed pursuant to 18 U.S.C. § 1964 (C).]

Restitution damages:

816.    Restitution damages is warranted, a sum defendants Lky's group and/or co-conspirators who acted in conspiracy, has gained from the illegal contracts, as the contracts are illegal and

unenforceable since they were entered into to facilitate bribery, racketeering, to carry out tortious and illegal acts of bad faith academic dismissal, false prosecution, etc, as an example is the AT&T's sale in 1995 December to Singtel its office in downtown Chicago, AT&T gained from the excessive purchase price and due to illegal contract, also retained possession of the building sold, since the sale contract is unenforceable as illegal contracts, (bribery and to carry out tortious and illegal acts against plaintiff).

Disgorgements
817.    Disgorgement of illegal obtained benefits.
Two types of disgorgements: (America Masters Lease,225 Cal.App. 4th at 1481
Restitutionary disgorgement: focus on plaintiff's loss
Non-restitutionary  disgorgement: focus on defendant's unjust enrichment.
 E.g. aiding and abetting a breach of fiduciary duty.
**Knowing assistance in breach of fiduciary duty**: unjust enrichment: Lebrun v CBS Television Studios, Inc. 68 Cal. App. 5th 199.

Injunctive relief:
818.Prohibitory:       Injunctive relief and non-parties:
        In Malaysia, 1994 illegal extradition by Anwar, 2003-2005 mala fide acquisition by Abdul Badawi, both acted in conspiracy with lky's group and again 2020 schemed to defraud lot 168 sale in 2020 by Anwar , Bank Negara, and AmBank.

Non-parties
819.    This action against the defendants also seeks injunctive reliefs restraining the defendants, SG Government,
(i) lhl's appointment by the SG President is void and due to his perjury, and the appointment of judges, AG, by LHL, are void; and so is the appointment of Anwar Ibrahim by the previous Agong of Malaysia.
(ii)SG and M'sia, their coffers include assets of plaintiff, directly from 1998 bad faith acquisition, 2020 scheme to defraud; plaintiff is entitled to 35 % of the sum defrauded, amount of about 35% of RM$5 million, i.e., RM 1.75 million, conversion, as refusal to pay from demand is a conversion, and plaintiff has made numerous demands, since plaintiff falls within the meaning of "depositor", of AmBank (M) Sdn Bhd, Malaysia.

In equity, use of plaintiff's fund/assets by SG, and M'sia is illegal has to be restrained. And the illegal use of plaintiff's fund to prosecute, in SG and M'sia, has likewise to be restrained.

Ex Parte Motion For Temporary Restraining Order
820.    To prevent further SG and Malaysia Government, Rock County District Attorney of Wisconsin in Case No. 2024CF00019, from further prosecuting and in the plaintiff, pursuant to Younger doctrine including the exception of bad faith, exceptional circumstances, and having filed recusal but was denied, and as the proceeding is pending, appeal Case No. 22-0517 is still

pending at Illinois Appellate Court, First District, and from harassing and arresting and committing other criminal, illegal acts, against plaintiff as there exists extraordinary circumstances, and or bad faith on the part of court, prosecutor and public defendants and prosecution and persecution in conspiracy with Democrats of USA, due to bribery, and the objects and purpose will appear hereinafter, including Democrats of Texas, and biased Courts in State of Illinois, and biased Court in California, Texas and New York and mandatory injunctive relief to transfer assets, or other equitable relief where the Court fashion procedures to suit this circumstances of this case.

-mandatory injunctive relief: Replacing Allison, order admission to New York State Bar and California State Bar etc.

Declaratory relief:
821.    And also declaratory order to declare plaintiff is innocent of the charge in Case No 12CR18264 and other declarations. This action is without prejudice to action to claim loss and damages and conspiracy etc, other causes of action filed in other Courts against the defendants and others.

Fashion procedures in cases involving fraud on the Court:
822.    Fraud on the Court: (in addition to illegal extradition voiding all court proceedings, violation of Foreign Corrupt Practice Act)

1992/1993 ambush in Singapore falls under ATS. So is illegal extradition in Malaysia in 1994 also falls under ATS and conspirators acting in conspiracy with the foreign nations, SG and M'sia..

Temporary Restraining Order

823.    Plaintiff is entitled to injunction. The Court examines the following factors in the determination:
-the likelihood of plaintiff's success on the merit
-the balance between the likely harm to the opposing party if the injunctive relief is granted
-the likelihood of irreparable harm to the plaintiff in the absence of an injunction.
-And the public interest.

824.    The likelihood of plaintiff's success on the merits and all the factors are in plaintiff's favors.

First Cause of action
Breach of contracts
(New York Board, California Board, NCBE, Pearson Vue)

825.    Plaintiff refers to and incorporates by reference all prior paragraphs

150
-COMPLAINT-

826.    There exists a contract, written, with defendant New York Board and NCBE.

827.    In breach of contract, the defendants accepted bribes, NCBE suppressed plaintiff's score in MPRE and MBE and Law Examiners accepted the low suppressed MBE score by NCBE and went on to fail plaintiff in bad faith in the bar exams.

828.    As a direct and proximate result of the Defendant actions and conducts, herein mentioned Plaintiff has suffered loss and damage. ( i.e. above-mentioned **"Plaintiff's loss"**)

Second Cause of Action
Abuse of Process
(Attorney General of New York
Michael McCartin)

829.    Plaintiff refers to and incorporates by reference all prior paragraphs

830.    The defendant made an illegal, improper, perverted use of the process, and committed fraud on the Court;

831.    The defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process; and

832.    Damage resulted to the plaintiff from the irregularity. *J.C. Penney Co. v. Gilford,* 422 S.W.2d 25, 31 (Tex.Civ.App. — Houston [1st Dist.] 1967, writ ref'd n.r.e.)

Particulars:

1. no appearance filed by defendant McCartin, the letter purported to be "Appearance", Case No 12-cv-429, Eastern District of Wisconsin, United States District Court.

2. Fax , not accompanied with proof of service; purported the "fax" to serve as Order of the Court and Case No 12-cv-1390, Northern District of New York, United States District Court.

833.    The Court fashion relief in cases of fraud on the Court, and an order to admit plaintiff to New York State Bar and California State Bar.

Third Cause of Action
Invasion of privacy
(Sheriff of Cook County)

834.    Plaintiff refers to and incorporates by reference all prior paragraphs.

151
-COMPLAINT-

835.    Cook County Jail staff opened the letter and added pages to plaintiff court documents sent for filing at New York, Case No 12-cv-1390, added many pages in bad faith, as a direct acts of Preckwinkle, Kimberly Foxx, as plaintiff then was prosecuted by them in Case No. 12CR18264 and was detained at Cook County jail.  Such bad faith intervention, also corroborated the bad faith prosecution in Case No. 12Cr18264. The conviction is void.

836. Plaintiff has reasonable expectation that the mail not be opened without authorization.

837.  The letter was sealed when mailed but opened and manipulated by the defendant illegally.

838.    The defendant invaded plaintiff's right to privacy.

839    As a proximate results of the actions of the defendant, plaintiff has suffered loss and damage.

<u>Fourth Cause of Action</u>
(Tortious Interference with Contracts)
(LKY's Clan, AT&T, AT&T Directors, GIC, GIC Re, Singtel)

840.    Plaintiff refers to and incorporates by reference all prior paragraphs.

841.    Plaintiff has a contract, which is subject to interference, a contract with New York Board, California Board, Pearson Vue, NCBE.

842.    The defendants interfered with the contracts, suppressed plaintiff's exams scores.

843.    Plaintiff did email the staff stating that Plaintiff's score was suppressed, but met with unjustified, provoking reply.

844.    As a proximate results of the defendants' acts, plaintiff has suffered loss and damage, (i.e. the above-mentioned **"Plaintiff's loss"**) and mental suffering, including humiliations, anguish, frustration, anger, grief, despairs.

Fifth Cause Of Action
Aiding And Abetting
(LKY's Clan,  At&T, At&T Directors, Gic, Gic Re, Singtel)

845.    Plaintiff refers to and incorporates by reference all prior paragraphs.

<u>Aiding and abetting  fraud , violation of statutory duties torts : LKY's clan</u>

152
-COMPLAINT-

846.    That the New York Board, the party whom the defendants mentioned herein aids, performed a wrongful act, and others i.e. that causes an injury; abetted by the defendants to this cause of actions.

847.    The defendants was generally aware of his or her role as part of an overall illegal or tortious activity at the time of providing the assistance; and (3) the defendant knowingly and substantially assisted the principal violation by Law Examiners.

848.    . As described above, at all times relevant to this charge, LKY'S group, AT&T, AT&TDIRECTORS, GIC, GIC Re, Singtel aided and abetted the commission of tortious, unlawful, illegal acts herein.

849.    The defendant, LKY'S group, AT&T, AT&TDIRECTORS, GIC, GIC Re, Singtel were regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance.

850.    The defendant LKY'S group, AT&T, AT&TDIRECTORS, GIC, GIC Re, Singtel, and others knowingly and substantially assist the principal violation.

851.    Plaintiff suffered injury, both economic and otherwise, including emotional distress, as a result of the aiding and abetting fraud by the defendant.

Sixth Cause Of Action
Unjust Enrichment
(Against All Defendants)

852.    Plaintiff refers to and incorporates by reference all prior paragraphs.

853.    The Defendant has been unjustly enriched due to : (1) a benefit conferred upon the defendant by LKY's group, i.e. bribes , channeled through the purchase of property mentioned herein. The contract is illegal, and unenforceable.

854.    Defendant has knowledge or appreciation of the benefit by the defendant; and

855    Acceptance and retention by the defendant of such benefit, the real property, the bribes, under such circumstances that it would be unfair for him or her to retain it without paying the value thereof.

856.    It is not necessary to prove that the recipient of the benefit was at fault or guilty of wrongdoing in any way, but it must be established that as between the parties it would be unfair for the recipient to retain the benefit without paying the reasonable value of the benefit. A benefit to the defendant is the real property and the sale price money it has received as the buyers, LKY's group, is not able to enforce the contract.

153
-COMPLAINT-

857.    Defendants accepted bribes, committed unlawful acts, tortious acts on plaintiff and restitution damages , disgorgement, is proper as they have been unjustly enriched.

Seventh Cause Of Action
Accounting
(All Defendants except Allison)

858.    Plaintiff refers to and incorporates by reference all prior paragraphs
859.    Accounting is proper in view of the unlawful  and unjust enrichment and uncertain sum of bribes accepted by the defendants, including the fiduciaries and those participated in the breaches of fiduciary duties.

Eighth Cause Of Action
Intentional Infliction of Emotional Distress
(Against All Defendants except Carroll, Freeman, and Moss)

860.    Plaintiff refers to and incorporates by reference all prior paragraphs
861.    The defendant acted intentionally or recklessly; 2) the defendant's conduct was extreme and outrageous; 3) the conduct caused the plaintiff emotional distress; and 4) the emotional distress was severe. The "Extreme and outrageous" conduct of the defendants are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community..

862.    As described above, at all times relevant to this charge, the defendants' conduct was extreme and outrageous.

863.     The conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency.

864.    Defendants parties have actual or apparent power or authority over the Plaintiff.

865.    The defendants did not reasonably believe that their objectives were legitimate and the defendants were aware that the Plaintiff was particularly susceptible to emotional distress.

866.    The defendants intended to cause, or recklessly or consciously disregarded the probability of causing, the plaintiff to suffer emotional distress. The defendants were certain, or were substantially certain, that their conduct will cause emotional distress.

867.    Plaintiff suffered severe or extreme emotional distress, including fright, horror, grief, worry, shame, and humiliation.

154
-COMPLAINT-

868.    No reasonable person could be expected to endure it.

869.    The defendant's conduct actually and proximately caused severe emotional distress.

870.    Plaintiff suffered injury, both economic and otherwise, including emotional distress, as a result of the intentional infliction of emotional distress by the defendants.

<u>TEMPORARY RESTRAINING ORDER</u>

871.    Plaintiff prays the issuance of Temporary Restraining order, restraining

1. Donald Trump and JD Vance, from attending the January 20, 2025 inauguration and all Republican candidates for Senator, House Representative, including from assuming the position as Senator and House Representative.

2.      in particular DA Jason Sanders of Rock County District Attorney, policed department of Janesville from initiating, continuing, any and all court proceedings, civil or criminal including CM81D45WV4, AD764241-1, and Case No. 2025CF19.

(3) And against Lucien Wong, Lee Hsien Loong, of Singapore, their employees, agents, associates and all and any persons acting under their order or authority, from initiating, continuing, false prosecution, opposing any application to the Court, or any appeal, by Goh Jin Hian, who is charged with 39 charges together with Kelvyn Oo Cheong Kwan, William Teo Thiam Chuan, Huang Yiwen in Singapore, filed on September 20, 2023, in Case No.: And the hearing involved Goh Jin Hian. Case No : SC 905855-2023, Charge No : DAC-914968-2023 and related cases:  and from executing any sentence or judgment against the same and from prosecuting Goh Jin Hian, Pritam Singh.

(4)     And enjoin Deloitte & Touche, of Singapore, from opposing any application to the Court, or any appeal, filed by Goh Jin Hian, in Suit No. 953 of 2020, from executing any judgment, including for US$146 millions, obtained against him in Suit No. 953 of 2020 or any judgment sum entered by the High Court of Singapore.

(5)      And enjoin the defendants, LKY's clan, Democrats, its agents, associates, employees from committing murder, criminal battery, intentional car hit, criminal trespass, criminal attempts, criminal acts/unlawful, illegal, tortious acts and conducts in US.

(6)     enjoin defendants who involved in bribery in causing false prosecution fabrication of evidence, fraud on the Court, or bad faith conviction in all cases pleaded in the Plaintiff's First Amended Complaint, and any pleadings and as stated in the supporting declaration from holding public office, or position, including all the defendants in Singapore and US.

(7)      enjoin defendants , LKY's clan, lhl, its agents, employees, associates, from committing unlawful , criminal acts against plaintiff, including by hiring hitman to commit criminal acts.

(8) enjoin Government of Malaysia from prosecuting, or from opposing any application by  :
1. Mahiaddin bin md Yasin ( muhyiddin yassin)
2. Mohammad Najib bin Abdul Rajak
3. Hajah Rosmah binti Mansor

Anwar Ibrahim from continue to sue:
 Muhammad Sanusi md Nord Sanusi


        And set an earliest hearing date possible for preliminary injunction hearing.


**WHEREFORE, plaintiff demands and prays that judgment be entered against all the defendants, as follows:**

PRAYER FOR RELIEF
WHEREFORE PLAINTIFF prays this Court for the grant of the following relief:

1.      A declaration that election results obtained by Republican Party candidates in the 2024 General Election, including Presidential election, the election of Senators and Representatives in the Congress, are invalid. That by default, the Candidates of the General election , who contested as Democrats, as independent, with the next highest votes, are winners of the election.

By default, the winners are the Democrats candidate, tickets of Kamala Harris and Tim Walz and all the pertinent Democrat Party candidates for Senate and House Representatives.

2.      An injunction, prohibiting Donald Trump and JD Vance, from attending the January 20, 2025 inauguration and all Republican candidates for Senator, House Representative, including : from assuming the position as Senator and House Representative.

3.      A declaration that Anwar Ibrahim fraudulently concealed the illegal extradition of plaintiff from Malaysia to Singapore and his representation to the Agong of Malaysia to be appointed the Prime Minister is a perjury and act of sedition and the resulting appointment is void.
4.      A declaration that by default of the Anwar Ibrahim, Muhyiddin Yassin, is the legitimate candidate with the majority vote, eligible to be appointed as Prime Minister of Malaysia.

An injunction, prohibiting Government of Malaysia from prosecuting, or from opposing any application by  :

1. Mahiaddin Bin Md Yasin ( Muhyiddin Yassin)
2. Mohammad Najib Bin Abdul Rajak
3. Hajah Rosmah Binti Mansor

And Prime Minister of Malaysia
Anwar Ibrahim from continue To Sue:
Muhammad Sanusi Md Nord Sanusi

5.      An injunction, prohibiting Government of Singapore from prosecuting Goh Jin Hian, Pritam Singh

6.      An injunction, prohibiting Donald Trump and JD Vance, Donald Trump, Jr, Eric Trump, Lara Trump from contesting in any federal, state, and local election and from holding any public office.

7.      A declaration that all mala fide land acquisitions in 1985, as well as low cost housing in 1998, acquisition of lot 14 in 2003-2005, and by government of Malaysia and Kedah State Government in conspiracy with Singapore are illegal and void and sale of lot 168 in 2020 are illegal and void, the funds have illegally become part of coffers of Government of Singapore and Government of Malaysia, and the said lands involved and the funds are subject to equitable remedies, including resulting trust / and or constructive trust, tracing, accounting, restitution, unjust enrichment, and damages including restitution damages and injunctive relief.

8.      A declaration that the all the contracts entered into by LKY's clan in US handled by attorney Olson and the 1995 December AT&T sale is illegal and unenforceable. All acts of bribery are illegal.

9.      A declaration People Action Party of Singapore is an illegal party.

10.     A declaration that, Parti Keadilan is an illegal party since its inception due to illegal extradition by Anwar Ibrahim and Ibrahim Saad.

11.     That Anwar Ibrahim committed contempt of the King of Malaysia in his concealment about his illegal activities when he presented the memo that he be appointed PM.

12      Order restraining AG of Malaysia from prosecuting Muhyiddin Yassin in criminal case by utilizing fund from plaintiff, and from suing Menteri Besar of Kedah, Muhannad Sanusi Md Nor, by using plaintiff's fund, co-mingled with fund of Anwar and fund of Malaysia Government

157
-COMPLAINT-

13.     An order that Anwar Ibrahim tenders his resignation as Prime Minister of Malaysia to the Agong of Malaysia forthwith.

14     A declaration that appointment of all judges in Singapore by Iky and Ihl, including Judge Chief Justice Sundaresh Maniam, Steven Chong, Aedit Abdullah, high court judge in IPP judicial management case, who appointed Deloitte and Touche LLP, State Court judge in presiding over prosecuting Dr Goh Jin Hian , William Teo Thiam Chuan, in false trading cases in State Court , Judge Vincent Hoong Seng Lei, Judge Luke Tan, Judge Chay Yuen Fatt,  are void.

15.     A declaration that plaintiff is innocent in Oakland Police Department Citation Number and/or CEN number 3300091, Santa Monica Citation No. 630983 , Dane County Forfeiture Complaint No. 2012FO091, Cook County criminal prosecution Case No. 12CR18264, DuPage County criminal prosecution Case Number : 12300337201 (Elk Groove Village), criminal Complaint 2025CF19,

16.     A declaration that all judgments, civil and criminal obtained in cases against Dr Goh Jin Hian, Wiiliam Teo Thiam Chuan, by Singapore Government, including judgments obtained by K Shanmugam, International Pacific Petroluem Inc. are void.

17     A declaration that all arrests by Oakland Police Department in 2003, University of Wisconsin-Madison Police Department in 3/20/2012, Milpitas Police Department in 2011, Chicago Police Department in 9/15/2012 are illegal/unlawful

18.     An injunction restraining arms manufacturer as follows from supplying arms to Israel, Ukraine, and province of Taiwan:

And that all parties be at liberty to apply to modify, alter, or amend the order.

19.     An Order that in the plea of guilt in Case No. 12CR18264 is withdrawn, judgment of conviction on 7/16/2013 is vacated, and the sentence is vacated.

That the plaintiff has the second amendment right to possess firearms.

20.     A declaration that plaintiff is actually innocent of the crime charged in Case No. 12CR18264.

21     An order that all law enforcement agencies of Cook County, Chicago Police Department, State of Illinois, and FBI hereby expunge all records of arrest and
 conviction about plaintiff forthwith.

22.     A declaration that the Bar Exams result in 2012, all MPRE results are null and void, except the November 1995 raw score of 31.

-COMPLAINT-

23     A Declaration that plaintiff has passed the Nursing Board Exams and is registered as a Registered Nurse in the State of his choice.

24.    A declaration that the sale and purchase agreement entered on    with Rock County Honda Corporation is void and the title issued in the name with the lien in favor of Honda Finance Corporation Ltd is void. That plaintiff is the rightful owner of the vehicle with license plate 892 XDK

25.    A Mandatory injunction to National Council of Board of Nursing to register Plaintiff as Registered Nurse in the State of his choice.

26.    A Mandatory injunction to New York State Board of Law Examiners and State Bar of New York and NCBE ordering the New York State Board of Law Examiners and NCBE to correct all records of plaintiff, and New York State Board of Law Examiners to record that plaintiff have passed all exams and met the Moral Character Determination test, have satisfied all the requirements to be called to the State Bar of New York, and report to State Bar of New York that Plaintiff has satisfied all requirements to be called to the State Bar of New York, forthwith.

27    A Mandatory injunction to State Bar of New York ordering the State Bar of to accept the report by New York State Board of Law Examiners, enter and register plaintiff's name as an attorney of State Bar of California with attorney number #514718, and that no court ceremony is required, forthwith.

28. A declaration that the following transaction is void :
(i) mala fide acquisition of land in 1998 is void. Lost profits for business interruption held recoverable in a condemnation case: State v Hammer, 550 P 2d. 820.
(ii) mala fide acquisition of land of lot 14 in 2003-2005 is void.
(iii) the sale and purchase agreement of lot 168 is void.

29. A declaration that lky's group, late Lee Hsien Loong, Ho Ching, late Barack Obama, Michelle Obama, Rahm Emanuel, Jorge Luis Alonso, Amee Alonso, etc.  violated Foreign Corrupt Practices Act.

30.    An Order that all matters related to bribery by Lky's group Singapore Government, violation of Foreign Corrupt Practices Act, be referred to the Southern District, Department of Justice for criminal prosecution in US Courts.

31.    An Order that all matters related to bribery by lky's group, KOM USA related individuals, late Lee Hsien Loong, Singapore Government,  be referred to the Department of Justice for extradition for criminal prosecution in US Courts.

32.     An Order that Criminal Case No. 2025CF19, Citation No. AD764241-1, CM81D45WV4 be dismissed.

33. Injunctive relief:

-preliminary and permanently enjoin Democrats, who have received bribes or influenced by the bribes received by the Obama administration, its agents, employees, associates in USA:

(1) in particular DA Jason Sansers of Rock County District Attorney, policed department of Janesville. from initiating, continuing, any and all court proceedings, civil or criminal including CM81D45WV4, AD764241-1, and Case No. 2025CF19.

(2) Dane County District Attorney, Ismael R. Ozanne , Cook County District Attorney Kimberly M. Foxx; and

(3) all other States, County, Municipal authorities run by Democrats,

from initiating, continuing, any and all court proceedings, civil or criminal,

(4) And against Lucien Wong, Lee Hsien Loong, of Singapore, their employees, agents, associates and all and any persons acting under their order or authority, from initiating, continuing, false prosecution, opposing any application to the Court, or any appeal, by Goh Jin Hian, who is charged with 39 charges together with Kelvyn Oo Cheong Kwan, William Teo Thiam Chuan, Huang Yiwen in Singapore, filed on September 20, 2023, in Case No.: And the hearing involved Goh Jin Hian. Case No : SC 905855-2023, Charge No : DAC-914968-2023 and related cases:  and from executing any sentence or judgment against the same.

:for an order to return the passports to the accused and refund any bond money posted by the accused: Goh Jin Hian, Kelvyn Oo Cheong Kwan, William Teo Thiam Chuan, Huang Yiwen.

-(5) and a freezing order against Government of Singapore, GIC, GIC Re, Temasek Holdings, Liu Teck Yew,  AT&T, Singtel, restraining the defendants from disposing, dealing, leasing, selling, entering into any agreement to sell, lease, transferring the title, legal and equitable interest, or otherwise dispose of the legal and equitable interests, or otherwise deal with the real property or with their assets located in USA, the assets as pleaded in the First Amended Complaint, including but not limited to the following :

-AT&T Corporate Building, sold in December 1995 to Singtel

-IndCor Properties Inc

-Store Capital Corporation

-Summit Industrial Income REIT

-Dream Industrial REIT

-Dream Summit Industrial LP

(6)     And enjoin Deloitte & Touche, of Singapore, from opposing any application to the Court, or any appeal, filed by Goh Jin Hian, in Suit No. 953 of 2020, from executing any judgment, including for US$146 millions, obtained against him in Suit No. 953 of 2020 or any judgment sum entered by the High Court of Singapore.

(7)     And enjoin the defendants, LKY's clan, Democrats, its agents, associates, employees from committing murder, criminal battery, intentional car hit, criminal trespass, criminal attempts, criminal acts/unlawful, illegal, tortious acts and conducts in the State of Texas and elsewhere in US.

(8)    enjoin defendants who involved in bribery in causing false prosecution fabrication of evidence, fraud on the Court, or bad faith conviction in all cases pleaded in the Plaintiff's First Amended Complaint, and any pleadings and as stated in the supporting declaration from holding public office, or position, including all the defendants in Singapore and US.

(9)enjoin all other States, County, Municipal authorities run by Democrats, Dane County, Police officers in the above-mentioned Democrats-run authorities, from falsely arresting Plaintiff.

(10)    enjoin defendants , Democrats, LKY's clan, LHL, its agents, employees, associates, from committing unlawful , criminal acts against plaintiff, including by hiring hitman to commit criminal acts.

34.    That an account be taken of the bribes received by the defendants.

35.    Disgorgement.

36.    Restitution damages

37.    Compensatory damages

38.    Punitive damages

39.    For costs and disbursements of this action.

40.    Such further and other relief as the Court deems fit and proper.

Dated : 1/16/2025

/s/ Khor Chin Lim

-----------------------------------------------------

Khor Chin Lim, Plaintiff pro se
4048 Ingram Drive,
Janesville, WI 53546
Tel: 608-566-4695
Email: kclim478@aol.com

<u>VERIFICATION</u>

Under oath, I state that the above Complaint is true, except as those matters stated upon information and belief, and as to those matters, I believe them to be true.

Date: 1/16/2025

/s/ Khor Chin Lim

-----------------------------------------------------

Khor Chin Lim, Plaintiff pro se
4048 Ingram Drive,
Janesville, WI 53546
Tel: 608-566-4695
Email: kclim478@aol.com

-COMPLAINT-